## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

———————————————————— x
:   **Civil Action No.: 8:16-cv-00803-JSM-TGW**
RONNIE E. DICKENS, on behalf of himself   :
and others similarly situated,   :
:
Plaintiff,   :
:
v.   :
:
:
GC SERVICES LIMITED PARTNERSHIP,   :
:
Defendant.   :
———————————————————— x

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

### Statement of Relief Requested

In connection with his putative class action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., Ronnie E. Dickens ("Plaintiff") respectfully requests that this Court certify this action as a class action under Rule 23, appoint him as class representative, and appoint his counsel as class counsel. Plaintiff accordingly submits that this Court should certify the following class:

> (1) All persons with a Florida address, (2) to whom GC Services Limited Partnership mailed an initial communication that stated: (a) "if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you," and/or (b) "if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank," (3) between April 4, 2015 and April 4, 2016, (4) in connection with the collection of a consumer debt, (5) that was not returned as undeliverable to GC Services Limited Partnership.

### Summary of the Argument

This Court should certify this matter as a class action. Discussed *infra*, Plaintiff's claims

are based on identical language in form letters used by GC Services Limited Partnership ("Defendant") as part of its consumer debt collection efforts. Indeed, Defendant mailed materially identical initial debt collection letters to over 9,800 persons within Florida between April 4, 2015 and April 4, 2016, each of which contained the same language as the letters that Plaintiff received—language that violates 15 U.S.C. §§ 1692g(a)(4) and 1692g(a)(5). Dkt. No. 1. As a result, Plaintiff's claims satisfy the numerosity, commonality, and typicality elements of Rule 23(a).

Plaintiff's claims likewise satisfy the predominance and superiority requirements of Rule 23(b). Moreover, Plaintiff is firmly committed to this case and is an adequate class representative. For these reasons, Plaintiff respectfully requests that this Court grant his motion for class certification, appoint him as class representative, and appoint his counsel as class counsel.

## Background

On or about December 24, 2015, Defendant sent a written communication to Plaintiff in connection with the collection of a consumer debt allegedly owed by him. ¶ 19[1]; Defendant's Answer and Defenses, Dkt. No. 6, ¶ 7. The December 24, 2015 communication was the first communication Plaintiff received from Defendant with regard to the alleged debt. ¶ 20. Plaintiff did not receive any additional written communications from Defendant within five days of the December 24, 2015 communication. ¶ 21.

The December 24, 2015 communication to Plaintiff stated, "Your Sam's Club MasterCard Account, which was issued by and owed to Synchrony Bank, has been referred to us

---

[1]     All references to ¶__ or ¶¶__ are references to paragraphs in Plaintiff's Class Action Complaint. *See* Dkt. No. 1.

by our client for collection." ¶ 22; Dkt. No. 6, ¶ 8. The December 24, 2015 communication then

advised Mr. Dickens, in pertinent part:

> As of the date of this letter, our records show you owe a balance of $7,573.00 to Synchrony Bank. If you dispute this balance or the validity of this debt, please contact us. If you do not dispute this debt within 30 days after you receive this letter, we will assume the debt is valid.
>
> However, if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you. Or, if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank.

¶ 23; Dkt. No. 6, ¶ 9.

Defendant's December 24, 2015 debt collection letter indisputably omitted the "in

writing" and "written request" language required by 15 U.S.C. § 1692g(a)(4) and 15 U.S.C. §

1692g(a)(5), respectively. *See* Dkt. No. 1-1. As a result, Defendant violated the FDCPA by

providing inaccurate disclosures regarding Plaintiff's statutory rights and how he may exercise

them. *See, e.g.*, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1274 (11th Cir. 2016) ("We

reject the notion that § 1692g gives debt collectors discretion to omit the 'in writing' requirement

or cure improper notice by claiming waiver. The statute is clear. The debt collector 'shall' notify

the consumer of her right to dispute the debt in writing."); *Osborn v. Ekpsz, LLC*, 821 F. Supp.

