# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

RONNIE E. DICKENS,

     Plaintiff,

v.                                Case No: 8:16-cv-803-T-30TGW

GC SERVICES LIMITED
PARTNERSHIP,

     Defendant.

_____

## <u>ORDER</u>

In this putative class action lawsuit, Plaintiff Ronnie Dickens alleges that Defendant violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692p, by failing to adhere to certain debt-collection practices required by the Act. More specifically, Dickens alleges that Defendant failed to notify him and other similarly situated debtors in its initial notice to them that if they disputed their debts, they would have to notify Defendant *in writing* in order to trigger Defendant's legal obligation to verify the debts. (Dkt. 1, p. 2). Dickens similarly alleges that Defendant's notices failed to specify that Defendant would provide the name of the original creditor upon the debtors' *written* request. In short, even though Defendant notified Dickens and others that they did have these rights, Dickens alleges that Defendant's failure to explicitly state that the rights must be invoked *in writing* violated the Act, specifically sections 1692e, 1692g(a)(4), and g(a)(5).

Now before the Court are several filings: Dickens's Motion for Class Certification and Appointment of Class Counsel (Dkt. 27) and Defendant's Response (Dkt. 28); Dickens's Motion for Summary Judgment on Defendant's liability (Dkt. 32), Defendant's Response (Dkt. 36), and Dickens's Reply (Dkt. 44). Also, after carefully considering the law on class certification as it applies to the facts so far developed in this case, the Court asked the parties to submit filings on their respective assessments of the damages at issue in this case and how that assessment bears on the propriety of class certification. (Dkt. 33). The parties ably complied. (Dkts. 39, 40, 45, 46). The Court has considered all of these filings, the law, and the record. For the reasons discussed below, the Court concludes that Dickens's motion for summary judgment on liability should be granted and that his motion for class certification should be denied.

## FACTUAL BACKGROUND

The material facts in this case are also undisputed. In December 2015, Defendant sent Dickens an initial debt-collection notice. It said:

> As of the date of this letter, our records show you owe a balance of $7,573.00 to Synchrony Bank. If you dispute this balance or the validity of this debt, please contact us. If you do not dispute this debt within 30 days after you receive this letter, we will assume the debt is valid.

> However, if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you. Or, within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank.

On the basis of this communication, Dickens filed suit against Defendant. Counts I and II of the complaint allege that both paragraphs in the notice—the first informing Dickens of his right to dispute the debt, the second informing him of how he can obtain verification— were required by the Act to specify that the dispute and verification invocations must be made in writing. Complaint, Dkt. 1, ¶¶ 40, 45 (citing 15 U.S.C. §§ 1692g(a)(4) and (5)). Count III alleges more broadly that these same paragraphs, in the same ways, amounted to a "false, deceptive, or misleading representation . . . in connection with the collection of any debt." Complaint, Dkt. 1, ¶ 48 (citing 15 U.S.C. § 1692e). The complaint asks the Court to award only statutory damages, not actual damages. Dkt. 1, ¶ 50.[1]

In all, Defendant sent similar communications to 9,862 people in Florida, all of which neglected to include the in-writing specification. (Dkt. 27, p. 1). Defendant's internal standard operating procedures on debt collection suggest, as Defendant asserts, that the communications did not include the in-writing specification because Defendant had a policy of respecting disputes and verification requests communicated in any way, not just in writing.

## DISCUSSION

Now Dickens moves for summary judgment on Defendant's liability. He also moves for class certification of the 9,862 Florida debtors, with him as class representative and with his counsel as class counsel. Dickens proposes the following class definition:

---

[1] Because of this fact, and because the Court asked the parties to brief their assessments of damages, this order will also award damages, using the helpful briefs provided by the parties, and thus resolve every remaining issue in this case.

> (1) All persons with a Florida address, (2) to whom GC Services Limited Partnership mailed an initial communication that stated: (a) "if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you," and/or (b) "if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank," (3) between April 4, 2015 and April 4, 2016, (4) in connection with the collection of a consumer debt, (5) that was not returned as undeliverable to GC Services Limited Partnership.

(Dkt. 27, p. 1). The Court will evaluate summary judgment and class certification in order.

### Summary Judgment Standard

A motion for summary judgment forces a court to "pierce the pleadings and [] assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Motions for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue over any material fact and that the moving party is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; rather, the record must reveal a "*genuine issue of material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Facts are material if, under the applicable substantive law, they might affect the outcome of the case. *See id*. And disputes over those facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*.

