**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |  |
|---|---|---|
| ────────────────────── x |  |  |
|  | : | **Civil Action No.: 8:16-cv-00803-JSM-TGW** |
| TERRI E. DICKENS, on behalf of the estate of | : |  |
| Ronnie E. Dickens and others similarly | : |  |
| situated, | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| GC SERVICES LIMITED PARTNERSHIP, | : |  |
|  | : |  |
| Defendant. | : |  |
| ────────────────────── x |  |  |

**PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION AND**
**APPOINTMENT OF CLASS COUNSEL**

**Statement of Relief Requested**

Terri E. Dickens, on behalf of the estate of Ronnie E. Dickens ("Plaintiff") and others

similarly situated, respectfully requests that this Court certify this action as a class action under

Rule 23, appoint her, in her capacity as personal representative of the estate of Mr. Dickens, as

class representative, and appoint her counsel as class counsel.

This Court previously denied Mr. Dickens's motion for class certification on adequacy

and superiority grounds. *See Dickens v. GC Services Ltd. P'ship.*, 220 F. Supp. 3d 1312 (M.D.

Fla. 2016). At the same time, this Court found that Mr. Dickens satisfied the numerosity,

commonality, and typicality requirements of Rule 23(a). *Id.* at 1321.

After remand from the Eleventh Circuit, *see Dickens v. GC Services Ltd. P'ship*, No. 16-

17168, 706 F. App'x 529, 533 (11th Cir. 2017) (acknowledging that the district court determined

that the Plaintiff satisfied numerosity, commonality, and typicality, but vacating and remanding

1

in light of adequacy and superiority analysis), Plaintiff renews the request that this Court certify

the following class:

> (1) All persons with a Florida address, (2) to whom GC Services Limited
> Partnership mailed an initial communication that stated: (a) "if you do dispute all
> or any portion of this debt within 30 days of receiving this letter, we will obtain
> verification of the debt from our client and send it to you," and/or (b) "if within
> 30 days of receiving this letter you request the name and address of the original
> creditor, we will provide it to you in the event it differs from our client,
> Synchrony Bank," (3) between April 4, 2015 and April 4, 2016, (4) in connection
> with the collection of a consumer debt, (5) that was not returned as undeliverable
> to GC Services Limited Partnership.

Notably, the Western District of Kentucky recently certified a nearly identical class of

Kentucky and Nevada consumers who were aggrieved by the same Fair Debt Collection

Practices Act ("FDCPA") violations at issue here. *See Macy v. GC Services Limited Partnership*,

318 F.R.D. 335, 343 (W.D. Ky. 2017).[1]

## Summary of the Argument

This Court should certify this matter as a class action. Discussed *infra*, Plaintiff's claims

are based on identical language in form letters used by Defendant as part of its consumer debt

collection efforts. Indeed, Defendant mailed materially identical initial debt collection letters to

over 9,800 persons with addresses in Florida between April 4, 2015 and April 4, 2016, each of

which contained the same language as the letters that Mr. Dickens received—language that this

Court found violated 15 U.S.C. §§ 1692g(a)(4) and 1692g(a)(5). *See Dickens*, 220 F. Supp. 3d at

1320. As a result, Plaintiff's claims satisfy the numerosity, commonality, and typicality elements

of Rule 23(a).

Plaintiff's claims likewise satisfy the predominance and superiority requirements of Rule

---

[1]     GC Services Limited Partnership ("Defendant") has taken an appeal of the certification
order.

23(b). Moreover, Plaintiff is firmly committed to this case and is an adequate class representative. For these reasons, Plaintiff respectfully requests that this Court grant her motion for class certification, appoint her in her capacity as personal representative of the estate of Mr. Dickens, as class representative, and appoint her counsel as class counsel.

## Background

On or about December 24, 2015, Defendant sent a written communication to Mr. Dickens in connection with the collection of a consumer debt allegedly owed by him. ¶ 19[2]; Defendant's Answer and Defenses, Dkt. No. 6, ¶ 7; Dkt. No. 27-2, ¶ 4. The December 24, 2015 communication was the first communication Mr. Dickens received from Defendant with regard to the alleged debt. ¶ 20; Dkt. No. 27-2, ¶ 4. Mr. Dickens did not receive any additional written communications from Defendant within five days of the December 24, 2015 communication. ¶ 21.

