RONNIE E. DICKENS,
on behalf of himself and others similarly
situated,

          Plaintiff,

v.

GC SERVICES LIMITED PARTNERSHIP,

          Defendant.

Civil Action No. 8:16-cv-00803-JSM-TGW

## DEFENDANT'S RESPONSE IN OPPOSITION TO
## PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

Defendant GC Services Limited Partnership moves the Court to deny Plaintiff's renewed motion for class certification because, as a threshold matter, Plaintiff lacks standing to bring this suit and, therefore, to confer subject matter jurisdiction. Even if, *arguendo*, Plaintiff has standing, her proposal to certify a class does not satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and her motion does not meet the requirements for class certification under Rule 23(b). Accordingly, the Court should deny Plaintiff's renewed motion for class certification and dismiss this entire action for lack of subject matter jurisdiction.

## INTRODUCTION

Terri E. Dickens is an individual residing in Florida who, in her capacity as personal representative of the estate of Ronnie E. Dickens, has been substituted as the named Plaintiff on behalf of her late husband. In late December 2015 or early January 2016, Decedent Ronnie E. Dickens received a letter from GC Services regarding a debt owed by Decedent to Synchrony Bank. The letter provided multiple addresses and a toll-free telephone number for Decedent to contact GC Services to dispute the debt or obtain information regarding the original creditor. However, Decedent

filed this lawsuit under the Fair Debt Collection Practices Act without ever attempting to contact GC Services regarding the debt the letter attempted to collect.

Plaintiff, who has admitted neither she nor Decedent suffered any loss or injury as a result of receiving GC Services' letter, claims entitlement to statutory damages under the FDCPA and has moved to certify a class of individuals who received the same letter as Decedent. Thus, the issue before the Court is twofold: (1) does Plaintiff have Article III standing to sue, and, if so, (2) should the Court certify the broader class of people Plaintiff seeks to represent? The answer to each question is "No." Accordingly, Plaintiff's renewed motion for class certification should be denied and this entire action should be dismissed for lack of subject matter jurisdiction.

## FACTUAL BACKGROUND

On May 15, 2013, Decedent applied for a Sam's Club Discover-branded credit card.[1] Synchrony Bank, formerly known as GE Capital Bank, approved Decedent's application and opened an account in the name of Ronnie E. Dickens.[2] In or about June 2014, Decedent's account was changed to a Sam's Club MasterCard account.[3] After Decedent failed to pay a debt owed on the account, Synchrony engaged GC Services to collect the debt.[4]

On December 24, 2015, GC Services sent a personalized letter to Decedent in an attempt to collect Decedent's debt owed to Synchrony.[5] The letter states in relevant part:

> As of the date of this letter, our records show you owe a balance of $7,573.00 to Synchrony bank. **If you dispute this balance or the**

---

[1] Ex. A, Declaration of Angel Nayman at ¶ 7.

[2] *Id*. at Ex. A (Ronnie E. Dickens' credit card application dated May 15, 2013).

[3] *Id.*, at ¶ 9.

[4] *Id*. at ¶ 12.

[5] *Id*.

**validity of this debt, please contact us.** If you do not dispute this debt within 30 days after you receive this letter, we will assume the debt is valid.

However, if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you. Or, if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank.[6]

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, requires debt collectors to send the consumer a written "validation" notice informing the consumer of his or her right to obtain from the debt collector verification of the debt or a copy of a judgment against the consumer by notifying the debt collector in writing, within 30 days after receipt of the notice, that the consumer disputes the debt, or any portion thereof.[7] The FDCPA also requires the written validation notice inform the consumer of his or her right to obtain from the debt collector the name and address of the original creditor, if different from the current creditor, by notifying the debt collector in writing of such a request within the 30-day period.[8] In this case, the letter allegedly received by Decedent was the written validation notice, and it complied with the statutory requirements to give such notices.[9]

Plaintiff Terri E. Dickens first saw the letter sometime after Decedent received it in late 2015 or early 2016.[10] At that time, Decedent instructed Plaintiff to put the letter on the couple's refrigerator and take a photograph with Plaintiff's cellphone.[11] Decedent then instructed Plaintiff to

---

[6] Dkt. 1, at Ex. A (emphasis added).

[7] 15 U.S.C. § 1692g(a)(4).

[8] 15 U.S.C. § 1692g(a)(5).

[9] Dkt. 1, at Exhibit A.

[10] Ex. B, Dickens Dep. 17:10-17:17, June 15, 2018.

[11] *Id*. at 19:25-20:25.

email the photograph of the letter to an attorney at an address provided by Decedent.[12] Decedent then placed the letter in a file, where it is presently kept.[13] Decedent filed the present lawsuit on April 4, 2016.[14]

Plaintiff, as personal representative of Decedent's estate, alleges, albeit inaccurately, that the letter misstated the method for disputing Decedent's debt and requesting the name and address of his original creditor.[15] Specifically, Plaintiff claims the letter violated 15 U.S.C. § 1692g(a)(4) because it did not "inform [Decedent] that [GC Services] need only mail verification of the debt, or a copy of the judgment, if any, to him if he notified [GC Services], **in writing**, that [Decedent] disputed the Debt."[16] Plaintiff also claims the letter violated 15 U.S.C. § 1692g(a)(5) because the letter did not "inform [Decedent] that [GC Services] need only provide him the name and address of the original creditor, if different from the current creditor, if he notified [GC Services] of such request, **in writing**."[17] However, while this may be a correct statement of GC Services' minimal obligations under the statute, it is undeniably incorrect for Plaintiff to contend that a written communication was, in fact, the only means of obtaining GC Services' compliance in response to such a dispute or request from Plaintiff or any member of the putative class. Indeed, the undisputed evidence, specifically the Declaration of Mark Schordock, submitted as Exhibit C, clearly disproves Plaintiff's assertion of a hypothetical violation under either provision of the FDCPA.