2d 859, 869 (S.D. Tex. 2011) ("The plaintiffs have stated a plausible claim based on the

defendant's failure to state in the letter that a request under subsections 1692g(a)(4) and (a)(5)

had to be in writing."); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F. Supp. 2d 841,

844-46 (E.D. Va. 2011) ("As far as this Court can tell, all of them have held that a debt

collector's failure to include the 'in writing' requirement violates subsections (a)(4) and (5) of Section 1692g.").[2]

Pertinent to Plaintiff's instant request, during the proposed class period of April 4, 2015 through April 4, 2016, Defendant mailed 9,682 initial written communications to persons within Florida that omitted the "in writing" and "written request" language required by 15 U.S.C. § 1692g(a)(4) and 15 U.S.C. § 1692g(a)(5), respectively. *See* excerpt of Defendant's Objections and Answers to Plaintiff's First Set of Interrogatories, attached as Exhibit A. Moreover, as Defendant should possess a list of the names and addresses of each of these persons, there should be no issue identifying the members of the proposed class.

## Argument

To attain certification of the proposed class, Plaintiff must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Because Plaintiff seeks certification under Rule 23(b)(3), he must also demonstrate that common issues predominate and that class treatment is the superior method to resolve this dispute. *See Drossin v. National Action Fin. Servs., Inc.*, 255 F.R.D. 608, 616 (S.D. Fla. 2009) (certifying FDCPA class).

"In reviewing a motion for class certification, the court generally is bound to take the substantive allegations of the complaint as true." *In re Checking Overdraft Litig.*, 281 F.R.D. 667, 672 (S.D. Fla. 2012) (certifying class action). Although a district court may look past the pleadings to determine if Rule 23's requirements have been met, for certification purposes "the Court may not consider the plaintiffs' likelihood of success on the merits." *Id.* In certifying a

---

[2]    Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

class, the Court should consider that certification is conditional and may be modified or vacated as the case progresses toward resolution on the merits. Fed. R. Civ. P. 23(c)(1)–(4); *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982); *Prado–Steiman v. Bush*, 221 F.3d 1266, 1273–74 (11th Cir. 2000).

## I.      The FDCPA is well-suited for class action treatment.

The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. 15 U.S.C. § 1692 *et seq*. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692(k). The provisions of the FDCPA declare certain rights available to debtors, forbid deceitful and misleading practices, and prohibit harassing and abusive tactics.

In enacting the FDCPA, Congress found that "[t]here is abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) ("The Fair Debt Collection Practices Act prohibits debt collectors from making false or misleading representations and from engaging in

various abusive and unfair practices.").

"Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal Collections*, 385 F. 3d 337, 345 (3d Cir. 2004). As the Fourth Circuit Court of Appeals recognized, "[w]ithout a real sting, the defendants would be unlikely to be deterred from violating the Act, in light of the substantial profit to be made using aggressive and improper collection practices." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 141 (4th Cir. 1996). Congress, in fact, designated special remedies to unnamed members of a class action filed under the FDCPA. *See* 15 U.S.C. § 1692k(a),(b).

Moreover, class treatment of FDCPA claims is particularly appropriate because the FDCPA is a strict liability statute liberally construed in favor of the consumer. *Hepson v. J.C. Christensen and Assoc., Inc.*, No. 8:07-cv-1935-T-26EAJ, 2008 WL 4833097, at *4 (M.D. Fla. Nov. 5, 2008) ("the FDCPA must be liberally construed to support its remedial nature"). To that end, the Eleventh Circuit uses the "least-sophisticated consumer" standard to evaluate whether a debt collector's communications violate the FDCPA. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985) ("we believe that the FDCPA's purpose of protecting consumers is best served by a definition of 'deceive' that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's letters and telephone calls."). This objective standard protects "naive consumers" and, because it is an objective test, it is immaterial whether a debt collector's representations misled an individual consumer, thus rendering individualized determinations irrelevant. *Orr v. Westport Recovery Corp.*, Civil Action No. 2:12–CV–187–WCO, 2013 WL 1729578, at *3 (N.D. Ga. Apr. 16, 2013). Furthermore, because the FDCPA is a

strict liability statute, it is not necessary to demonstrate that Defendant acted with any ill intent. *Kennedy v. Compucredit Holdings Corp.*, 9 F. Supp. 3d 1314, 1316 (M.D. Fla. 2014) ("Accordingly, the FDCPA prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt as well as the use of unfair or unconscionable means of collection. The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute."); *Rivera v. Amalgamated Debt Collection Services, Inc.*, 462 F. Supp. 2d 1223, 1227 (S.D. Fla. 2006) ("The FDCPA is a strict liability statute and, therefore, does not require a showing of intentional conduct on the part of a debt collector.").