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the relevant documents that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. To carry this burden, the moving party can present evidence to this effect or instead show that the non-moving party has failed to present evidence in support of some element of its case on which it ultimately bears the burden of proof, such as an affirmative defense. *See id.* at 322-23.

If the moving party meets its burden, the non-moving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. Conclusory allegations will not suffice. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Neither will "a mere scintilla of evidence supporting" the non-movant's claims. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (internal quotations omitted). The non-movant must instead present facts that are significantly probative to support those claims. *Anderson*, 477 U.S. at 248–49 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)).

A court ruling on a motion for summary judgment must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson,* 477 U.S. at 255. After the non-moving party has responded to the motion, the court must grant summary judgment if there exists no genuine issue of material fact and the moving party deserves judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

**The FDCPA**

The FDCPA seeks to curb "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). To this end, the law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. When evaluating claims alleging false or misleading debt-collection communications, courts in this circuit ask whether the "least-sophisticated consumer would be deceived or misled by the communication at issue." *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1274 (11th Cir. 2016) (quoting *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010)). This standard, the Eleventh Circuit has said, was not "made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking, and the credulous." *Id.* at 1172-73. It is an objective standard, one that "protect[s] naïve consumers" but "also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." *LeBlanc*, 601 F.3d 1185 at 1194 (internal quotation marks and citations omitted).

Liability in this case thus hinges on the straightforward question: Whether the notice sent to Dickens and others, which omitted language specifying that certain rights must be invoked in writing, rather than orally, was one that would deceive the least-sophisticated consumer. Dickens argues that it was.

Defendant argues, first, that it was not, primarily because the omission of "in writing" from its notices reflected Defendant's policy that consumers could challenge their debt by *any* means of communication. Defendant's notices, in other words, provided

debtors like Dickens even greater consumer protection than the Act requires. Second, Defendant argues that, even if the notices at issue were deceptive, summary judgment should not be granted because a genuine issue of material fact remains on an affirmative defense, bona fide error. Both of these arguments fail.

The first argument fails because, quite simply, the United States Court of Appeals for the Eleventh Circuit Court says it does. Earlier this year, in *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268 (11th Cir. 2016), the Eleventh Circuit rejected, in a published opinion, the very argument Defendant makes here: that omitting the in-writing language in effect waives that requirement, functions as an offer of a less demanding means of notice, and thus provides debtors with greater consumer protection. *Id.* at 1274. The court noted that the focus on consumer protection alone misses the larger purpose behind the FDCPA, which is to deter abusive debt-collection practices, which can occur whether any particular debtor is ever confused by such a practice. *See id.* at 1277. On the issue of first impression, the Court concluded: "The statute is clear. The debt collector 'shall' notify the consumer of her right to dispute the debt in writing. Likewise, the consumer has a right to verification only if she disputes the debt in writing." *Id.* at 1274 (internal citations omitted). The court reversed the district court's finding that omitting the in-writing requirement had the effect of waiving it and that to impose liability for such a waiver would be an unreasonable application of the law. This is the same argument Defendant now makes. The Court is required to reject it.

In *Bishop*, the Eleventh Circuit reached its holding in the procedural context of a trial-court dismissal for failure to state a claim, not a summary judgment. The case is

nonetheless on point. This is because the least-sophisticated consumer standard is an objective one, *see Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014), and because, here, Defendant's failure to include the in-writing requirement is undisputed. Stated differently, if allegations that a debt-collector neglected to include the in-writing requirement, accepted as true, are sufficient to *state* a violation of the FDCPA, then undisputed facts showing that a defendant did neglect to include the in-writing requirement are sufficient to *establish* a violation of the FDCPA. *See id.* at 1277 ("The 'initial communication' alleged in this case states a claim under § 1692a because it misstates the law, omits a material term required by § 1692g(a), and misrepresents consumer rights under the FDCPA."). Other courts to have addressed this issue agree. *See Bicking v. Law Offices of Rubenstein & Cogan*, 783 F. Supp. 2d 841, 844–45 (E.D. Va. 2011) ("Several district courts have confronted this precise issue in recent years. As far as this Court can tell, all of them have held that a debt collector's failure to include the "in writing" requirement violates subsections (a)(4) and (5) of Section 1692g.") (citing published orders).

Applying the reasoning of *Bishop*, the Court finds that Defendant's omission of the FDCPA's in-writing requirement would deceive or mislead the least-sophisticated consumer. To the extent Defendant argues that the Eleventh Circuit's reasoning in *Bishop* was mistaken, stare decisis gives this Court no more power than to remind Defendant that it may take the matter up with them.