The December 24, 2015 communication to Mr. Dickens stated, "Your Sam's Club MasterCard Account, which was issued by and owed to Synchrony Bank, has been referred to us by our client for collection." ¶ 22; Dkt. No. 6, ¶ 8. The December 24, 2015 communication then advised Mr. Dickens, in pertinent part:

> As of the date of this letter, our records show you owe a balance of $7,573.00 to Synchrony Bank. If you dispute this balance or the validity of this debt, please contact us. If you do not dispute this debt within 30 days after you receive this letter, we will assume the debt is valid.

> However, if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you. Or, if within 30 days of receiving this letter you request the name

---

[2] All references to ¶__ or ¶¶__ without accompanying docket citations are references to paragraphs in Plaintiff's Class Action Complaint. *See* Dkt. No. 1.

> and address of the original creditor, we will provide it to you in the event it differs
> from our client, Synchrony Bank.

¶ 23; Dkt. No. 6, ¶ 9.

Defendant's December 24, 2015 debt collection letter indisputably omitted the "in writing" and "written request" language required by 15 U.S.C. § 1692g(a)(4) and 15 U.S.C. § 1692g(a)(5), respectively. *See* Dkt. No. 1-1. As a result, and as this Court already found, Defendant violated the FDCPA by providing inaccurate disclosures regarding Plaintiff's statutory rights and how he may exercise them. *See Dickens*, 220 F. Supp. 3d at 1320.

Importantly, these violations are by no means trivial. "Consistent with the FDCPA's remedial nature, the legislative history also shows that Congress's sole goal in enacting § 1692g(a) was consumer protection." *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1080 (9th Cir. 2016). "Section 1692g furthers th[e] purpose [of protecting debtors from abusive debt collection activity] by requiring a debt collector who solicits payment from a consumer to provide that consumer with a detailed validation notice, which allows a consumer to confirm that he owes the debt sought by the collector before paying it." *Papetti v. Does 1-25*, 691 F. App'x 24, 26 (2d Cir. 2017). Calling it a "significant feature" of the FDCPA, Congress "added the validation of debts provision specifically to ensure that debt collectors gave consumers adequate information concerning their legal rights." *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1989) (citing S. Rep. No. 95-382 at 4). "The aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options. It is also to make the rights and obligations of a potentially hapless debtor as pellucid as possible." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008).

As the Southern District of Texas stated:

> Section 1692g(b) provides that if the consumer notifies the collector of a dispute in writing within the 30–day period, the collector must cease collection activities until he obtains the verification or information required by subsections 1692g(a)(4) and (a)(5). But if the consumer disputes the debt orally rather than in writing, the consumer loses the protections afforded by § 1692g(b); the debt collector is under no obligation to cease all collection efforts and obtain verification of the debt.

*Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 869 (S.D. Tex. 2011). "Thus, if a debt collector does not inform the consumer that a debt dispute must be in writing, the consumer could dispute the debt during a telephone call to the debt collector, but the debt collector would not be required to cease its collection efforts and the consumer would not benefit from the protections afforded by the FDCPA." *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F. Supp. 2d 336, 340 (E.D.N.Y. 2002). Moreover, and despite Defendant's contention here that it has a policy to treat oral disputes and written disputes in the same manner, a consumer who orally disputes a debt would have no remedy at law if Defendant were to not abide by said internal policy.

Pertinent to Plaintiff's instant request, during the proposed class period—April 4, 2015 through April 4, 2016—Defendant mailed 9,682 initial written communications to persons within Florida that omitted the "in writing" and "written request" language required by 15 U.S.C. § 1692g(a)(4) and 15 U.S.C. § 1692g(a)(5), respectively. *See* Dkt. No. 27-1 at 2-3. And as Defendant possesses a list of the names and addresses of each of these persons, there should be no issue identifying the members of the proposed class.