---

[12] *Id.*

[13] *Id.* at 22:3-22:13.

[14] Dkt. 1.

[15] *Id.*, at ¶¶ 24-25.

[16] *Id.*, at ¶ 24 (emphasis in original).

[17] *Id.*, at ¶ 25 (emphasis in original).

On August 17, 2016, Decedent filed a motion for class certification and class counsel.[18] Before Decedent's motion was decided, Decedent moved for summary judgment.[19] On November 14, 2016, the Court denied Decedent's motion for class certification, but granted summary judgment in favor of Decedent and awarded him $1.00.[20] Decedent timely appealed the Court's denial of Decedent's motion for class certification.[21]

On August 23, 2017, the United States Court of Appeals for the Eleventh Circuit vacated the district court's denial of class certification and remanded the case to the district court for a new class certification determination. The Court reopened this matter on October 4, 2017.[22]

Plaintiff filed her renewed motion for class certification and appointment of class counsel and supporting brief on April 30, 2018, after being substituted as Plaintiff.[23] As discussed *infra*, Plaintiff does not have standing to bring this suit. Thus Plaintiff's motion to certify a class is moot. However, even if the Court finds Plaintiff has standing to sue, Plaintiff fails in her burden to demonstrate a basis for class certification under Rules 23(a) and (b) of the Federal Rules of Civil Procedure.

## ARGUMENT & AUTHORITIES

**Class certification should be denied and this entire action should be dismissed for lack of subject matter jurisdiction because Plaintiff lacks standing to bring suit.**

To maintain a class action claim under Federal Rule of Civil Procedure 23, a plaintiff must demonstrate standing under Article III of the United States Constitution. Standing exists if the

---

[18] Dkt. 27 and 31.

[19] Dkt. 32.

[20] Dkt. 48.

[21] Dkt. 49.

[22] Dkt. 53.

[23] Dkt. 65.

plaintiff has suffered an "injury in fact" or a "concrete and particularized" harm that is "fairly traceable to challenged conduct of the defendant" and is "likely to be redressed by a favorable judicial decision."[24] Plaintiff fails to proffer a concrete injury and therefore lacks standing under Article III to bring this suit.

**Article III standing requires a plaintiff to have suffered an "injury in fact" or a "concrete and particularized" harm that is "fairly traceable to challenged conduct of the defendant" and is "likely to be redressed by a favorable judicial decision.**

Threshold individual standing is a prerequisite for all actions, including class actions.[25] "A potential class representative must demonstrate individual standing vis-à-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action."[26] An objection to a federal court's lack of subject matter jurisdiction may be raised by a party at any stage in litigation.[27]

A person has constitutional standing to bring a suit in federal court if, among other things, he or she has "suffered an injury in fact."[28] The Supreme Court in *Spokeo, Inc. v. Robins* clarified the limits of a plaintiff's Article III standing in federal courts. Spokeo operates a search engine that gives access to individuals' personal information.[29] Robins filed suit when he discovered that his Spokeo-generated profile contained inaccurate information.[30] The trial court dismissed Robins' complaint, holding that he had not properly plead injury in fact as required by Article III.[31] The Ninth Circuit

---

[24] *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 578 (1992).

[25] *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

[26] *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998).

[27] FED. R. CIV. P. 12(h); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)

[28] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

[29] *Id*. at 1543.

[30] *Id*.

[31] *Id*.

reversed, finding that Spokeo's violation of the Fair Credit Reporting Act, which requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports, was willful.[32] Under the FCRA, "[a]ny person who willfully fails to comply with any requirement [of the Act] with respect to any" individual may be held liable for actual or statutory damages.[33]

In *Spokeo*, the Supreme Court held that the Court of Appeals engaged in an incomplete standing analysis; specifically, it failed to consider whether Robins' alleged injury was sufficiently "concrete" in addition to being particularized.[34] ***Spokeo* made clear that plaintiffs whose statutory rights have been violated, but have not suffered any real harm or a risk of real harm, do not have Article III standing**.[35] A plaintiff invoking federal jurisdiction bears the burden of establishing the "irreducible constitutional minimum" of standing by demonstrating (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision.[36] Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.[37]

*Spokeo* examined the two subparts of the "injury in fact" requirement, particularization and concreteness. The Court affirmed that to have Article III standing, the plaintiff's injury must be a

---

[32] *Id*.

[33] *Id*. at 1545.

[34] *Id*. at 1550.

[35] *Id*. at 1543.

[36] *Id.* (citing *Lujan*, 504 U.S. at 560-61).

[37] *Lujan* , 504 U.S. at 561.

concrete injury that is *de facto*, **meaning it must actually exist**.[38] Justice Alito explained: "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."[39] A "concrete injury" is still required.[40] As a consequence, the Court indicated, "[the plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation."[41]

Plaintiff's claims fail this most basic of Article III tests for standing. As Dickens testified in her deposition, Ronnie Dickens did not suffer any loss or injury as a result of receiving GC Services' letter:

> Q.     … . But did Mr. Dickens suffer any loss or injury as a result of not knowing whether he needed to make a dispute in writing versus calling?
>
> …
>
> A.     You said loss or injury?
>
> Q.     Right. Did anything bad happen? Did any harm befall on Mr. Dickens? Did he lose any money? Did he lose anything of value? Did anything happen to Mr. Dickens that wouldn't have happened if the letter had said, if you dispute this debt in writing?
>
> A.     **Not for loss or injury. No.**[42]

In fact, Plaintiff's only complaint, whether on behalf of herself, her late husband, or the purported class, is that GC Services' letter merely violated the text of the FDCPA:

> Q.     … . Other than that you think that [the letter] violates the law --

---

[38] *Spokeo*, 136 S.Ct. at 1548.