Because of their overwhelmingly common questions of fact and law, numerous district courts in the Eleventh Circuit have certified class actions, like here, based on form communications and standardized debt collection activity. *See, e.g., Kemper v. Andreu Palma, & Andreu*, Case Number: 15-21226-CIV-MARTINEZ-GOODMAN, 2016 WL 3545935 (S.D. Fla. Jun. 23, 2016); *Roundtree v. Bush Ross, P.A.*, 304 F.R.D 644, 661 (M.D. Fla. 2015) (Whittemore, J.); *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664 (S.D. Fla. 2014); *Klewinowski v. MFP, Inc.*, 2013 WL 5177865 (M.D. Fla. Sept. 12, 2013); *Lewis v. ARS Nat'l Services, Inc.*, 2011 WL 3903092 (N.D. Ala. Sept. 6, 2011); *Gaalswijk-Knetzke v. Receivables Mgmt. Services Corp.*, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008); *Agan v. Katzman & Korr*, P.A., 222 F.R.D. 692 (S.D. Fla. 2004); *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697 (M.D. Fla. 2000); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665 (M.D. Fla. 1999). This Court should do the same.

## II.    Plaintiff satisfies the requirements of Rule 23(a).

### A.  The members of the class are so numerous that joinder is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). While parties seeking class certification do not need to know the "precise number of class members," they "must make reasonable estimates with support as to the size of the proposed class." *Fuller*, 197 F.R.D. at 699. The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (*quoting Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

Here, Defendant mailed initial debt collection letters to over 9,000 persons with Florida addresses between April 4, 2015 and April 4, 2016, each of which contained materially identical language as that which Plaintiff contends violates the FDCPA. As the proposed class has more than 9,000 members, it is sufficiently numerous that joinder is impracticable. *See Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1279-80 (S.D. Fla. 2012) (numerosity satisfied with estimated class size of at least 50 persons).

### B.  Questions of law and fact are common to the members of the class.

The commonality requirement of Rule 23 demands only that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires at least one issue common to all members of the class, but does not require that all factual and legal questions be common." *Agan*, 222 F.R.D. at 697. The commonality element is generally satisfied when

"[d]efendants have engaged in a standardized course of conduct that affects all class members." *Id.* ("Similarly, a plaintiff satisfies the commonality requirement when all class members received the same collection letter.").

"Here, by definition, each putative class member received a dunning letter containing the same Verification Notice. The sole and dispositive legal question is whether that Verification Notice violates the FDCPA." *Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 3:11cv78, 2011 WL 5325674, at *2 (E.D. Va. Nov. 3, 2011). Each class member, therefore, has the same claims against Defendant, and the commonality requirement accordingly is met. *See Agan*, 222 F.R.D. at 698 (finding commonality satisfied where "[a]ll of the proposed class members received the same form letter and claim of lien, and all of the proposed class members have the same legal question of whether the form letter and claim of lien violated the FDCPA and FCCPA."); *Swanson*, 186 F.R.D. at 668 ("To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *3 (finding commonality where "[a]ll received the identical or substantially similar letter from Defendant."). As a result, the commonality element of Rule 23 is satisfied.

C.     **Plaintiff's claims are typical of the claims of the members of the class.**

The third requirement under Rule 23(a) is that the claims or defenses of the class representative must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

"The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) ("The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore, typicality will not be destroyed by factual variations."). To defeat typicality, the factual variation of a class representative "must be clear and must be such that interests of the class are placed in significant jeopardy." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004).

Here, typicality is satisfied as Defendant sent debt collection letters with materially identical language to thousands of persons in Florida during the class period, all of whom have FDCPA claims identical to Plaintiff based solely on the text of the debt collection letters Defendant sent to them. *See Agan*, 222 F.R.D. at 698 ("Parties seeking class certification have satisfied the typicality requirement by showing that all prospective class members received a variation of the same collection letter."); *Swanson*, 186 F.R.D. at 668 ("Because Plaintiff alleges that the notice itself was contradictory and misleading to the least sophisticated consumer and Plaintiff as well as the putative class received the notice, the Court finds that typicality has been shown."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *3 ("Because the same or substantially similar letter was sent to all class members as well as the class representative, the Court finds that typicality has been satisfied.").[3]

---

[3]    To be sure, there is no doubt that Plaintiff is a member of the proposed class and that his claims are typical of those of the other members of the class. *See* Dkt. No. 1-1 (demonstrating that Plaintiff is a member of the class in that Defendant sent him the violative letter at issue during the class period).