Defendant's second argument—which is that summary judgment is precluded by issues of fact on Defendant's bona fide error defense—fails by virtue of its first argument. As stated above, Defendant's first argument is supported by undisputed evidence—namely,

written company policies—that Defendant would honor debtor disputes made in any manner. This evidence establishes—as Defendant argues elsewhere in its motion—that Defendant's omission of the in-writing requirement was not done by mistake, but as a purposeful choice, albeit a benign one. What Defendant calls a bona fide error defense is, more accurately, a mistake of law defense—which the FDCPA does not recognize. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581 (2010).

The Court concludes that omitting the in-writing requirement under 15 U.S.C. § 1692g(a)(4) and (5) violates the FDCPA, however benevolent the intent behind that omission may have been. The undisputed facts in this case establish that Defendant made such an omission. Defendant thus violated the FDCPA, and Dickens's motion for summary judgment on liability will be granted.

### Rule 23 Class Certification Standard

A district court is vested with broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). The party seeking to maintain the class action must affirmatively demonstrate his compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551–2552 (2011). The party must be prepared to prove that there are "*in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation as required by Rule 23(a)." *Comcast Corporation v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (emphasis in original). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b). *Id*. Only after a "rigorous analysis" may

a court determine that the movant has satisfied Rule 23's prerequisites and properly certify the class. *Id*.

**Rule 23(a) Requirements**

Rule 23(a) outlines four conditions of class certification: (1) the class must be "so numerous that joinder of all members is impracticable" (known as the "numerosity" requirement); (2) there must be "questions of fact or law common to the class" ("commonality"); (3) "the claims or defenses of the representative parties must be typical of the claims or defenses of the class" ("typicality"); and (4) the named representative must "fairly and adequately protect the interests of the class" ("adequacy of representation"). *See* Fed. R. Civ. P. 23(a). The party seeking certification must satisfy all four. Dickens only satisfies three.

**1. Numerosity**

A plaintiff "bears the burden of making some showing, affording the court the means to make a supported factual finding that the class actually certified meets the numerosity requirement." *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1267 (11th Cir. 2009). Courts in the Eleventh Circuit have noted that, as a general rule, "less than twenty-one is inadequate [for a finding of numerosity], more than forty is adequate, and numbers falling in between are open to judgment based on other factors." *Id*. at 1267 (*citing Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986)); *see also Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) (affirming certification of a class of "at least thirty-one individual class members").

Here, Dickens has identified more than 9,800 putative class members who received a debt-collection communication like the one he received. Dickens has satisfied the numerosity requirement. *See Cox*, 784 F.2d at 1553.

### 2.  Commonality

Rule 23(a)'s commonality threshold is "not high," and it requires only one issue common to all class members. *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484, 490 (S.D. Fla. 2003) (citing *Forbush v. J.C. Penney Co., Inc*., 994 F.2d 1101, 1106 (5th Cir. 1993)). This part of the rule "does not require that all the questions of law and fact raised by the dispute be common," or that the common questions of law or fact "predominate" over individual issues. *Vega*, 564 F.3d at 1268.

Here, each member of the putative class received a letter from Defendant, a verification notice, and each verification notice failed to specify that certain rights must be exercised in writing. As stated above, the principal issue in this case (at least for determining liability) was whether this omission violated the Act. The commonality requirement has been met.

### 3.  Typicality

Typicality requires that the class representative have the same interest and injury as other class members. *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1322 (11th Cir. 2008). "[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Id.* (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). And like the commonality requirement,

the required nexus for typicality is not a demanding standard. *See In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) (internal citations omitted).

Both may be satisfied even if some factual differences exist between the claims of the named representatives and the claims of the other class members. *See Prado*, 221 F.3d at 1279 n.14. Although typicality and commonality may be related, the Eleventh Circuit has distinguished the two by noting that "commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

Here, Dickens and the class at large received collection letters from Defendant. The letters omitted certain language, an omission that violated the FDCPA. The nexus between Dickens's claims and those of the class is obvious: they all suffered the same injury, a statutory violation of the FDCPA. *See Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 661 (M.D. Fla. 2015); *see also Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 698 (S.D. Fla. 2004) ("Parties seeking class certification have satisfied the typicality requirement by showing that all prospective class members received a variation of the same collection letter.").