## Argument

To attain certification of the proposed class, Plaintiff must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). And since Plaintiff seeks certification under Rule 23(b)(3), she must also demonstrate that common issues predominate and that class

treatment is the superior method to resolve this dispute. *See Drossin v. National Action Fin. Servs., Inc.*, 255 F.R.D. 608, 616 (S.D. Fla. 2009) (certifying FDCPA class).[3]

In deciding whether to certify a class, a court should consider that certification is conditional and may be modified or vacated as the case progresses toward resolution on the merits. Fed. R. Civ. P. 23(c)(1)-(4); *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1273-74 (11th Cir. 2000).

## I.    Claims under the FDCPA are well-suited for class action treatment.

The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. 15 U.S.C. § 1692 *et seq*. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692(k). The provisions of the FDCPA declare certain rights available to debtors, forbid deceitful and misleading practices, and prohibit harassing and abusive tactics.

In enacting the FDCPA, Congress found that "[t]here is abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Designed to protect consumers from unscrupulous

---

[3]    Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

collectors, whether or not there exists a valid debt, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) ("The Fair Debt Collection Practices Act prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices.").

"Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal Collections*, 385 F. 3d 337, 345 (3d Cir. 2004). As the Fourth Circuit Court of Appeals recognized, "[w]ithout a real sting, the defendants would be unlikely to be deterred from violating the Act, in light of the substantial profit to be made using aggressive and improper collection practices." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 141 (4th Cir. 1996). Congress, in fact, designated special remedies to unnamed members of a class action filed under the FDCPA. *See* 15 U.S.C. §§ 1692k(a)-(b).

Moreover, class treatment of FDCPA claims is particularly appropriate because the FDCPA is a strict liability statute liberally construed in favor of the consumer. *Hepson v. J.C. Christensen and Assoc., Inc.*, No. 8:07-cv-1935-T-26EAJ, 2008 WL 4833097, at *4 (M.D. Fla. Nov. 5, 2008) (Lazzara, J.) ("the FDCPA must be liberally construed to support its remedial nature"). To that end, the Eleventh Circuit uses the "least-sophisticated consumer" standard to evaluate whether a debt collector's communications violate the FDCPA. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985) ("we believe that the FDCPA's purpose of protecting consumers is best served by a definition of 'deceive' that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's letters and telephone calls."). This

objective standard protects "naive consumers" and, because it is an objective test, it is immaterial whether a debt collector's representations misled an individual consumer, thus rendering individualized determinations irrelevant. *Orr v. Westport Recovery Corp.*, Civil Action No. 2:12-CV-187-WCO, 2013 WL 1729578, at *3 (N.D. Ga. Apr. 16, 2013). Furthermore, because the FDCPA is a strict liability statute, it is not necessary to demonstrate that Defendant acted with any ill intent. *Kennedy v. Compucredit Holdings Corp.*, 9 F. Supp. 3d 1314, 1316 (M.D. Fla. 2014) (Adams, Jr., J.) ("Accordingly, the FDCPA prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt as well as the use of unfair or unconscionable means of collection. The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute.").

Accordingly, given their overwhelmingly common questions of fact and law, numerous district courts in the Eleventh Circuit have certified class actions, like here, based on form communications and standardized debt collection activity. *See, e.g.*, *Kemper v. Andreu Palma, & Andreu*, Case Number: 15-21226-CIV-MARTINEZ-GOODMAN, 2016 WL 3545935 (S.D. Fla. Jun. 23, 2016); *Roundtree v. Bush Ross, P.A.*, 304 F.R.D 644, 661 (M.D. Fla. 2015) (Whittemore, J.); *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664 (S.D. Fla. 2014); *Klewinowski v. MFP, Inc.*, No. 8:13-cv-1204-T-33TBM, 2013 WL 5177865 (M.D. Fla. Sept. 12, 2013) (Covington, J.); *Lewis v. ARS Nat'l Services, Inc.*, 2011 WL 3903092 (N.D. Ala. Sept. 6, 2011); *Gaalswijk-Knetzke v. Receivables Mgmt. Services Corp.*, No. 8:08-cv-493-T-26TGW, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008) (Lazzara, J.); *Agan v. Katzman & Korr*, P.A., 222 F.R.D. 692 (S.D. Fla. 2004); *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697 (M.D. Fla. 2000) (Kovachevich, J.); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665 (M.D. Fla. 1999) (Adams,

J.). This Court should do the same.