[39] *Id*. at 1549.

[40] *Id*.

[41] *Id.* at 1550.

[42] Ex. B, 55:10-55:24 (emphasis added).

A.   Uh-huh.

Q.   -- is there anything you're aware of that hurt anybody, Mr. Dickens or anybody else, by my client allowing more options to contact them other than in writing?

…

A   I would say -- no.[43]

Because Plaintiff has only alleged a bare procedural violation and not a concrete injury, Plaintiff's renewed motion for class certification must be denied and this entire action should be dismissed for lack of subject matter jurisdiction because Plaintiff lacks standing to bring this suit.

**Plaintiff lacks Article III standing because neither she nor Decedent incurred a concrete injury as a result of receiving the December 24, 2015 letter from GC Services.**

This case fails the concreteness standard from *Spokeo*. Dickens' three federal causes of action arise under the FDCPA based upon the December 24, 2015 letter sent to Ronnie Dickens which, while entirely truthful in its content, omitted disclosures under 15 U.S.C. § 1692 *et seq*. Neither Plaintiff nor Decedent sustained an injury from the December 24, 2015 letter, be it tangible, intangible, a risk of injury, or otherwise.[44]

*Spokeo* addresses the role of Congress in defining by statute which intangible injuries or risks of harm meet the threshold of Article III standing. Cited examples include slander *per se* or a group of voters' inability to obtain information.[45] These examples demonstrate that while Congress may identify an intangible harm—thereby solidifying it as sufficiently "concrete," Plaintiff **must still show some concrete harm** traceable to GC Services' act or omission. As was done in this case,

---

[43] *Id.*, 65:22-66:7.

[44] Ex. B, 55:10-55:24.

[45] *Spokeo*, 136 S.Ct. at 1549.

Plaintiff cannot set forth a "bare procedural violation divorced from any concrete harm" and maintain Article III standing.

In *Lyshe v. Levy*, the Court of Appeals for the Sixth Circuit held that plaintiff Lyshe failed to establish Article III standing by alleging that defendant Levy violated the FDCPA by failing to provide electronic discovery without prompting and requiring that the responses to the requests for admission he propounded to Lyshe be sworn and notarized.[46] For standing, Lyshe alleged that "the FDCPA created a concrete harm-receiving false information in connection with debt collection activities-that he suffered when Appellees made misstatements in their discovery requests about state procedural rules."[47] The Court found this view of the law "untenable."[48]

In *Church v. Accretive Health, Inc.*, the Court of Appeals for the Eleventh Circuit held that the plaintiff established standing by alleging the defendant violated the FDCPA by failing to send her certain required disclosures, even though she suffered no actual harm from this error.[49] Plaintiff and her attorney have previously relied on *Church* to support Plaintiff's position. However, the Sixth Circuit in *Lyshe* and the Eleventh Circuit in a more recently published decision, *Nicklaw v. Citimortgage, Inc.*, **specifically rejected** the holding from *Church* that such a letter was sufficient to confer standing.[50] In doing so, both *Lyshe* and *Nicklaw* emphasized that "standing is not met simply because a statute creates a legal obligation and allows a private right of action for failing to fulfil this obligation."[51]

---

[46] 854 F.3d 855 (6th Cir. 2017).

[47] *Id*. at 859.

[48] *Id*.

[49] 654 F. App'x 990, 991, 995 (11th Cir. 2016).

[50] *Lyshe*, 854 F.3d at 860; *Nicklaw*, 839 F.3d 998, 1000 (11th Cir. 2016).

[51] *Lyshe*, 854 F.3d at 860.

Most recently, and most detrimental to Plaintiff's standing argument, the Sixth Circuit decided *Hagy v. Demers & Adams, LLC*.[52] In *Hagy*, the plaintiffs filed suit under the FDCPA alleging a letter sent by a mortgage servicer's attorney to plaintiffs' attorney did not disclose that they were from a debt collector, in a purported violation of Section 1692e(11) of the FDCPA.[53] Plaintiffs did not show that the allegedly offending letter had caused them an injury-in-fact.[54] On appeal, the Sixth Circuit considered whether Congress has the authority to create statutory injuries that satisfy Article III of the U.S. Constitution's standing requirement in cases where there is no injury-in-fact.[55]

The Sixth Circuit held that Article III restricts Congress's broad power to define injuries and articulate legal chains of causation.[56] Applying this restriction to the FDCPA, the Sixth Circuit held that although "Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is."[57]

In this case, Plaintiff and this Court have relied on *Church* to find standing. In its Order denying GC Services' motion to dismiss [Dkt. 23], the Court observed:

> Noting that standing is a jurisdictional threshold courts must evaluate, the [*Church*] court first found that Congress, through the FDCPA, entitled the plaintiff to certain information, and thus an alleged invasion of this right is not hypothetical or uncertain. It may not result in tangible economic or physical harm, the court noted, but neither does constitutional standing. When the plaintiff alleged that the defendant

---

[52] 882 F.3d 616 (6th Cir. 2018).

[53] *Id.* at 618-19.

[54] *Id*. at 621.

[55] *Id*. at 621-22.

[56] *Id*. at 622.