As Judge Whittemore explained in *Roundtree*, because Plaintiff "received the Letter from [Defendant] with the overshadowing language," Plaintiff "possesses the same interests and suffered the same injuries as the members of the proposed classes and can therefore assert identical claims and seek identical relief as the members of the proposed classes." *Roundtree*, 304 F.R.D. at 660.

### D. Plaintiff and his counsel will fairly and adequately protect the interests of class members.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that he can act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class. *In re Ins. Mgmt. Solutions Grp., Inc.*, 206 F.R.D. 514, 516 (M.D. Fla. 2002) (certifying class action).

Here, Plaintiff has diligently pursued this case since its inception with the goal of obtaining relief for the members of the class, and forcing Defendant to change its practices moving forward. Moreover, Plaintiff's claims are aligned with the claims of members of the proposed class and Plaintiff is committed to vigorously pursuing the members' claims with their best interests in mind. *See* Declaration of Ronnie E. Dickens, attached as Exhibit B, at ¶ 5. In short, Plaintiff stands willing and prepared to serve this Court and the class. *See Wess v. Storey*, 2:08–cv–623, 2011 WL 1463609, at *9 (S.D. Ohio Apr. 14, 2011) ("Plaintiffs have no interests antagonistic to those of the absent Class Members and sought the same relief for themselves as they do for the class. In addition, Plaintiffs and each Class Member have been damaged by the same alleged misconduct and, as a result, each has precisely the same interest in achieving the maximum recovery.").

Moreover, Plaintiff has retained the services of counsel who are well-versed in class

action litigation. *See, e.g.*, *Kemper*, 2016 WL 3545935 at *2; *Roundtree*, 304 F.R.D at 661; *Gonzalez v. Dynamic Recovery Solutions, LLC*, Nos. 14-24502, 14-20933, 2015 WL 738329, at *2 (S.D. Fla. Feb. 23, 2015); *Sharf*, 295 F.R.D. at 671.[4] As a result, Plaintiff and his counsel satisfy the adequacy prong of Rule 23(a), and Plaintiff's counsel satisfies Rule 23(g)(1)(A).

### III.     Plaintiff satisfies the requirements of Rule 23(b)(3).

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Rule 23(b)(3) requires that questions of law or fact common to the class predominate over questions affecting the individual members and that, on balance, a class action is superior to other methods available for adjudicating the controversy.