The Court will note, however, that while Dickens apparently only suffered a statutory violation, potential class members may have suffered actual damages. The injuries of Dickens and the class, in other words, may be overlapping, but not exactly the same. Given its undemanding standard, the typicality requirement will not be defeated by

this consideration alone. *Cf. Agan*, 222 F.R.D. at 698. The same cannot be said, however, for the final requirement under Rule 23(a).

### 4. Adequacy

"Adequacy is for the plaintiffs to demonstrate; [the plaintiffs are not entitled to any] presumption of adequacy." *London v. Wal–Mart Stores. Inc*., 340 F.3d 1246, 1253 (11th Cir. 2004). The requirement "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby,* 513 F.3d at 1323; *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).

In a declaration attached to his motion, Dickens attests to being actively involved in the prosecution of this action, wanting to ensure that Defendant complies with the law governing debt collectors, and being committed to protecting the interests of the class members. (Dkt. 27-2, p. 1). He further attests that any future decisions in the case will be made in the best interest of everyone in the class. (Dkt. 27-2, p. 2). With this declaration, and with consideration to the straightforward legal question that will dominate all the claims, the Court is satisfied that Dickens will adequately prosecute the action on behalf of the class.

The Court is not satisfied, however, that Dickens can do so free of conflict. The Court's concern focuses primarily on the issue of damages and the fact that Dickens seeks only statutory damages. Certifying his proposed class would preclude class members from recovering actual damages if they suffered them, which the FDCPA otherwise allows.

The Eleventh Circuit has expressed the same concern, albeit in a slightly different context. *See Cooper v. Southern Co.*, 390 F.3d 695, 721 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006). In *Cooper*, the named plaintiffs in a Title VII discrimination case moved for class certification under Rule 23(b)(2), which is appropriate when the class as a whole seeks injunctive relief against the defendant. The rule, however, also permits the award of money damages as equitable relief. The district court denied the motion, and the Eleventh Circuit affirmed the denial on the grounds that, in a discrimination case like the one the named plaintiffs alleged in their complaint, money damages would normally be the predominant relief, in which case certification under Rule 23(b) is inappropriate.

The named plaintiffs, however, made alternative arguments in support of class certification. The first was that the Eleventh Circuit could bifurcate the proceedings and certify the class only as to the injunctive relief. But the plaintiffs' initial strategy choice—to sue for injunctive relief and seek certification under Rule 23(b)(2)—had sent a clear signal to the Eleventh Circuit, a signal that raised the court's suspicion:

> [T]o the extent the named plaintiffs were willing to forego class certification on damages in order to pursue injunctive relief that consisted of an admonition to follow general principles of settled law, it is far from clear that the named plaintiffs would adequately represent the interests of the other putative class members. Indeed, to many of the class members (and especially to those who no longer work for the defendants), the monetary damages requested might be of far greater significance than injunctive relief, stated at a high order of abstraction, that simply directs the defendants not to discriminate.

*Id.* at 721. In short, the court found that the named plaintiffs' choice to forego certain damages had the potential of creating a conflict of interest with those class members for

whom those foregone damages were the primary objective. Notably, the plaintiffs' second argument for class certification was that class certification was appropriate under Rule 23(b)(3), the same subsection under which Dickens seeks certification. The Court rejected that argument, too, concluding that under the facts of that case, the class-action forum would not be the superior method for adjudicating the controversy.

Here, by choosing to pursue only statutory damages, Dickens has created the potential for the very conflict the Eleventh Circuit feared in *Cooper*. And this Court's fears are compounded by the amount of statutory damages the Court will ultimately award as just in this case, which is discussed more thoroughly below. (A preview: not much.) Given this small award, those proposed class members who did suffer actual damages—but who, because of certification, would be precluded from recovering them—will undoubtedly have interests at serious odds with Dickens's. Dickens's self-serving declaration, which takes no account of this potential conflict, does not alleviate the Court's concern for these potential class members.

For this reason, Dickens has not satisfied the adequacy requirement, and class certification may be denied on this finding alone.

## Rule 23(b) Requirements

To obtain class certification, a plaintiff must also satisfy one of the provisions of Rule 23(b). Dickens argues that certification is appropriate in his case under Rule 23(b)(3). The Court disagrees.

Rule 23(b)(3) requires a plaintiff to establish, with evidence, the following: (1) "that the questions of law or fact common to class members predominate over any questions

affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Dickens falls far short of establishing the latter, that a class action is a superior method of adjudicating the controversy. In fact, the Court finds that certifying a class in this case would frustrate, not promote, the overarching objective the class-action forum seeks to promote.