## II. Plaintiff satisfies the requirements of Rule 23(a).

### A. The members of the class are so numerous that joinder is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986) (Melton, J.). While parties seeking class certification do not need to know the "precise number of class members," they "must make reasonable estimates with support as to the size of the proposed class." *Fuller*, 197 F.R.D. at 699. The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003).

Here, Defendant mailed initial debt collection letters to over 9,000 persons with Florida addresses between April 4, 2015 and April 4, 2016, each of which contained materially identical violative language. *See* Dkt. No. 27-1 at 2-3. As this Court previously found, because the proposed class has more than 9,000 members, it is sufficiently numerous that joinder is impracticable. *Dickens*, 220 F. Supp. 3d at 1321; *see also Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1279-80 (S.D. Fla. 2012) (numerosity satisfied with estimated class size of at least 50 persons); *Macy*, 318 F.R.D. at 339 (numerosity satisfied where approximately 9,000 letters were mailed).

### B. Questions of law and fact are common to the members of the class.

The commonality requirement of Rule 23 demands only that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires at least one issue

common to all members of the class, but does not require that all factual and legal questions be common." *Agan*, 222 F.R.D. at 697. The commonality element is generally satisfied when "[d]efendants have engaged in a standardized course of conduct that affects all class members." *Id.* ("Similarly, a plaintiff satisfies the commonality requirement when all class members received the same collection letter.").

"Here, by definition, each putative class member received a dunning letter containing the same Verification Notice. The sole and dispositive legal question is whether that Verification Notice violates the FDCPA." *Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 3:11cv78, 2011 WL 5325674, at *2 (E.D. Va. Nov. 3, 2011). Each class member, therefore, has the same claims against Defendant, and, as this court previously found, the commonality requirement accordingly is met. *See Dickens*, 220 F. Supp. 3d at 1321 ("Here, each member of the putative class received a letter from Defendant, a verification notice, and each verification notice failed to specify that certain rights must be exercised in writing. As stated above, the principal issue in this case (at least for determining liability) was whether this omission violated the Act. The commonality requirement has been met."); *Agan*, 222 F.R.D. at 698 (finding commonality satisfied where "[a]ll of the proposed class members received the same form letter and claim of lien, and all of the proposed class members have the same legal question of whether the form letter and claim of lien violated the FDCPA and FCCPA."); *Macy*, 318 F.R.D. at 339 (finding commonality where GC Services Limited Partnership sent similar debt collection letters to all proposed class members).

### C.   Plaintiff's claims are typical of the claims of the members of the class.

The third requirement under Rule 23(a) is that the claims or defenses of the class representative must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3).

Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

"The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) (Schlesinger, J.) ("The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore, typicality will not be destroyed by factual variations."). To defeat typicality, the factual variation of a class representative "must be clear and must be such that interests of the class are placed in significant jeopardy." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004).

Here, as this Court previously found, *see Dickens*, 706 F. App'x at 533, typicality is satisfied as Defendant sent debt collection letters with materially identical language to thousands of persons in Florida during the class period, all of whom have FDCPA claims identical to Plaintiff based solely on the text of the debt collection letters Defendant sent to them. *See Agan*, 222 F.R.D. at 698 ("Parties seeking class certification have satisfied the typicality requirement by showing that all prospective class members received a variation of the same collection letter."); *Swanson*, 186 F.R.D. at 668 ("Because Plaintiff alleges that the notice itself was contradictory and misleading to the least sophisticated consumer and Plaintiff as well as the putative class received the notice, the Court finds that typicality has been shown."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *3 ("Because the same or substantially similar letter was sent to all class members as well as the class representative, the Court finds that typicality has been

satisfied."). As Judge Whittemore explained, because "[Plaintiff] received the Letter from [Defendant] with the overshadowing language . . . [Plaintiff] possesses the same interests and suffered the same injuries as the members of the proposed classes and can therefore assert identical claims and seek identical relief as the members of the proposed classes." *Roundtree*, 304 F.R.D. at 660. [4]

### D. Plaintiff and her counsel will fairly and adequately protect the interests of class members.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). An adequacy analysis requires two inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class, and (2) whether the representatives will adequately prosecute the action. *Dickens*, 706 F. App'x at 535. "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a fundamental one going to the specific issues in controversy." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

Here, Mr. Dickens diligently pursued this case with the goal of obtaining relief for the members of the class and forcing Defendant to change its practices moving forward. Dkt. No.