[57] *Id*. at 622 (citing *Spokeo*, 136 S. Ct. at 1548-49).

failed to provide information she was entitled to receive, the Court concluded, she alleged a congressionally elevated cognizable injury. She alleged, in other words, a concrete injury.[58]

The *Church* analysis regarding standing is no longer good law—*Lyshe* and *Hagy* rejected this analysis noting that the lynchpin of the standing analysis is harm, or risk of harm.[59] *Lyshe* construed *Spokeo* to mean:

> … (1) a plaintiff may establish standing based on an alleged procedural violation if Congress conferred that procedural right to protect a plaintiff's concrete interest and if that violation presents a risk of harm to that interest; and (2) even if Congress conferred procedural rights, a plaintiff's claim for standing fails if he cannot demonstrate a material risk of harm to the underlying interest.[60]

The same court in *Hagy* dismissed the plaintiffs' appeal because the complaint failed to identify a cognizable injury traceable to the defendants' conduct, a statutory violation of the FDCPA, and "because Congress cannot override this baseline requirement of Article III … by labeling the violation of **any** requirement of a statute a cognizable injury."[61] The court observed:

> We know of no circuit court decision since *Spokeo* that endorses an anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III Injury. Although Congress may "elevate" harms that "exist" in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is.[62]

For that reason, a plaintiff could not, for example, allege a bare procedural violation, such as the FDCPA violations alleged here, divorced from any concrete harm, and satisfy the injury-in-fact

---

[58] Dkt 23 (internal citations omitted).

[59] *Hagy*, 882 F.3d at 622 (the Sixth Circuit explicitly calls into question whether *Church*, in light of *Nicklaw*, remains good law in the Eleventh Circuit).

[60] *Lyshe*, 854 F.3d at 860.

[61] *Hagy*, 882 F.3d at 618 (emphasis added).

[62] *Id*. at 622.

requirement of Article III.[63] Simply put, "**a statutory violation in and of itself is insufficient to establish standing**."[64]

The present case is the quintessential no-injury case addressed by *Spokeo*, *Lyshe, Nicklaw*, and *Hagy*. Even Plaintiff agrees that there is no loss or injury.[65] Assuming, *arguendo*, GC Services' letter violated the text of the FDCPA, Plaintiff still has only plead and testified to a violation without a corresponding injury. Therefore, Plaintiff does not have Article III standing to bring her claims.

**Without Article III standing for Plaintiffs' federal claims, Plaintiff's renewed motion for class certification must be denied.**

Article III specifies that the judicial power of the United States "extends only to 'Cases' and 'Controversies.'"[66] Here, Plaintiff alleges no more than hypothetical, procedural violations of a federal statute without any showing that the hypothecated violations caused Plaintiff harm or any material risk of harm. In fact, **Plaintiff admits there was no harm**.[67] Instead, Plaintiff suggests there could be harm from no more than a possible violation of the FDCPA. This gap is most apparent, and the lack of concrete injury becomes undeniable as, within Plaintiff's Complaint and during Plaintiff's deposition, Plaintiff asserts no more than GC Services's alleged misstatement contained in the Letter regarding the rights afforded by the FDCPA "could lead the least-

---

[63] *Lyshe*, 854 F.3d at 858-59.

[64] *Id*. at 859 (emphasis added). Most recently, a district court in the Seventh Circuit observed the *Hagy* decision "provided clear guidance" for evaluating standing in FDCPA matters: "At its core, *Hagy* affirms that a plaintiff must do more than assert that a defendant has not followed the letter of the FDCPA. There must also be a concrete or imminent injury." *Sebestyen v. Leikin, Ingber & Winters, P.C.*, 2018 U.S. Dist. LEXIS 101771, *9 (E.D.Mich., June 19, 2018). Adopting the Sixth Circuit's reasoning in *Hagy*, the Court granted the defendant's 12(b)(1) motion to dismiss.

[65] Ex. B, 55:10-55:24, 65:22-66:7.

[66] *Spokeo*, 136 S.Ct. at 1547.

[67] Ex. B, 55:10-55:24, 65:22-66:7.

sophisticated consumer to waive or otherwise not properly vindicate her rights under the FDCPA."[68]

The statement of mere **potential injury**—particularly expressed as such—is not the sort of "concrete" injury necessary to seek redress in federal court.[69] Plaintiff lacks standing to bring this lawsuit. Accordingly, Plaintiff's renewed motion for class certification should be denied because Plaintiff lacks standing to bring suit and this entire action should be dismissed for lack of subject matter jurisdiction.

## STANDARD FOR CLASS CERTIFICATION

Assuming, only for the purposes of this response, Plaintiff has standing to sue, Plaintiff must satisfy the requirements of Federal Rules of Civil Procedure 23(a) and 23(b) for the Court to certify the following proposed class:

> (1) All persons with a Florida address, (2) to whom GC Services Limited Partnership mailed an initial communication that stated: (a) "if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you," and/or (b) "if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank," (3) between April 4, 2015 and April 4, 2016, (4) in connection with the collection of a consumer debt, (5) that was not returned as undeliverable to GC Services Limited Partnership.[70]

Rule 23(a) requires one or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[71] Moreover, under

---

[68] Dkt. 1, ¶ 27.

[69] *Spokeo,* 136 S. Ct. at 1549.

[70] Dkt. 65, p. 2.

[71] FED. R. CIV. P. 23(a).

Rule 23(b)(3) a class action may be maintained only if Rule 23(a) is satisfied and if: (1) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.[72] Plaintiff's proposed class does not satisfy the requirements of Rule 23(a) and 23(b) and, thus, Plaintiff's renewed motion for class certification should be denied.