---

[4]     Plaintiff's counsel has been appointed class counsel in more than two dozen consumer protection class actions in the past two years. *See, e.g.*, *Johnson v. Navient Solutions, Inc.*, --- F.R.D. ----, 2016 WL 4069278 (S.D. Ind. July 27, 2016); *Globus v. Pioneer Credit Recovery, Inc.*, Case No. 12-CV-152V, 2016 WL 4069285 (W.D.N.Y. July 27, 2016); *Durham v. Schlee & Stillman, LLC*, Case 8:15-cv-01652-GJH, Doc. 16 (D. Md. May 31, 2016); *Harper v. Law Office of Harris and Zide LLP*, Case No. 15-cv-01114-HSG, 2016 WL 2344194, at *6 (N.D. Cal. May 4, 2016); *Brown v. Hunt & Henriques, Attorneys at Law*, Case 5:15-cv-01111-EJD, ECF No. 45 (N.D. Cal. Apr. 26, 2016); *Lehmeyer v. Messerli & Kramer, P.A.*, Civil. No. 15–02419 (HB), 2016 WL 1576439, at *1 (D. Minn. Apr. 15, 2016); *Chamberlin v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, No. 15-02361, ECF No. 36 (D.N.J. Feb. 9, 2016); *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690 (N.D. Cal. 2016); *Whitford v. Weber & Olcese, P.L.C.*, No. 15-400, 2016 WL 122393 (W.D. Mich. Jan. 11, 2016); *Garza v. Mitchell Rubenstein & Assocs., P.C.*, No. 15-1572, 2015 WL 9594286 (D. Md. Dec. 28, 2015); *Prater v. Medicredit, Inc.*, No. 14-00159, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015); *Baldwin v. Glasser & Glasser, P.L.C.*, No. 3:15-cv-00490-HEH, 2015 WL 77669207, at *1 (E.D. Va. Dec. 1, 2015); *McWilliams v. Advanced Recovery Sys., Inc.*, 310 F.R.D. 337, 341 (S.D. Miss. 2015); *Oaks v. Parker L. Moss, P.C.*, No. 3:15-CV-00196-CAN, 2015 WL 5737595, at *1 (N.D. Ind. Sept. 29, 2015); *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-cv-00130-PJK-GBW, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015); *Lambeth v. Advantage Fin. Servs., LLC*, No. 1:15-cv-33-BLW, 2015 WL 4624008 (D. Idaho Aug. 3, 2015); *Rhodes v. Olson Assocs., P.C. d/b/a Olson Shaner*, 83 F. Supp. 3d 1096, 1115 (D. Colo. 2015); *Esposito v. Deatrick & Spies, P.S.C.*, No. 13-1416, 2015 WL 390392, at *2 (N.D.N.Y. Jan. 28, 2015); *Green v. Dressman Benzinger Lavelle, PSC*, No. 14- 00142, 2015 WL 223764, at *2 (S.D. Ohio Jan. 16, 2015); *Donnelly v. EquityExperts.org, LLC*, No. 13-10017, 2015 WL 249522, at *2 (E.D. Mich. Jan. 14, 2015); *Ritchie v. Van Ru Credit Corp.*, No. 12-01714, 2014 WL 3955268, at *2 (D. Ariz. Aug. 13, 2014).

### A.  The questions of law and fact common to the class predominate.

"Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4.   The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Here, the central legal issue before this Court is whether Defendant's debt collection letters violated the FDCPA. Numerous courts have found that common questions of law and fact predominate where class members' claims are based on standardized debt collection letters, as is the case here. As a result, Plaintiff readily satisfies the predominance requirement. *See, e.g.*, *Roundtree*, 304 F.R.D. at 662 ("Here, the issues of whether Bush Ross is a debt collector and engaged in collection activity and whether Bush Ross engaged in an act or omission prohibited by the FDCPA are issues common to Roundtree and the members of each of the proposed classes. Furthermore, the claims of Roundtree and the class members derive from the same legal theories, involve the same collection letters and notices and fee collection practices, and warrant the same statutory damages as a remedy."); *Sharf*, 295 F.R.D. at 671 ("Because the main issue in dispute in this case is whether form letters sent to Plaintiff and all other class members violate

the FDCPA and FCCPA, common issues predominate."); *Klewinowski*, 2013 WL 5177865, at *4 ("Furthermore, the common question to be decided is whether the "YOUR CREDITORS" letter violates the FDCPA. This common issue predominates over any other issue presented in this matter, and thus, the requirement of predominance has been satisfied."); *Agan*, 222 F.R.D. at 701 ("The Court finds that Plaintiffs have satisfied Rule 23(b)(3) and that monetary damages are appropriate in this class action. The common issues presented by sending allegedly illegal form letters and claims of lien predominate over any individual issues presented, and the class action is the superior method for resolving this dispute because it would be uneconomical to litigate these issues individually.").[5]

As Judge Thompson explained in certifying a class action based on an allegedly misleading form debt collection letter:

> In general, predominance is a test readily met in certain cases alleging consumer ... fraud. Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. To determine whether the collection letters sent by American Recovery Systems violated the FDCPA, the court will not need to question whether each class member was deceived or misled by the privacy notice, because the least sophisticated consumer standard governs. Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled. Thus, the only individualized proof necessary will be whether each class member received a letter identical to [Plaintiff's]. Since that is a prerequisite for joining the class, the court finds that common questions of fact and law predominate in this case.

---

[5] *See also Gaalswijk-Knetzke*, 2008 WL 3850657, at *4 (finding common issues predominate where "all of the claims of the named Plaintiff and the class members are based on the same legal theories, the same form collection letters, and the same remedy"); *Fuller*, 197 F.R.D. at 701-02 ("The essential common factual link between all of the prospective class members is the letters sent by Defendants. Plaintiffs' basis for the claim is the language and content of the letters."); *Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 689 (S.D. Fla. 2013) ("As to the FDCPA class, the Court finds that common issues predominate.").