That objective is efficiency, both for the parties and the courts, as the Fifth Circuit Court of Appeals neatly summarized in *Allison v. Citgo Petroleum Corporation*:

> It is important to remember that the class action device exists primarily, if not solely, to achieve a measure of judicial economy, which benefits the parties as well as the entire judicial system. It preserves the resources of both the courts and the parties by permitting issues affecting all class members to be litigated in an efficient, expedited, and manageable fashion.

151 F. 3d 402, 410 (5th Cir. 1998) (citing *Jenkins v. Raymark Indus.*, 782 F.2d 468, 471 (5th Cir. 1986)); *see General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982). Indeed, Rule 23(b)(3), the provision under which Dickens seeks certification, embodies this very objective by requiring class actions to be the "superior method for fairly and efficiently" adjudicating the case. But, ultimately, the Court believes that the rule, not adopted till 1998, exists to serve the objective, not the other way around.

This case does not advance the class-action objective, and it does not satisfy Rule 23(b)(3). On the contrary, the Court concludes that, under the particular facts of this case, the class-action method will be uneconomical for the parties and the Court, which makes the method unfair and inferior. In reaching this conclusion, the Court was aided by three

important considerations. The first is that the proponent of class certification bears the burden of demonstrating its propriety and desirability. *See Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). The second is that courts, when evaluating motions to certify a class under Rule 23, should apply a "rigorous analysis." *Vega*, 564 F.3d at 1266 (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)). And the third is that this analysis compels courts to look "beyond the pleadings," because in order to make the right certification determination, "a court must understand the claims, defenses, relevant facts, and applicable substantive law." *Castano*, 84 F.3d at 744.

Striving to faithfully apply these considerations when it first evaluated Dickens's motion for class certification, the Court was struck by two facts, one broadly applicable to class actions and the other specific to this case. The first is the fact that class-action lawsuits have attendant administrative costs, both financial and in terms of judicial resources. *See, e.g., Powell v. Georgia-Pacific Corp.*, 119 F.3d 703, 706–707 (8th Cir. 1997); *see also Kline v. Security Guards, Inc.*, 196 F.R.D. 261, 274 (E.D. Pa. 2000) (citing *Parker v. George Thompson Ford, Inc.*, 83 F.R.D. 378, 382 (N.D. Ga. 1979)); *see generally* Robert H. Klonoff, *The Decline of Class Actions*, 90 Wash. U. L. Rev. 729, 742 (citing examples in which, after costs and fees were paid, prevailing class members received little and, in one egregious case, ended up losing money). The second is that, here, Dickens seeks only statutory damages for him and his potential class members. Because class actions under Rule 23(b)(3) must be the superior method for fairly adjudicating a case, and because plaintiffs in a class action presumably care about the relief they are seeking (there otherwise being little reason to become one), the Court concluded that these two facts acting in

concert would weigh heavily on the propriety of certifying a class in this case. In other words, the Court concluded that certification depended on the amount of damages at issue.

So the Court asked the parties to brief the issue. (Dkt. 33).

As detailed in those briefs (Dkts. 39, 40, 45, and 46), the FDCPA permits district courts to award up to 1,000 in individual actions. In class actions, courts may award that same amount for each named plaintiff, plus the lesser of $500,000 or one percent of the debt collector's net worth. 15 U.S.C. 1692k(a)(2)(A)–(B).

But these are the maximum amounts allowable. The law imposes no minimum. And the Act vests courts with wide discretion to award damages anywhere within the applicable range. *See Jerman*, 559 U.S. at 589.

In exercising this discretion, however, courts must consider certain factors. 15 U.S.C. § 1692k(b)(1)–(2) (using the prescriptive "shall"). In an individual action, those factors are the following: (1) the frequency and persistence of noncompliance, (2) the extent to which the noncompliance was intentional, and (3) the nature of the noncompliance. *Id.* In class actions, courts must consider two more factors: (4) the number of persons adversely affected, and (5) the resources of the debt collector. *Id.*

Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs. While the undisputed facts in this case establish that Defendant is liable under the FDCPA, those same facts portray a statutory violation that was not only benevolent in its intent, but also benign in its effect.

18

The sheer volume of notices that Defendant mailed reveals that its noncompliance was indeed frequent. But Defendant's internal policy documents also reveal that the noncompliance was not intentional. And though mistake of law is not an affirmative defense to FDCPA violations, *see Jerman*, 559 U.S. at 594, the United States Supreme Court has instructed that courts may "adjust statutory damages for a good-faith misinterpretation of the law." *Id*.