---

[4]     As a substituted party, Plaintiff "steps into the same position of the original party." *Bradley v. Franklin Collection Serv., Inc.*, No. 5:10-CV-1537-AKK, 2012 WL 12895015, at *4 (N.D. Ala. Apr. 10, 2012). Moreover, "subject matter jurisdiction, once it validly exists among the original parties, remains intact after substitution." *Ransom v. Brennan*, 437 F.2d 513, 516 (5th Cir. 1971).   As such, there is no need for Plaintiff herself to demonstrate that she has standing because she is maintaining the action in place of Mr. Dickens, who was already found to have standing. *See Dickens v. GC Servs. Ltd. P'ship*, No: 8:16-cv-803-T-30TGW, 2016 WL 3917530, at *2 (M.D. Fla. July 20, 2016) ("As the plaintiff did in *Church*, Dickens adequately alleged an injury in fact. He has standing and the Court has jurisdiction.").

27-2 at ¶ 5. When Mr. Dickens passed away, his wife was substituted in as the plaintiff in her role as personal representative of his estate. Dkt. No. 60.

"There is no *per se* rule that an estate administrator cannot be a class representative…." *Allen v. Holiday Universal*, 249 F.R.D. 166, 186 (E.D. Pa. 2008). As a result, absent a showing of serious conflict, courts have found executors of an estate to be adequate class representatives. *See, e.g.*, *In re Fleetboston Fin. Corp. Secs. Litig.*, Civ. No. 02–4561, 2005 WL 3579050, at *4 (D.N.J. Dec. 28, 2005) (rejecting arguments as to why representative of estate was inadequate class representative); *Kaplan v. Pomerantz*, 131 F.R.D. 118, 124 (N.D. Ill. 1990) ("The Court concludes that plaintiff's status as the administrator of his wife's estate does not render him an inadequate class representative."); *In re Consumers Power Co. Securities Litigation,* No. 83-CV-6448-AA, 1988 WL 106928, at *5 (E.D. Mich. Jun. 8, 1988) (recommending certification of class and appointment of administrator of estate as class representative); *Shamberg v. Ahlstrom*, 111 F.R.D. 689, 695 (D.N.J. 1986) (executors of deceased shareholder's estate satisfied adequacy requirement and were entitled to certification of shareholder class of plaintiffs); *Kane Assocs. v. Clifford*, 80 F.R.D. 402, 407-08 (S.D.N.Y. 1978) (rejecting argument that trustee was not adequate class representative); *Clark v. Cameron–Brown Co.*, 72 F.R.D. 48, 54-55 (M.D.N.C. 1976) (estate executor can adequately represent the class).

Here, Plaintiff is committed to vigorously pursuing the class members' claims with their best interests in mind. *See* Declaration of Terri E. Dickens, attached as Exhibit A, at ¶ 6. Furthermore, she has no interests antagonistic to the members of the class. In short, Plaintiff stands willing and prepared to serve this Court and the class.[5]

---

[5]     While this Court previously found that Mr. Dickens would adequately prosecute this action, it nonetheless determined that he was an inadequate class representative because he only

Moreover, Plaintiff has retained the services of counsel who are well-versed in class action litigation and who are committed to continuing to vigorously pursue this matter. *See* Declaration of James L. Davidson, at ¶ 8 (collecting cases). As such, Plaintiff satisfies Rule 23(g). *See, e.g.*, *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 690 (S.D. Fla. 2014) ("Mr. Brooksher is aware of the TCPA violation, understands C-Mart has responsibilities as a named-plaintiff in this case, and demonstrates a willingness to represent the class, which has similar claims as C-Mart. In addition, class counsel has sufficient qualifications and experience to handle this class action litigation and has been found adequate in previous TCPA proceedings. Defendant fails to show that conflict of interest exists between C-Mart, its chosen counsel, and the class members. Therefore, the adequacy requirement is satisfied.").