The Supreme Court has directed that, before certifying a class, district courts must conduct a "rigorous analysis" of the prerequisites of Rule 23 of the Federal Rules of Civil Procedure.[73] The Eleventh Circuit has held that district courts have broad discretion in deciding whether to certify a class, but that courts must exercise that discretion within the framework of Rule 23.[74] "The initial burden of proof to establish the propriety of class certification rests with the advocate of the class."[75] In order for an action to fall under Rule 23, a party "must affirmatively demonstrate his compliance" with the Rule.[76]

Here, Plaintiff fails to satisfy her burden to show the propriety of class certification. For example, noticeably absent from Plaintiff's renewed motion for class certification is any analysis of whether Plaintiff has proposed a class that is adequately defined and clearly ascertainable in which she, as representative of Decedent's estate, is a member. This is essential because, "[b]efore delving into the 'rigorous analysis' required by Rule 23, a court first should consider whether a precisely

---

[72] FED. R. CIV. P. 23(b)(3).

[73] *General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982).

[74] *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004), *cert. denied.*

[75] *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000).

[76] *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

defined class exists and whether the named plaintiffs are members of the proposed class."[77] Although Rule 23 does not explicitly identify these requirements, one necessary element is that there must be a "class."[78] Important elements of defining a class include: (1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way; and (2) facilitating a court's ability to ascertain its membership in some objective manner.[79] After meeting the threshold issue of a readily identifiable class, the party seeking class certification must meet all four requisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—before a class can be certified.[80] "One of the provisions of Rule 23(b) must also be concurrently met with the requirements of 23(a)."[81] Here, after the Court analyzes the Rule 23(a) factors, the Court should analyze Plaintiff's motion for class certification under Rule 23(b)(3), which requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[82]

**Class certification should be denied because Plaintiff has failed to propose an adequately defined and clearly ascertainable class in which she is a member.**

Before establishing the explicit requirements of Rule 23(a), a plaintiff must first establish that the proposed class is adequately defined and clearly ascertainable.[83] This threshold issue of

---

[77] *LaBauve v. Olin Corp.*, 231 F.R.D. 632, fn. 64 (S.D. Ala. 2005).

[78] 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1760 (3rd ed. 2006).

[79] *Id.*

[80] FED. R. CIV. P. 23(a); *Grillasca v. Hess Corp.*, No. 8:05-cv-1736-T-17-TGW, 2007 U.S. Dist. LEXIS 53356, *18 (M.D. Fla. July 24, 2007) (Wilson, J.).

[81] *Grillasca*, 2007 U.S. Dist. LEXIS 53356, at *7.

[82] FED. R. CIV. P. 23(b)(3).

[83] *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1303-04 (11th Cir. 2012).

"ascertainability," relates to whether the putative class can be identified: "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria."[84] These "objective criteria" should be "administratively feasible," meaning that the identification of class members should be "a manageable process that does not require much, if any, individual inquiries."[85] The district court must be satisfied that this requirement can be met even before delving into the rigorous analysis of the Rule 23 elements.[86] If a plaintiff fails to demonstrate that the putative class is clearly ascertainable, then class certification is properly denied.[87]

This case is not, and will not be, appropriate for class treatment because Plaintiff's proposed class is not adequately defined and clearly ascertainable. More specifically, in light of the clear mandate explained in *Spokeo*, and expanded upon in *Lyshe* and *Hagy*, to demand proof of an actual, concrete injury for each and every claimant to have standing, extensive inquiry would be required to determine whether each alleged, absent class member has an actual, concrete injury of his or her own, and thus standing to bring suit, a threshold prerequisite to be a member of any putative class.[88] The Supreme Court has indicated that "Rule 23's requirements must be interpreted in keeping with Article III constraints."[89]

---

[84] *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014).

[85] *Id.* (internal citations omitted) (reversing district court decision finding ascertainability satisfied where class could be identified by reference to the defendant's records).

[86] *See id.*

[87] *See Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012) (holding that district court denying class certification because the class was not adequately defined or clearly ascertainable did not abuse its discretion and commit a clear error of judgment).

[88] *Spokeo*, 136 S.Ct. at 1547.

[89] *Amchem Prods. v. Windsor*, 521 U.S. 591, 612-13, 117 S. Ct. 2231 (1997); *see also Walewski*, 502 F. App'x at 861 (finding no abuse of discretion where certification was denied in part because the class "impermissibly includes members who have no cause of action as a matter of law").

In order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision.[90] Although federal courts "do not require that each member of a class submit evidence of personal standing," a class cannot be certified if it contains members who lack standing.[91] A class "must therefore be defined in such a way that anyone within it would have standing."[92]

As a threshold issue, the Supreme Court has recognized that the plaintiff seeking certification must propose an identifiable class in which he is a member.[93] "A class representative must be part of the class and possess the same interest **and suffer the same injury** as the class members."[94] Recognizing this implicit, threshold requirement in Rule 23, the Eleventh Circuit held, "Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable."[95] If the plaintiff's proposed class is adequately defined and clearly ascertainable, the plaintiff must then establish the four requirements listed in Federal Rule of Civil Procedure 23(a)."[96]

In the present case, numerous factual disputes concerning whether each proposed class member has suffered the requisite "concrete and particularized" harm or risk of harm to have standing to bring suit would result in subjective mini-trials of each putative class member and thus make certification

---

[90] *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010).

[91] *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006).

[92] *Denney*, 443 F.3d at 264 (emphasis added).

[93] *General Telephone Co. v. Falcon*, 457 U.S. 147, 156, 102 S. Ct. 2364, 2370 (1982).

[94] *E. Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403, 97 S. Ct. 1891, 1896 (1977) (internal quotations omitted) (emphasis added).