*Lewis*, 2011 WL 3903092, at *5.

**B.  A class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's claims, and the claims of class members.**

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because the claims in this case arise from a form initial debt collection letter used by Defendant, a class action is the superior vehicle for determining the rights of absent class members. In certifying FDCPA claims, Judge Scola explained:

> The Court finds that resolving the issues raised by the Plaintiff in a class action would be superior to other available methods to fairly and efficiently resolve this controversy. As explained above, common questions of law and fact predominate over any individualized issues. In addition, the Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating Plaintiffs' claims under the FDCPA [].

*Muzuco v. Re$ubmitt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013); *see also Magallon v. Robert Half Int'l., Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015) (noting that class members who litigated their claims individually would have less litigation or settlement leverage and significantly reduced resources).

For these reasons, a class action is the superior method to adjudicate this matter. *See Gaalswijk-Knetzke*, 2008 WL 3850657, at *5 ("Congress, however, did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing

separate suits. On the contrary, Congress provided for class actions as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action."); *Agan*, 222 F.R.D. at 701 (finding a class action superior because, in part, "Debtors who seek to change the unfair debt collection practices may lack the incentive to bring action under the FDCPA [] because successful plaintiffs are only awarded a maximum of $1,000.").

### IV.    Any argument that Defendant makes to broaden the class definition should be rejected.

Defendant likely will argue that, if the Court is inclined to grant class certification, then the Court should expand Plaintiff's class to a nationwide class, or in the alternative, otherwise expand the reach of the class to include more consumers who received Defendant's violative initial debt collection letter in other states. This Court should reject any such argument.[6]

Any desire by Defendant to expand the proposed class is purely self-interested. The FDCPA caps statutory damages at $500,000 or 1% of Defendant's net worth, whichever is less. *See* 15 U.S.C. § 1692k(a)(2)(B). Given that there are over 9,800 persons in the proposed class, the maximum amount of statutory damages that each class member stands to receive should Plaintiff prevail in this matter and obtain full statutory damages is approximately $51 per class

---

[6]    Plaintiff is the master of his complaint, and can thus choose to define the class in the way he sees fit. *See Johnson v. Advance Am., Cash Advance Ctrs. of S.C., Inc.*, 549 F.3d 932 (4th Cir. 2008) ("Yet the plaintiffs, as masters of their complaint, can choose to circumscribe their class definition in this way"); *Cortez v. McClatchy Newspapers, Inc.*, No. 2:15-cv-01891-TLN-EFB, 2016 WL 3181200, at *4 (E.D. Cal. Jun. 7, 2016) ("At best, Defendant notes ambiguity in the proposed class definition; but Defendant may not substitute its version of the class definition in order to defeat the home state exception. Plaintiffs rightly point out that they are 'master of the complaint.'").

member.[7] By expanding the class, Defendant would have the Court dilute the potential recovery of each class member while limiting Defendant's ultimate exposure.[8]

The Northern District of Illinois's decision in *Avila v. Van Ru Credit Corp.*, No. 94 C 3234, 1995 WL 22866 (N.D. Ill. Jan. 18, 1995) is instructive on this issue. In *Avila*, the plaintiff moved to certify a class of Connecticut consumers who alleged that the defendant violated the FDCPA and the Connecticut Unfair Trade Practices Act by sending improper form debt collection letters. *Id.* at *1. As it had mailed several thousand of the violative letters to debtors across the country, the defendant argued that the class was defined too narrowly. *Id.* at *2.

The defendant contended that the narrow class sought by the plaintiff would preserve the ability of other classes to raise the same claim and recover damages repeatedly against the defendant until the defendant was financially ruined—a strategy that the defendant argued conflicts with Congress' intent to limit a debt collector's total liability for an FDCPA violation to $500,000 or 1 percent of the net worth of the debt collector. *Id.* at *3. In rejecting Defendant's argument, the Northern District of Illinois explained:

---

[7]     Though the recovery here would by no means be *de minimis*, at the class certification stage, neither Rule 23 nor the FDCPA require more than a *de minimis* recovery per class member for a suit to proceed as a class action. *Hicks v. Client Services, Inc.*, 257 F.R.D. 699, 700 (S.D. Fla. 2009) (citing *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)); *see also Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46, 55 (D. Conn. 2000) ("Although class members may recover smaller damages amounts than would have been the case in individual actions, the court finds that the class action vehicle is nonetheless superior, given the remote likelihood that such individual actions actually would be brought.").