The nature of Defendant's noncompliance was a failure to inform debtors of the precise manner by which they must invoke certain rights under the law—a precision Defendant did not demand of its debtors, according to its standard operating procedures on responding to disputes. As discussed above, this imprecision and lax approach nevertheless violated the FDCPA, because the Act imposes strict liability. But the violation likely had the exact practical effect Defendant had intended when it adopted that approach: to save debtors time and trouble when disputing their debts. This conclusion perhaps helps explain why Dickens sought only statutory damages.

Similarly, like a traffic cop who chooses to soften enforcement of rolling through stop signs, Defendant's choice to accept less than what the law required affected many people, but the Court has grave doubts that it *adversely* affected them. This final factor, as with all the others considered together, convinces the Court that a significant downward adjustment of damages is appropriate.

At this stage of the proceeding, of course, the Court cannot know definitively whether any class members were adversely affected by Defendant's noncompliance. When determining whether to certify a class, this kind of cautious and informed exploration into the uncertain, beyond developed facts, is permissible and expected. *See Castano*, 84 F.3d at 744; *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) ("[t]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising plaintiff's cause of action") (emphasis and internal citations and quotation marks omitted). This particular uncertainty is noteworthy, however, because the uncertainty itself sheds light on the issue of class certification. Assuming the Court were wrong about its assessment of the adversity caused by Defendant's noncompliance, and that indeed there are class members who were adversely affected by the noncompliance, an order certifying a class would be of little benefit to them—because, again, Dickens's pleading choice, like the pleading choice of those named plaintiffs in *Cooper*, would preclude those class members from presenting their damages to a Court that could award them. In short, if the Court is wrong about the impact of Defendant's FDCPA violations, the correction of that error serves as yet another consideration favoring the denial of class certification. *See* Rule 23(b)(3)(A), Fed. R. Civ. P. (directing courts to consider, when

evaluating whether a class action is superior, "the class members' interests in individually controlling the prosecution or defense of separate actions").[2]

Applying the factors the Court must apply under Section 1692k of the FDCPA, the Court concludes in its discretion that the facts of this case call for the award of only nominal damages. The plaintiff or plaintiffs in this case, however many they may have been, would have been awarded $1.00 in statutory damages.

The costs of certifying a class would dwarf these damages, which says nothing of the attorney manpower and judicial resources required to litigate the case. Certifying a class action in the face of this cost-damages imbalance would not be efficient. Indeed, the costs of notification alone would exceed the damages. Meanwhile, individual cases, with individualized facts, may be worth much more. Certifying a class action in the face of this possibility would not be fair. For these reasons, the class-action forum, in this case, is not the "superior method for fairly and efficiently adjudicating the controversy." Rule 23(b)(3),

---

[2] The Court recognizes that Rule 23 gives potential class members the opportunity to opt out of a class, *see* Rule 23(c)(2)(B)(v), which should allay the Court's concern for those potential class members who did suffer actual damages. In theory, it does, but the Court's experience teaches it that, in this area of the law, theory and practice do not often align. And the misalignment often leads to more litigation initiated by class members who did not opt out in their allotted time but who, for various reasons, feel that they fall outside the certified class and therefore should not be bound the class action's outcome. *See, e.g., In re Managed Care Litigation*, No. 00-MD-1334-MORENO, 2010 WL 6532982, *3–4 (S.D. Fla. Aug. 15, 2010). This litigation further strains judicial resources. *See generally id.*

In any event, even if this reality does not apply here, even if every one of Dickens's 9,862 proposed class members suffered only statutory damages, the amount of those damages makes the class-action forum uneconomical and unjustified. *See Allison*, 151 F. 3d at 410.

Fed. R. Civ. P. Dickens has failed to satisfy Rule 23(b)(3). His motion for class certification will be denied.

## Damages

For the reasons discussed above, the Court concludes that the nominal damages of one-dollar ($1.00) are appropriate in this case. Dickens, the named and only plaintiff, will be awarded them.

It is ORDERED AND ADJUDGED that:

1. Plaintiff's Motion for Summary Judgment on Defendant's liability (Dkt. 32) is GRANTED.

2. Plaintiff's Motion for Class Certification and Appointment of Class Counsel (Dkt. 27) is DENIED.

3. The Clerk is directed to enter JUDGMENT in favor of Plaintiff Ronnie Dickens and against Defendant GC Services Limited Partnership in the amount of one dollar ($1.00).

4. The Clerk is further directed to CLOSE this case and terminate all pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida, this 14th day of November, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

22