### III.   Plaintiff satisfies the requirements of Rule 23(b)(3).

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Pertinent here, Rule 23(b)(3) requires that questions of law or fact common to the class predominate over questions affecting the individual members and that, on balance, a class action is superior to other methods available for adjudicating the controversy.

### A.  The questions of law and fact common to the class predominate.

"Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions."

---

sought statutory damages. *See Dickens*, 220 F. Supp. 3d at 1323. In reversing this Court's order, the Eleventh Circuit found that even though Mr. Dickens sought only statutory damages, this "created no substantial conflict of interest." *Dickens*, 706 F. App'x at 535. Accordingly, this Court should find Plaintiff to be an adequate class representative.

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4. The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Here, the central legal issue before this Court is whether Defendant's debt collection letters violated the FDCPA. Numerous courts have found that common questions of law and fact predominate where class members' claims are based on standardized debt collection letters, as is the case here. As a result, Plaintiff readily satisfies the predominance requirement. *See, e.g.*, *Roundtree*, 304 F.R.D. at 662 ("Here, the issues of whether Bush Ross is a debt collector and engaged in collection activity and whether Bush Ross engaged in an act or omission prohibited by the FDCPA are issues common to Roundtree and the members of each of the proposed classes. Furthermore, the claims of Roundtree and the class members derive from the same legal theories, involve the same collection letters and notices and fee collection practices, and warrant the same statutory damages as a remedy."); *Klewinowski*, 2013 WL 5177865, at *4 ("Furthermore, the common question to be decided is whether the "YOUR CREDITORS" letter violates the FDCPA. This common issue predominates over any other issue presented in this matter, and thus, the requirement of predominance has been satisfied."); *Agan*, 222 F.R.D. at 701 ("The Court finds that Plaintiffs have satisfied Rule 23(b)(3) and that monetary damages are

appropriate in this class action. The common issues presented by sending allegedly illegal form letters and claims of lien predominate over any individual issues presented, and the class action is the superior method for resolving this dispute because it would be uneconomical to litigate these issues individually.").[6]

As Judge Thompson explained in certifying a class action based on an allegedly misleading form debt collection letter:

> In general, predominance is a test readily met in certain cases alleging consumer ... fraud. Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. To determine whether the collection letters sent by American Recovery Systems violated the FDCPA, the court will not need to question whether each class member was deceived or misled by the privacy notice, because the least sophisticated consumer standard governs. Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled. Thus, the only individualized proof necessary will be whether each class member received a letter identical to [Plaintiff's]. Since that is a prerequisite for joining the class, the court finds that common questions of fact and law predominate in this case.

*Lewis*, 2011 WL 3903092, at *5. The same is true here. *See Macy*, 318 F.R.D. at 343 (finding predominance satisfied).

### B. A class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's claims, and the claims of class members.

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider (1) the interest of members of the class in individually controlling the prosecution or

---

[6] *See also Gaalswijk-Knetzke*, 2008 WL 3850657, at *4 (finding common issues predominate where "all of the claims of the named Plaintiff and the class members are based on the same legal theories, the same form collection letters, and the same remedy"); *Fuller*, 197 F.R.D. at 701-02 ("The essential common factual link between all of the prospective class members is the letters sent by Defendants. Plaintiffs' basis for the claim is the language and content of the letters."); *Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 689 (S.D. Fla. 2013) ("As to the FDCPA class, the Court finds that common issues predominate.").

defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010) (the Court should consider "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."). As the Eleventh Circuit has previously explained:

> [C]lass actions often involve an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit. The plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he would not file suit individually. This consideration supports class certification in cases where the total amount sought by each individual plaintiff is small in absolute terms. It also applies in situations where, as here, the amounts in controversy would make it unlikely that most of the plaintiffs, or attorneys working on a contingency fee basis, would be willing to pursue the claims individually. This is especially true when the defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings.