[95] *Little v. T-Mobile USA, Inc*., 691 F.3d 1302, 1304 (11th Cir. 2012) (internal quotations omitted).

[96] *Id*.

improper. Plaintiff's proposed class definition fails to provide an objective manner of determining whether all the members of the proposed class have standing to bring suit, with specificity.

Plaintiff's purported class includes all persons with a Florida address to whom GC Services mailed a letter containing the same, relevant language found in the letter received by Decedent. However, Plaintiff has not alleged that **all** of the putative class members actually **received**, let alone **opened and read**, the letter in question **or** that they have suffered any specific injury, let alone a "concrete and particularized" injury caused by the receipt of such a letter. Further, **Plaintiff testified that she is unaware of any member of the proposed class who has suffered a loss or been harmed** as a result of receiving GC Services' letter:

> Q.   Do you know how many of the people to whom the letter was mailed in Florida during the period of time that your lawyers have inquired about, do you know how many of them actually opened the letter?
>
> A.   **No**.
>
> Q.   Do you know how many of them actually read the letter?
>
> A.   **No**.[97]

> Q.   … . My question is, as the class representative are you going to tell the judge and the jury that anybody in the class lost any money because of my -- the way my client wrote their letter?
>
> A.   **No**.
>
> Q.   Because you're not aware of that, correct?
>
> A.   **Right. I'm not aware of that.**
>
> Q.   In fact, Mr. Dickens was not out any money because of the way my client wrote the letter, correct?
>
> A.   **Correct**.[98]
>
> …

---

[97] Ex. B, 62:11-62:16 (emphasis added).

[98] *Id.*, 69:8-69:18 (emphasis added).

Q. Okay. Well -- but please tell me Mrs. Dickens, the goal here is not to give people money just to give them money, it's to give them money to compensate them … that is, to give them something back for something they lost. Is that what you're -- is that your goal?

A. **Right. But I don't know if these people have been harmed**.[99]

Instead, Plaintiff merely argues that because the proposed class members may have received, but without regard to whether they actually opened and read, the letters which contained language Plaintiff contends violated the FDCPA, they are entitled to statutory damages without any allegation of suffering an actual "concrete and particularized" injury. To be sure, the **only** mention in Plaintiff's **entire** Complaint that Plaintiff and the proposed class members sustained any injury at all is a wholly perfunctory and conclusory line:

To be sure, the claims of Plaintiff and all of the members of the class originate from the same conduct, practice and procedure on the part of Defendant, and Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed class.[100]

Nowhere else in the entire Complaint is "injury" or "harm" mentioned, much less any description of these "same injuries" allegedly "suffered" by Plaintiff and "each member of the proposed class." Even worse, Plaintiff testified that, other than receiving the letter, she was unaware of any harm or injury suffered by Decedent and the members of the proposed class:

Q. Paragraph 32 says, Plaintiff that's you, possesses the same interest and has suffered the same injury as members of the proposed class. What injury has Mr. Dickens suffered?

…

A. His rights were violated. He wasn't aware, that I know of.

Q. He was given inaccurate information?

A. Yes.

---

[99] *Id.*, 84:19-85:2 (emphasis added).

[100] Dkt. 1, ¶ 32.

Q.     Any other injury that Mr. Dickens suffered other than receiving a letter with what you believe was inaccurate information?

A.     **I don't know**.

…

Q.     **Do you know of any class member who suffered any injury?**

…

A.     **I don't know.**

Q.     **Not that you know of?**

A      **Not that I know of. Yes.**

Q.     **Okay. So do you have a means of showing that Mr. Dickens' injury is the same as anyone else in the class?**

A      **The letter.**

Q.     Just the letter?

A      Yes

Q.     **Anything else?**

A      **No**.[101]

Simply put, Plaintiff's proposed class cannot be adequately defined and clearly ascertainable because it is impossible to ascertain who (1) actually received the letter, (2) then, actually opened the letter, (3) then, actually read the letter, and (4) for those proposed class members who did, suffered the requisite "concrete and particularized" injury to have standing to bring suit. Importantly, the only people who, in theory, could have suffered the requisite "concrete and particularized" injury would be those who contacted GC Services by some non-written means to dispute their debt or request the name and address of their original creditor after having actually received, opened, and read the letter. But, even if, *arguendo*, there exists people who fit into that narrow category, those people still could not have suffered any injury because, as evidenced by the attached Declaration of Mark Schordock, it was GC Services' policy to treat non-written disputes and requests received from consumers the

---

[101] Ex. B, 113:6-114:8 (emphasis added).

same as written disputes and requests.[102] The difficulties inherent in identifying which of the proposed class members actually contacted GC Services by some non-written means after having received, opened, and read the letter, present serious administrative burdens that are inconsistent with the efficiencies expected in a class action. Many of the benefits that are the hallmark of a proper class action would be lost if the Court were required to make individual factual inquiries in order to determine the members of the proposed class.

Plaintiff's failure to establish an adequately defined and clearly ascertainable class alone is a basis on which the Court may, and should, deny certification. Nevertheless, GC Services will proceed to analyze the application of Rule 23(a) and show there is no merit in Plaintiff's class allegations.

**Plaintiff has failed to satisfy the numerosity requirement.**

Rule 23(a)(1) requires the proposed class be so numerous that joinder of all members is impracticable. This is often referred to as the numerosity requirement. "The numerosity requirement should not be applied in a yardstick fashion-i.e. whether 25 class members are enough or too few to satisfy Rule 23(a)(1)."[103]

Here, Plaintiff has failed to meet her burden of demonstrating the number of persons she seeks to represent **and who actually have standing to sue.** All of the persons referenced in Plaintiff's renewed motion for class certification to whom GC Services mailed a letter containing the language at issue, without regard to whether those persons actually received, opened, and read the letter, and then contacted GC Services by some non-written means to dispute their debt or request the name and address of their original creditor, are disputed members of the proposed class. Plaintiff

---

[102] Ex. C, Declaration of Mark Schordock.