[8]     In addition to this matter, Plaintiff's counsel is currently litigating one other proposed class action against Defendant over initial debt collection letters materially identical to the letters at issue here. *See Macy et al v. GC Services Limited P'ship*, 3:15-cv-00819-DJH, Dkt No. 1 (W.D. Ky. Nov. 5, 2015). In *Macy*, the named plaintiffs seek to represent a class of Kentucky and Nevada consumers to whom Defendant sent the violative letter between November 5, 2014 and November 5, 2015. *Id.* at Dkt. No. 22.

The FDCPA provides that a class of plaintiffs may recover from a debt collector an amount not to exceed the lesser of $500,000 or one per centum of the net worth of the debt collector. 15 U.S.C. § 1692k(a)(2)(B)(ii). Van Ru argues that Congress intended to limit a debt collector's total liability for the same failure to comply with a provision of FDCPA to $500,000 in statutory damages per class action or series of class actions. For support, Van Ru cites the civil liability section of the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1640, which is similar to the civil liability provision in FDCPA. Section 1640 of TILA permits the court to award as statutory damages:

> in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor....

In contrast, the civil liability provision of FDCPA allows a court to order statutory damages in a class action in any "amount as the court may allow ... without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k. Thus, TILA limits a defendant's liability to a total of $500,000 or 1 per centum of net worth in a series of class actions arising out of the same violation, but the FDCPA does not. Accordingly, a plain reading of the FDCPA theoretically allows for the possibility that many class actions may be brought on the same violation and that statutory damages of up to $500,000 may be imposed in each action.

*Id.* at *4; *see also Macarz*, 193 F.R.D. at 56 ("Transworld also argues that a statewide class is improper, as allowing repeated statewide class actions for violation of the same letter would render the $500,000 per class action damages cap in the FDCPA meaningless. Defendant would have the Court read an implied limitation on statewide class actions into the FDCPA $500,000 damages cap, such that plaintiff's attempt to certify a class solely of Connecticut residents would constitute "improper claim-splitting." Defendant's argument has been considered, and rejected, in a number of cases.").[9]

---

[9]   The Seventh Circuit, while not deciding the issue, rejected the argument that Congress intended the class action cap for an FDCPA claim was only available against a defendant once. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

**Conclusion**

As this Court found in *Roundtree*, "given the large number of claims, the relatively small amount of damages available, the desirability of consistently adjudicating the claims, the high probability that individual members of the proposed classes would not possess a great interest in controlling the prosecution of the claims, and the fact that it would be uneconomical to litigate the issues individually, a class action is the superior method by which [Plaintiff] and the class members' claims under the FDCPA should be adjudicated." *Roundtree*, 304 F.R.D. at 663.

Accordingly, Plaintiff respectfully requests that this Court grant his motion for class certification and appointment of class counsel, appoint him as class representative, and appoint Greenwald Davidson Radbil PLLC as class counsel.

Dated: August 17, 2016

*/s/ James L. Davidson*
James L. Davidson
Michael L. Greenwald
Jesse S. Johnson
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33486
Telephone:      (561) 826-5477
Facsimile:      (561) 961-5684
jdavidson@gdrlawfirm.com
mgreenwald@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Counsel for Plaintiff and the proposed class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on August 17, 2016, via the Court Clerk's CM/ECF system, which will provide notice to the following counsel of record:

Michael Sperounes
LEWIS BRISBOIS BISGAARD & SMITH LLP
3812 Coconut Palm Drive, Suite 200
Tampa, FL 33619
Telephone: (813) 739-1971
Facsimile: (813) 739-1919
michael.sperounes@lewisbrisbois.com

William S. Helfand
LEWIS BRISBOIS BISGAARD & SMITH LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone: (713) 659-6767
Facsimile: (713) 759-6830
bill.hefland@lewisbrisbois.com

*/s/ James L. Davidson*
James L. Davidson