*Klay*, 382 F.3d at 1270-71.

This Court previously found superiority to be lacking because it determined that class members have an interest in controlling the prosecution of their own actions, and because it determined that the value of the litigation was likely so low that it would be dwarfed by the cost of administering a class action, *Dickens*, 220 F. Supp. 3d at 1325-26. But on appeal, the Eleventh Circuit found this focus misplaced. *Dickens*, 706 F. App'x at 539. The Eleventh Circuit instructed this Court to consider the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs. *Id.* at 537.

As the Eleventh Circuit additionally explained, "[m]any courts comparing class actions to

other adjudicative methods in FDCPA cases have concluded that class actions are a more efficient and consistent means of trying the legality of collection letters." *Id.* at 538. This is in part because "separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 294 (M.D. Ga. 2016) Moreover, "[c]lass members would have less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery should they be required to individually litigate their claims." *Magallon v. Robert Half Int'l., Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015). And finally, most class members would be unware of their rights in the first place, and as a result, unlikely to pursue claims. *See, e.g.*, *Schwarm v. Craighead*, 233 F.R.D. 655, 664 (E.D. Cal. 2006) ("Not only are most individual consumers unaware of their rights under the FDCPA, but also the size of the individual claims is usually so small there is little incentive to sue individually.").

As a result, and because the claims in this case arise from a form initial debt collection letter used by Defendant, a class action is the superior vehicle for determining the rights of absent class members. *Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005) ("Case law affirms that class actions are a more efficient and consistent means of trying the legality of collection letters."). Of note, in certifying FDCPA claims, Judge Scola explained:

> The Court finds that resolving the issues raised by the Plaintiff in a class action would be superior to other available methods to fairly and efficiently resolve this controversy. As explained above, common questions of law and fact predominate over any individualized issues. In addition, the Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating Plaintiffs' claims under the FDCPA [].

*Muzuco v. Re$ubmitt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013); *see also Gaalswijk-Knetzke*,

2008 WL 3850657, at *5 ("Congress, however, did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing separate suits. On the contrary, Congress provided for class actions as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action."); *Agan*, 222 F.R.D. at 701 (finding a class action superior because, in part, "Debtors who seek to change the unfair debt collection practices may lack the incentive to bring action under the FDCPA [] because successful plaintiffs are only awarded a maximum of $1,000.").

## Conclusion

As the court noted in *Roundtree*, "given the large number of claims, the relatively small amount of damages available, the desirability of consistently adjudicating the claims, the high probability that individual members of the proposed classes would not possess a great interest in controlling the prosecution of the claims, and the fact that it would be uneconomical to litigate the issues individually, a class action is the superior method by which [Plaintiff] and the class members' claims under the FDCPA should be adjudicated." *Roundtree*, 304 F.R.D. at 663.

Accordingly, Plaintiff respectfully requests that this Court grant this renewed motion for class certification and appointment of class counsel, appoint Plaintiff, in her capacity as personal representative of the estate of Mr. Dickens, as class representative, and appoint Greenwald Davidson Radbil PLLC as class counsel.

Dated: April 30, 2018                         */s/ James L. Davidson*
                                              James L. Davidson
                                              Michael L. Greenwald
                                              Jesse S. Johnson
                                              Greenwald Davidson Radbil PLLC
                                              5550 Glades Road, Suite 500
                                              Boca Raton, FL 33431
                                              Telephone: (561) 826-5477
                                              Facsimile: (561) 961-5684
                                              jdavidson@gdrlawfirm.com
                                              mgreenwald@gdrlawfirm.com
                                              jjohnson@gdrlawfirm.com

                                              Counsel for Plaintiff and the proposed class


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on April 30, 2018, via the Court Clerk's CM/ECF system, which will provide notice to the following counsel of record:

William S. Helfand
LEWIS BRISBOIS BISGAARD & SMITH LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone: (713) 659-6767
Facsimile: (713) 759-6830
bill.hefland@lewisbrisbois.com

                                              */s/ James L. Davidson*
                                              James L. Davidson