[103] *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986) (Melton, J.).

correctly states that GC Services sent approximately 9,000 such letters to addresses in Florida, but she does not identify any means by which the Court may create a class of people who actually received, opened, and read the letter, and then contacted GC Services by some non-written means to dispute their debt or request the name and address of their original creditor, the only means by which any putative class member could have suffered even a (legally insufficient) statutory violation, let alone the requisite actual, concrete injury necessary to have standing. [104] As discussed *supra*, Plaintiff has testified that she is unaware of how many members of the proposed class, if any, actually received, opened, and read the letter and, if so, how those proposed class members were injured, if at all. [105]

In attempting to meet the numerosity requirement, Plaintiff states in her motion for class certification that GC Services should possess a list of the names and addresses of the 9,682 persons within Florida to whom GC Services mailed the letter in question. [106] However, neither Plaintiff nor Defendant can identify who actually received, opened and read the letter in question, let alone who suffered any injury thereby from then contacting Defendant by a non-written means, since only people who wished to dispute their debt or request the name and address of their original creditor would be affected by the language of which Plaintiff complains. The numerosity requirement has not been met because, as explained *supra*, Plaintiff has wholly failed to allege that any member, much less all, of the proposed class has received, opened and read the letter or that any who did suffered the requisite "concrete and particularized" injury to have standing to bring suit. For this reason, the

---

[104] Plaintiff suggests her proposed class excludes persons whose letters were "returned as undeliverable to GC Services," Dkt. 65, p. 1, but she fails to show that such a definition will exclude actual non-recipients, let alone the potentially thousands of people who may have received the letter but never opened or read it, the only way they could have been "injured" based on Plaintiff's allegations.

[105] Ex. B, 62:11-62:16, 69:8-69:18, 84:19-85:2, 113:6-114:8.

[106] Dkt. 65, p. 5.

Court should find that Plaintiff has failed to meet the numerosity requirement with regard to the proposed class.

**Plaintiff has failed to satisfy the commonality requirement.**

Rule 23(a)(2) provides that, in order for a class to be certified, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has held, "What matters to class certification ... is not the raising of common questions-even in droves-but, rather the capacity of a classwide proceeding to generate common <u>answers</u> apt to drive the resolution of the litigation."[107] Here, Plaintiff asserts the commonality requirement is satisfied because the question common to all members of the proposed class is whether the letters at issue, which were mailed to the proposed class regardless of whether, like Decedent, any potential class member actually received, opened, and read the letter, violated the FDCPA.[108] Regardless of the fact that Plaintiff would pose this single question, it is clear that even an affirmative answer would not advance the litigation because the question posed ignores the overarching problem as to whether each proposed class member suffered the requisite "concrete and particularized" injury as a result of contacting GC Services by some non-written means to dispute his or her debt or request the name and address of their current creditor after having received, opened, and read the subject letter. It is only with individualized inquiry that the standing of each proposed class member can be determined. It is also obvious that questions relevant to establishing whether each putative plaintiff suffered the requisite "concrete and particularized" injury to have standing would necessarily predominate over any common issues, thus negating the requirement of Rule 23(b)(3). Accordingly, the commonality requirement has not been met.

---

[107] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal citations omitted).

[108] Dkt. 65, pp. 9-10.

**Plaintiff has failed to satisfy the typicality requirement.**

Rule 23(a)(3) requires that the claims of the representatives be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality limits the class claims to those fairly encompassed by the named Plaintiff's claims.[109] In *Williams v. Mohawk Indus.*, the Eleventh Circuit stated, "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)."[110] While commonality is concerned with the group's characteristics as a whole, typicality "refers to the individual characteristics of the named plaintiff in relation to the class."[111]

In this case, the typicality requirement fails for reasons similar to those discussed *supra* with respect to the commonality requirement.  In her Complaint, Plaintiff wholly fails to allege an injury, much less a "concrete and particularized" injury. As emphasized above, the **only** mention in the entire Complaint that Plaintiff and the proposed class members sustained any injury at all is the one, empty sentence, "To be sure, the claims of Plaintiff and all of the members of the class originate from the same conduct, practice and procedure on the part of GC Services, and Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed class," which Plaintiff has further discredited with her deposition testimony.[112] Even Plaintiff's motion for class certification glosses over the typicality requirement, steering clear of any discussion related to injury to Plaintiff, Decedent, or the proposed class.[113]

---

[109] *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980).

[110] 568 F.3d 1350, 1357 (11th Cir. 2009).

[111] *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1275 (11th Cir. 2009).

[112] Dkt. 1, ¶ 32.

[113] Dkt. 65, pp. 10-12.

If Plaintiff does not make known the injuries Decedent allegedly sustained as a result of GC Services' conduct, which she has not, how can the typicality prong of class certification be evaluated? In other words, without knowing Decedent's alleged injuries, how can it be determined whether those injuries arose from or are directly related to GC Services's alleged wrongful conduct to the proposed class, including Plaintiff? It cannot be done. Plaintiff has failed to satisfy the typicality requirement.

**Plaintiff has failed to satisfy the adequacy requirement.**

Rule 23(a)(4) permits a class to be maintained only if "the representative parties will fairly and adequately protect the interests of the class." The Eleventh Circuit held, "This adequacy of representation analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."[114] "If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate."[115] "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class. In such a situation, the named representatives cannot vigorously prosecute the interests of the class through qualified counsel because their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members."[116]

Plaintiff has not satisfied the adequacy requirement because fundamental conflicts exist because it is certainly conceivable some putative class members will claim to have been harmed by

---

[114] *Valley Drug Co. v. Geneva Pharms.*, Inc., 350 F.3d 1181, 1189 (11th Cir. 2003).

[115] Id. See 7A Charles Alan Wright & Arthur R. Miller, <u>*Federal Practice & Proc.*</u> § 1768, at 326 (2d ed. 1986) ("It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent.").

[116] *Valley Drug Co.*, 350 F.3d at 1189.

the same conduct that benefitted other members of the class. Of the 9,000+ proposed class members, it is by no means inconceivable that many of them upon receiving the Letter benefitted from it, notwithstanding its alleged deficiencies, by contacting GC Services, whether in writing or by telephone, to dispute their debt or request the name and address of the original creditor, and receiving from GC Services verification of the debt and/or the name and address of their original creditor.[117]

**Plaintiff has failed to satisfy the requirements of Rule 23(b)(3).**

Plaintiff seeks class certification under Rule 23(b)(3).[118] Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[119] However, as the Eleventh Circuit has determined, "[c]ommon issues will not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues. Certification is inappropriate if the plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims. The predominance inquiry requires an examination of the claims, defenses, relevant facts, and applicable substantive law to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant."[120]

---

[117] *See* Ex. C.

[118] Dkt. 1, ¶ 30; Dkt. 65, pp. 14-19.

[119] Fed. R. Civ. P. 23(b)(3).

[120] *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009).

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."[121] A district court conducting a Rule 23(b)(3) inquiry is obligated to take a "close look" at whether common questions predominate.[122]

Individual questions regarding the proposed class members' standing to bring suit overwhelm any questions common to the class, thus defeating class certification.[123] In this case, in order to have standing, an individual would have to prove he or she suffered the requisite "concrete and particularized" injury as a result of receiving, opening, and reading one of the subject letters and, then, contacting GC Services by a non-written means to dispute their debt or request the name and address of their original creditor. As best, Plaintiff alleges Decedent and each proposed class member have somehow suffered what can be best described as an abstract injury as a result of receiving a letter from GC Services which did not contain language explaining that in order to receive verification of their debt, or a copy of a judgment, their dispute of the debt had to be in writing, and that in order to receive the name and address of their original creditor, such a request had to be in writing. Of course, Plaintiff's testimony refutes these allegations, further damaging an already weak argument.[124]

Moreover, it is certainly conceivable some of the 9,000+ proposed class members upon receiving the subject letter threw it away unopened, just as some may have nevertheless contacted GC Services to dispute their debt, or request the name and address of the original creditor, and received verification of the debt, a copy of a judgment, and/or the name and address of their original

---

[121] *Comcast*, 133 S. Ct. at 1432.

[122] *See id.*

[123] *See id.*

[124] Ex. B, 62:11-62:16, 69:8-69:18, 84:19-85:2, 113:6-114:8.

creditor from GC Services. Thus, some proposed class members may not have suffered any injury and, therefore, not have standing. The proposed class members with standing cannot be readily identified absent an addressee by addressee review.

In this case, individualized proof of the action or inaction of each proposed class member upon his or her receipt of the subject letter from GC Services is necessary to determine whether he or she suffered the requisite "concrete and particularized" injury to have standing to bring suit. When such individualized proof of standing is involved, it eliminates the efficiencies associated with adjudicating claims on a class-wide basis. Accordingly, individual issues heavily predominate over any common issues that may exist, making this action inappropriate for certification under Rule 23(b)(3).

## CONCLUSION AND PRAYER

Plaintiff Terri E. Dickens has not and cannot demonstrate an "injury in fact" or a "concrete and particularized" harm that is "fairly traceable to challenged conduct of the defendant" and is "likely to be redressed by a favorable judicial decision." Moreover, Plaintiff proposed class does not satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and her motion does not meet the requirements for class certification under Rule 23(b). Accordingly, Defendant, GC Services Limited Partnership, respectfully requests this Court deny Plaintiff's renewed motion for class certification and dismiss this entire action for lack of subject matter jurisdiction.

June 27, 2018                                    Respectfully submitted,

                                                 By: */s/ William S. Helfand*
                                                     William S. Helfand, Esq.
                                                     LEWIS BRISBOIS BISGAARD & SMITH LLP
                                                     24 Greenway Plaza, Ste. 1400
                                                     Houston, Texas 77046
                                                     (713) 659-6767
                                                     (713) 759-6830 (Fax)
                                                     Bill.Helfand@lewisbrisbois.com
                                                     *Trial Counsel*
                                                     *Admitted Pro Hac Vice*

                                                 **ATTORNEY FOR DEFENDANT**
                                                 **GC SERVICES LIMITED PARTNERSHIP**


                                 <u>**CERTIFICATE OF SERVICE**</u>

          This is to certify that the undersigned counsel has this date, June 27, 2018, electronically filed **Defendant's Response in Opposition to Plaintiff's Renewed Motion for Class Certification and Appointment of Class Counsel** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who have made an appearance in this case, including:

James L. Davidson
Michael L. Greenwald
Jesse S. Johnson
Greenwald Davidson Radbil PLLC
5550 Glades Rd., Ste. 500
Boca Raton, FL 33431
jdavidson@gdrlawfirm.com
mgreenwald@gdrlawfirm.com
jjohnson@gdrlawfirm.com

                                                 */s/ William S. Helfand*
                                                 William S. Helfand