UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

---------------------------------------x
TERRI E. DICKENS, on behalf of the estate of : Civil Action No.: **8:16-cv-00803-JSM-TGW**
Ronnie E. Dickens and others similarly :
situated, :
 :
        Plaintiff, :
 :
   v. :
 :
GC SERVICES LIMITED PARTNERSHIP, :
 :
        Defendant. :
---------------------------------------x

**PLAINTIFF'S REPLY IN SUPPORT OF HER RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

## Introduction

At least two federal courts recently certified classes of consumers with claims against GC Services Limited Partnership ("Defendant") very similar to those at issue in this matter. *See Alderman v. GC Servs. Ltd. P'ship*, No. 2:16-CV-14508, 2018 WL 542455 (S.D. Fla. Jan. 19, 2018) (certifying class); *Macy v. GC Servs. Ltd. P'ship*, 318 F.R.D. 335 (W.D. Ky. 2017) (same). Here, raising many of the arguments that the *Alderman* and *Macy* courts rejected, which rest on a standing analysis that this Court previously described as "grossly misread[ing]" *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), Defendant asserts that this case should be dismissed, or in the alternative, that this Court should deny class certification. But like the *Macy* and *Alderman* courts did, this Court should reject Defendant's arguments, and certify the proposed class.

## Legal Argument

**I.    As this Court previously held, Plaintiff has standing to bring claims against Defendant.**

This Court previously rejected Defendant's argument that it lacks subject matter jurisdiction over this case:

> Though unpublished, this Court is convinced that the Eleventh Circuit's *Church* opinion is a more nuanced application of *Spokeo* and the principles underlying it. It is also directly on point. In the face of that persuasive authority, the Court will not read *Spokeo* as denying Dickens standing here. As the plaintiff did in *Church*, Dickens adequately alleged an injury in fact. He has standing and the Court has jurisdiction."

*See Dickens v. GC Servs. Ltd. P'ship*, No: 8:16-cv-803-T-30TGW, 2016 WL 3917530, at *2 (M.D. Fla. July 20, 2016).[1]

Undeterred by this Court's order finding Article III standing, however, and relying on out-of-circuit decisions and cherry-picked and out-of-context testimony from Terri E. Dickens ("Plaintiff"), Defendant again argues that this Court should dismiss this case because Plaintiff has not satisfied the injury in fact requirement for Article III standing. ECF No. 74 at 5-14.[2] But since *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016) is still persuasive

---

[1]    Notably, the Western District of Kentucky and the District of New Jersey have since followed this Court and rejected Defendant's standing arguments in cases involving the same form debt collection letter as that at issue here. *See Macy v. GC Servs. Ltd. P'Ship*, No. 15-0819, 2016 WL 5661525, at *3–4 (W.D. Ky. Sept. 29, 2016); *Kausar v. GC Servs. Ltd. P'ship*, No. 15–6027, 2017 WL 5175596, at *3 (D. N.J. Nov. 8, 2017); *see also Smith v. GC Servs. Ltd. P'ship,* No. 16-1897, 2017 WL 2629476, at *2 (S.D. Ind. June 19, 2017) ("[T]he Court finds Plaintiff was harmed by receiving an allegedly deficient and misleading communication from Defendants. Unlike the FCRA, a violation of the FDCPA for including inaccurate information is not a 'bare procedural violation.' Such omissions present a material risk of harm.").

[2]    Ms. Dickens—the widow of Ronnie Dickens—is the personal representative of Mr. Dickens's estate. ECF No. 60. As such, she "steps into the same position" as Mr. Dickens. *Ransom v. Brennan*, 437 F.2d 513, 516 (5th Cir. 1971).

authority, and because Plaintiff has standing even if this Court was to disregard *Church*, this Court should again reject Defendant's arguments.

### A. *Church* remains persuasive authority in the Eleventh Circuit.

Defendant contends that the Eleventh Circuit "**specifically rejected** the holding from *Church*" in *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016). *See* ECF No. 74 at 10 (emphasis in original). Not so:

> Aargon's argument that *Nicklaw* overruled *Church* is not persuasive. In *Nicklaw*, the Eleventh Circuit held that a violation of a statutorily created right to timely recording of the satisfaction of a mortgage is not necessarily a concrete harm. *Nicklaw* expressly distinguished a violation of the statutory right to timely recording of the satisfaction of a mortgage, which it held was not a concrete injury, from 'a violation of a statutory right to receive information,' which it held is a concrete injury."

*Bryant v. Aargon Collection Agency, Inc.*, No. 17-CV-14096, 2017 WL 2955532, at *3 (S.D. Fla. June 30, 2017); [3] *accord Moody v. Ascenda USA Inc.*, No. 16-CV-60364, 2017 WL 1337617, at *3 (S.D. Fla. Jan. 20, 2017) ("*Nicklaw* does not mandate reconsideration of the Court's opinion because it is not a change in controlling law. *Nicklaw* did not alter the standing principles described in *Spokeo*. Rather, the court in *Nicklaw* simply applied *Spokeo* as controlling law to the facts presented.").

Moreover, not only did the *Nicklaw* opinion fail to mention *Church*, but *Nicklaw* was not an FDCPA case. *See, e.g., id.* ("Those facts are clearly distinguishable, as *Nicklaw* involved the alleged violation of a state mortgage-recording statute, not the [Fair Credit Reporting Act]."). And since no subsequent Eleventh Circuit opinion has cast doubt on *Church*, it remains persuasive authority in this Circuit. *See Michael v. HOVG*, LLC, 232 F. Supp. 3d 1229, 1235

---

[3] Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

(S.D. Fla. 2017) ("In light of *Church* and other persuasive authority issued since *Spokeo*, Defendant's standing challenge, therefore, cannot stand."); *Ruk v. Crown Asset Mgmt., LLC*, No. 1:16-CV-3444-LMM-JSA, 2017 WL 3085282, at *6 (N.D. Ga. Mar. 22, 2017) ("Of the two recent Eleventh Circuit decisions, the Court views *Church* as more instructive than *Nicklaw*."). As a result, and as it did previously, this Court should follow the Eleventh Circuit's "directly on point" opinion in *Church* and reject Defendant's standing-based arguments.[4]

### B. Even disregarding *Church*, Plaintiff suffered a concrete injury sufficient to confer standing.

*Spokeo* does not "categorically . . . preclude [ ] violations of statutorily mandated procedures from qualifying as concrete injuries"—"some violations of statutorily mandated procedures may entail the concrete injury necessary for standing." *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016). "Among those circumstances are cases where a statutory violation creates the risk of real harm." *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017); *see also Strubel*, 842 F.3d at 190 ("[A]n alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a risk of real harm to that concrete interest."); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) ("In evaluating Robins's claim of harm, we thus ask: (1) whether the statutory provisions at issue were established to protect his concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of

---

[4] In addition to *Church*, "[p]ost-*Spokeo* [I], many [other] courts have held that FDCPA informational violations suffice to confer standing absent allegations of additional harm, because in passing the FDCPA Congress created a substantive right for debtors to receive information." *Byrne v. Oregon One, Inc.*, No. 3:16–cv–01371–YY, 2017 WL 3568412, at * 5 (D. Or. July 18, 2017) (collecting cases).

4

harm to, such interests.").[5] Indeed, *Nicklaw* counsels that a *risk of harm* arising from a statutory violation is sufficient to confer standing. *See Nicklaw*, 839 F.3d at 1002 ("A plaintiff must suffer some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court.").

Turning then to the claims at hand, consistent with the FDCPA's remedial nature, "Congress's sole goal in enacting § 1692g(a) was consumer protection." *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1080 (9th Cir. 2016). "Section 1692g furthers th[e] purpose [of protecting debtors from abusive debt collection activity] by requiring a debt collector who solicits payment from a consumer to provide that consumer with a detailed validation notice, which allows a consumer to confirm that he owes the debt sought by the collector before paying it." *Papetti v. Does 1-25*, 691 F. App'x 24, 26 (2d Cir. 2017). In fact, calling it a "significant feature" of the FDCPA, Congress "added the validation of debts provision specifically to ensure that debt collectors gave consumers adequate information concerning their legal rights." *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1989) (citing S. Rep. No. 95-382 at 4). "The aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options. It is also to make the rights and obligations of a potentially hapless

---

[5] *See also Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691 (8th Cir. 2017) ("The violation of the statute must cause a concrete injury. That concrete injury can be the risk of real harm."); *Lyshe v. Levy*, 854 F.3d 855, 859 (6th Cir. 2017) ("*Spokeo* allows for a bare procedural violation to create a concrete harm . . . [based on] the failure to comply with a statutory procedure that was designed to protect against the harm the statute was enacted to prevent."); *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1215 (10th Cir. 2017) ("[t]o establish standing [given a procedural violation], a plaintiff need show only that compliance with the procedural requirements *could* have better protected its concrete interests, and thus that the procedural violation created a risk of real harm[.]"); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) ("A risk of real harm or an intangible harm may satisfy Article III's requirement of concrete injury.").

debtor as pellucid as possible." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008).

Where a debt collector fails to advise the debtor in the validation notice that requests under subsections (a)(4) and (a)(5) must be in writing, "the least sophisticated consumer is not simply uncertain of her rights under the statute, she is completely unaware of them." *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F. Supp. 2d 841, 844-46 (E.D. Va. 2011); *accord Strubel*, 842 F.3d at 189 ("A consumer who is not given notice of his obligations [under the Truth in Lending Act] is likely not to satisfy them and, thereby, unwittingly to lose the very credit rights that the law affords him.").[6] Not surprisingly then, a procedural violation of the FDCPA's validation notice, by itself, can be sufficient to confer standing:

> First, we have no trouble concluding that § 1692g of the FDCPA protects an individual's concrete interests. One of the reasons that Congress passed the FDCPA was to protect consumers from abusive debt collection practices by debt collectors. In furtherance of this purpose, § 1692g requires a debt collector who solicits payment from a consumer to provide him with a detailed validation notice so that he may confirm that he indeed owes the debt sought by the collector and its amount before paying it. Thus, Congress plainly sought to protect consumers' concrete economic interests by requiring debt collectors to comply with the notice provisions articulated in § 1692g.
>
> Second, we also conclude that the specific procedural violation alleged in the amended complaint presents a material risk of harm to the underlying concrete interest Congress sought to protect with the FDCPA. Zirogiannis alleges that Seterus violated the FDCPA by failing adequately to specify in the validation notice "the amount of the debt," 15 U.S.C. § 1692g(a)(1), in that the notice did not enumerate additional third party costs that had not yet been paid by the prior servicer even though Seterus could readily furnish such a complete statement of the debt. Taken as true, such a violation plausibly presents a material risk of economic harm to a consumer such as Zirogiannis.

---

[6] "For that reason, a creditor's alleged violation of each notice requirement, by itself, gives rise to a 'risk of real harm' to the consumer's concrete interest in the informed use of credit. Having alleged such procedural violations, Strubel was not required to allege 'any additional harm' to demonstrate the concrete injury necessary for standing." *Id*.

*Zirogiannis v. Seterus, Inc.*, 707 Fed.Appx. 724, 727 (2d Cir. 2017).

Here, Defendant deprived Plaintiff and the putative class members of their legal right to material information—and in fact provided misinformation—which Defendant was required by law to provide, thereby creating a material risk of harm to the underlying concrete interest Congress sought to protect in mandating dissemination of validation notices by debt collectors. This risk of harm was actual and imminent because, "[a]n oral notice of dispute of a debt's validity has different legal consequences than a written notice." *Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 869 (S.D. Tex. 2011); *see also Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) (noting that the FDCPA "assigns lesser rights to debtors who orally dispute a debt and greater rights to debtors who dispute it in writing"). In other words, "if [a] debt collector does not inform the consumer that a debt dispute must be in writing, the consumer could dispute the debt during a telephone call to the debt collector, but the debt collector would not be required to cease its collection efforts and the consumer would not benefit from the protections afforded by the FDCPA." *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. 2002).[7] This is exactly the type of harm Plaintiff described during her deposition:

> Q. So what then is the beef? What's the complaint if my clients gave Mr. Dickens more opportunities to dispute the validity of his debt than just writing a letter? What's your complaint?

---

[7] Section 1692g(b) also offers an additional protection to a consumer who disputes a debt, or requests the name of the original creditor, in writing—the debt collector must cease collection of the debt until it obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and mails that information to the consumer. 15 U.S.C. § 1692g(b). But a consumer who is not informed of the "in writing" requirement to obtain verification of the debt—like Plaintiff and the putative class members here—would be unlikely to avail himself or herself of the protections afforded by subsection 1692g(b) by disputing the debt, or requesting the name of the original creditor, in writing.

> A. The complaint is, the law was broken. There was a law there that it had to state that it was to be requested in writing. And if you don't give the tools to a person to be able to dispute -- you know, and if they have to send it in writing, it gives them protection.
>
> Q. But what is the tools that you have to give somebody if you allow them to call or write to dispute it?
>
> A. It doesn't say –
>
> Q. What tools are lacking?
>
> A. -- anything about writing, though. It says just a contact. It doesn't say anything about writing, but writing is the only protection that they're going to receive to be able to make sure that that's a clarification for the dispute on the –
>
> *****

*See* Exhibit A, excerpts of the deposition testimony of Terri E. Dickens, at 46:25–47:20.

At bottom, properly informing consumers of the writing requirements is of paramount importance, and the failure of a debt collector to comply with subsections 1692g(a)(4) and 1692g(a)(5) of the FDCPA creates exactly the type of real risk of harm to a concrete interest that Congress sought to protect through enacting 15 U.S.C. § 1692g:

> [T]here can be no dispute that Sections 1692e and g of the FDCPA protect an individual's concrete interests. The purpose of the FDCPA is, among other things, to protect debtors from abusive debt collection practices by debt collectors. Section 1692g furthers that purpose by requiring a debt collector who solicits payment from a consumer to provide that consumer with a detailed validation notice, which allows a consumer to confirm that he owes the debt sought by the collector before paying it . . . . Thus, the FDCPA violations alleged by Papetti, taken as true, entail the concrete injury necessary for standing.

*Papetti*, 691 F. App'x at 26

As a result, Defendant's violations of the FDCPA—for which this Court previously granted summary judgment in Plaintiff's favor—created a material risk of harm to an interest Congress was trying to protect, and therefore, even disregarding *Church*, Plaintiff has standing in this Court.

### C. Defendant's reliance on two opinions from the Sixth Circuit is misplaced.

Defendant places significant emphasis on the Sixth Circuit's opinions in *Lyshe* and *Hagy v. Demers & Adams, LLC*, 882 F.3d 616 (6th Cir. 2018), in arguing that Plaintiff did not suffer a concrete injury. *See* ECF No. 74 at 9-14. But these opinions are not binding on this Court, and not persuasive in light of *Church*. *See, e.g.*, *Lamour v. Uber Techs., Inc.*, No. 1:16-CIV-21449, 2017 WL 878712, at *10 (S.D. Fla. Mar. 1, 2017) ("*Lewis* describes this right as substantive, not procedural, but *Lewis* is a non–binding, out–of–circuit case which expressly conflicts with the Eleventh Circuit's holding in *Walthour*."); *Smith v. Triad of Alabama*, No. 1:14-CV-324-WKW, 2015 WL 5793318, at *11, n.24 (M.D. Ala. Sept. 29, 2015) ("Defendant cites out-of-circuit precedent in support of its contention, none of which is binding on this court.").

In any event, even disregarding *Church*, neither *Lyshe* nor *Hagy* dictate that this Court reverse its finding that Plaintiff has standing. In *Lyshe*, the alleged FDCPA violation arose when the defendants, in the course of attempting to collect the plaintiff's debt in state court, "made misstatements in their discovery requests about state procedural rules." *Lyshe*, 854 F.3d at 859. Specifically, the defendants told the plaintiff that his responses to their requests for admission needed to be sworn and notarized, when in fact they did not. *Id*. at 857. The defendants also allegedly failed to serve their discovery requests in an electronic format, although they offered to do so upon request. *Id*. The Sixth Circuit held that those alleged violations standing alone did not create a concrete harm, reasoning that "the procedural violation alleged here—a violation of state law procedure not required under [sic] FDPCA," at most in theory could have caused the plaintiff to "visit a notary and contact Appellees to obtain electronic copies of the discovery," which "was not the type of harm the FDCPA was designed to prevent." *Id*. at 859.

*Lyshe*, which is more factually similar to *Nicklaw* than *Church*, is distinguishable precisely on that basis, as the harm Plaintiff alleges here—being misled by a debt collector as to legal rights afforded by the FDCPA and required to be disclosed by Defendant—is exactly the type of harm that the FDCPA was designed to prevent. *See Anarion Invs., LLC v. Carrington Mortg. Servs., LLC*, 794 F.3d 568, 569 (6th Cir. 2015) (noting that debt collector abuse takes many forms, "including . . . misrepresentation of a consumer's legal rights. . . ."). That is, and unlike in *Lyshe*, Defendant's misrepresentations and omissions here go to the heart of the FDCPA—disclosures Congress mandated be provided in each initial debt collection letter, and which constitute a "significant feature" of the FDCPA. *See Swanson*, 869 F.2d at 1225. Thus, the violations here are not equivalent to an innocuous false statement in technical violation of a statute like that referenced by the Court in *Spokeo*. 136 S. Ct. at 1550 ("dissemination of an incorrect zip code"). Indeed, the Sixth Circuit made clear in *Lyshe* that the facts were not such that "defendants intentionally misrepresented facts concerning the plaintiff's debt that they knew to be false." *Id*. at 861. As well, the Sixth Circuit distinguished a prior Ninth Circuit decision addressed to that situation as one in which "the harm . . . arose from the abusive debt collection practices that the FDCPA was designed to prevent." *Id*.

In *Hagy,* the Sixth Circuit rejected the debtors' argument that they had standing merely because a debt collector failed to disclose in a follow-up letter directed to the mortgagors' attorney that the letter was a "communication … from a debt collector." *Hagy*, 882 F.3d at 621-23. But unlike here, where Defendant's misstatement of Plaintiff's rights created a material risk that Plaintiff would be unaware of, and potentially waive, protections afforded her by federal law, in *Hagy*, the Sixth Circuit found that the letter at issue actually helped the debtors. *Id.* at 621. Moreover, and in line with previous holdings from other Circuits, the Sixth Circuit

suggested in *Hagy* that a risk of harm—a "risk of double payment" created by the nondisclosure—could constitute a concrete harm sufficient for standing. *Id.* at 622.

Here, Plaintiff's standing is not based on a bare procedural violation that could have helped her, but instead is based on violation that caused a material risk of harm to a concrete interest that Congress sought to protect. As a result, neither *Lyshe* nor *Hagy* dictate a finding that Plaintiff lacks standing.

## II. The Court should certify the proposed class.

### A. The proposed class is defined in such a way that it is administratively feasible for this Court to determine whether a particular person is a member.

A class is ascertainable if its members can be identified by reference to objective criteria. *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 653 (M.D. Fla. 2015) (Whittemore, J.); *Alderman*, 2018 WL 542455, at *3.[8] More particularly, a class is ascertainable where its definition is (1) not amorphous or imprecise, but clearly defined, (2) not limited by subjective criteria, but rather objective criteria, and (3) not a fail-safe class, or one defined in terms of success on the merits. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659-60 (7th Cir. 2015). Significantly, "[t]he standard for ascertainability is not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014).

---

[8] *See also Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 952 (11th Cir. 2015) ("Historically, courts analyzing ascertainability have required something quite narrow. Ascertainability has traditionally been defined as the existence of a class whose members can be identified by reference to objective criteria in the class definition. Daniel Luks, *Ascertainability in the Third Circuit: Name That Class Member,* 82 Fordham L. Rev. 2359, 2369 (2014). The leading class action treatise similarly notes that 'courts essentially focus on the question of whether the class can be ascertained by objective criteria.' Newberg on Class Actions § 3.3 (5th ed.)[.]") (Martin., J, concurring).

Plaintiff's proposed class meets each of these requirements. Her class definition precisely identifies a group of individuals in a particularized way (each person to whom Defendant mailed a particular letter and which mailing was not returned as undeliverable to Defendant), during a specific period of time (from April 4, 2015 and April 4, 2016), in a specific location (Florida). Moreover, Defendant can identify by name each such person.[9] As a result, the proposed class is ascertainable. *See, e.g.*, *Alderman*, 2018 WL 542455, at *7 (granting class certification); *Roundtree* 304 F.R.D. 644, 653-54 (same); *see also Hunt v. Check Recovery Systems, Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007) ("As Plaintiffs correctly point out, the only individual issues are ministerial, *e.g.* identifying class members and calculating actual damages.").

Defendant, nonetheless, argues that the class is not ascertainable because Plaintiff cannot show which class members opened the violative letter and actually read it. ECF No. 74 at 19-21. But as the Southern District of Florida recently held in rejecting near identical arguments by Defendant in a similar case:

> Defendant argues that Plaintiff's Motion for Class Certification should be denied because Plaintiff has failed to prove an adequately defined and clearly ascertainable class. Defendant's argument is based on the same standing argument raised in his Motion to Dismiss: according to Defendant, only class members who actually received, opened, and read its letter and wrote to the Defendant to dispute their debt could have suffered an 'actual' injury sufficient to establish standing. The Court rejected this argument in its order denying Defendant's motion to dismiss and the argument here is again rejected for the same reasons.

*Alderman*, 2018 WL 542455, at *3. Indeed, each class member's conduct post-mailing of the letters by Defendant is irrelevant because the mailing of the letters constituted the violation of the FDCPA. *See Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997) ("If reading were an element of the violation, then Bartlett would have to prove that he read the letter. But it is not.

---

[9] *See* Exhibit B excerpts of the deposition testimony of Shon R. Sherman, at, at 43:6-13.

The statute, so far as material to this case, requires only that the debt collector 'send the consumer a written notice containing' the required information."); *Mattson v. U.S. W. Commc'ns*, 967 F.2d 259, 261 (8th Cir. 1992) ("Once SIC placed the letters in the mail, its conduct with respect to any violation of the FDCPA was complete. The date on which SIC mailed the letters was its last opportunity to comply with the FDCPA, and the mailing of the letters, therefore, triggered section 1692k(d).").

As such, requiring Plaintiff to prove every action each class member took upon their receipt of the violative letter would improperly "impose a requirement for bringing a claim that isn't required for actually having a claim in the first place." *Waller v. Hewlett–Packard Co.*, 295 F.R.D. 472, 481 (S.D. Cal. 2013); *see also St. Louis Heart Center, Inc. v. Vein Centers for Excellence, Inc.*, 2013 WL 6498245, at *4 (E.D. Mo. Dec. 11, 2013) ("[B]ased on the plain language of the statute, including in the class all persons who were sent a fax—even if they never received it—does not render the class unascertainable or overbroad.").

### B. Defendant's other arguments in opposition to class certification rely on the flawed premise that Plaintiff must show that each absent class member has standing.

Defendant's remaining challenges to class certification are all based on its incorrect contention that Plaintiff must establish that each member of the putative class has standing to sue on his or her own. *See* ECF No. 74 at 17-29. But despite Defendant's insinuation to the contrary, *id.* at 18, the Eleventh Circuit has not squarely addressed whether a proposed class need be defined in such a way that all absent class members independently have standing. *See Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 690-91 (S.D. Fla. 2014). However, numerous district courts in this Circuit have found that a named plaintiff need not show that each member of the putative class has suffered an injury-in-fact:

> Defendant argues that the class definition fails to show that each member would have an injury-in-fact to support standing. However, the Supreme Court has said that named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong. Furthermore, once a trial court determines that the named plaintiffs have standing, it scrutinizes the relationship between the named plaintiffs and the putative class under Rule 23, not Article III standing. In fact, if a court properly applies Rule 23, then the certified class must necessarily have standing as an entity. Because Plaintiff does not need to show that each member of the putative class would have an injury-in-fact, Plaintiff's class allegation does not fail on this basis.

*Etzel v. Hooters of Am., LLC*, 223 F. Supp. 3d 1306, 1313-14 (N.D. Ga. 2016); *see also Reyes v. BCA Fin. Services, Inc.*, No. 16-24077-CIV-GOODMAN, 2018 WL 3145807, at *14 (S.D. Fla. Jun. 26, 2018) ("Moreover, class certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct."); *Loughlin v. Amerisave Mortg. Corp.,* No. 1:14-CV-3497-LMM-LTW, 2018 WL 1896409, at *15 (N.D. Ga. Feb. 7, 2018) ("Thus, Plaintiffs are correct that they do not have to establish standing of the putative class members in order to satisfy the ascertainability requirement."); *Mohamed v. American Motor Co., LLC*, 320 F.R.D. 301, 310 n.3 (S.D. Fla. 2017) ("We reject Defendant's contention that absent class members must have Article III standing."); *Randolph*, 303 F.R.D. at 692 ("The fact that some consumers may have purchased Crisco oils for reasons other than the 'All Natural' labeling does not preclude certification. As noted, the inquiry focuses on whether a reasonable consumer, exposed to the misrepresentation, would likely have been deceived. Accordingly, the fact that some class members may not have actually relied on the alleged misrepresentation does not render the class unascertainable."); *Rivell v. Private Health Care Sys., Inc.* No. CV 106–176, 2009 WL 10318921, at *8, n.9 (S.D. Ga. Aug. 24, 2009) ("Having determined that the named Plaintiffs have standing to pursue an injunction, the Court need not address whether the putative class members have standing.").

Of note, the Third, Fifth, Seventh, Ninth, and Tenth Circuits all agree that standing is satisfied for purposes of class certification as long as the named plaintiff has standing.[10] As the Third Circuit explained:

> Article III requires that federal courts may only adjudicate an actual "case or controversy." As the district court noted, whether an action presents a "case or controversy" under Article III is determined vis-avis the named parties. Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court, and there remains no further separate class standing requirement in the constitutional sense. The record in this case is replete with examples of the adversarial nature of these proceedings, and it is clear that all of the named representatives have a valid "case or controversy" with respect to Prudential's alleged fraudulent sales scheme. There is also ample evidence that each named party has suffered an "injury in fact" as a result of Prudential's sales practices and therefore has standing to bring suit. Thus, the named plaintiffs satisfy Article III. The absentee class members are not required to make a similar showing, because once the named parties have demonstrated they are properly before the court, the issue [becomes] one of compliance with the provisions of Rule 23, not one of Article III standing.

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 306-07.

As a result, even if Plaintiff cannot show at this stage of the litigation that each class member suffered an injury in fact—she can—class certification is still appropriate. *See Macy*, 318 F.R.D. at 338 ("The Court likewise rejects GC Services' contention that the proposed class is unascertainable because Macy and Stowe have not demonstrated that each class member

---

[10] *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306–07 (3d Cir. 1998) ("There is also ample evidence that each named party has suffered an 'injury in fact'.... Thus, the named plaintiffs satisfy Article III. The absentee class members are not required to make a similar showing...."); *Mims v. Stewart Title Guaranty Co.*, 590 F.3d 298, 308 (5th Cir. 2009) ("Class certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct."); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676–78 (7th Cir. 2009) ("But as long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied."); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020–21 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements...."); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) ("Second, Rule 23's certification requirements neither require all class members to suffer harm or threat of immediate harm nor Named Plaintiffs to prove class members have suffered such harm.").

suffered an injury sufficient to confer standing. While the Sixth Circuit has yet to address the issue directly, 'the vast majority of courts, including several within this circuit, have held that no showing of standing need be made as to putative class members."); *see also Roundtree,* 304 F.R.D. at 653 (rejecting argument that the fact that some class members may lack standing because they filed bankruptcy means that individualized issues predominate such that class certification should be defeated).[11]

**C. Notwithstanding, even if a class must be defined so that each member had standing—it does not—each member of the proposed class here has standing.**

Plaintiff seeks to certify a class of all persons with a Florida address to whom Defendant mailed materially identical written debt collection communications. *See* ECF No. 27 at 1. Notably, Defendant admitted that it mailed materially identical letters to over 9,800 persons in Florida during the class period. *See* ECF Nos. 27-1 at 2; 74 at 22-23.

Relevant then, under the common law Mailbox Rule, proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee. *See Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1239 (11th Cir. 2002) ("[T]he common law has long recognized a rebuttable presumption that an item properly mailed was received by the addressee."). Numerous courts have applied the Mailbox Rule in the context of the FDCPA. *See, e.g., Mahon v. Credit of Placer Cnty. Inc.*, 171 F.3d 1197, 1201-02 (9th Cir. 1999); *Schneider v. Cont'l Serv. Grp.*, No. 13–CV–5034, 2013 WL 6579609, *5-6 (E.D.N.Y. Dec. 16, 2013).

And as the class here is defined as only persons who were sent a letter by Defendant that

---

[11] In the face of the same arguments, this Court previously found that Plaintiff satisfied the numerosity, commonality, and typicality requirements of Rule 23. *See Dickens v. GC Servs. Ltd. P'ship.*, 220 F. Supp. 3d 1312, 1320-22 (M.D. Fla. 2016), *vacated and remanded by Dickens v. GC Servs. Ltd. P'ship.*, 706 Fed.Appx. 529, 539 (11th Cir. Fla.).

failed to include certain disclosures, and where such letter was not returned to Defendant as undeliverable, there can be no dispute that each member of the proposed class received the letter at issue. As a result, each member of the class sustained a concrete and particularized injury—the injury to their statutorily-created right to receive accurate information about their rights under to the FDCPA. *See Church*, 654 F. App'x at 995 ("The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled.").

Defendant's argument that class members could not have suffered an injury because Defendant purportedly treats non-written disputes and requests received from consumers the same as written disputes, ECF No. 74 at 21-22, is a red herring. Indeed, Plaintiff testified as to the risk of harm to class members created by Defendant's FDCPA violations notwithstanding any policy that Defendant contends it has:

> Q. Okay. So come back to my question. I'm not asking you about some hypothetical situation that you're not aware of. I'm asking you of what you do know. My client has said, you can do it either way. That's what you've heard, right?
>
> A. Yes.
>
> BY MR. HELFAND:
> Q. And so how is somebody harmed if, in fact, it's true that my client would treat the call the same as the letter?
>
> …
>
> THE DEPONENT: If it were true, but I don't know that.
>
> BY MR. HELFAND:
> Q. Okay. If it turns out to be true, can we agree there's no harm?
>
> …
>
> THE DEPONENT: *There's still harm, though.*
>
> BY MR. HELFAND:

Q. What's the harm if they treat it the same way no matter how you contact them?

A. *Because not every -- every person needs to know -- they need to know their rights of what they have to do to protect themselves. And that's in any --*

Q. Okay. But what if they – I'm sorry to interrupt you. I apologize.

A. *That's in any situation.*

Q. Sure.

A. So a person can say anything. A company can say anything. But if you don't know -- if you don't do what -- everything comes down to, it's law based. Basically, it's principle. It's the law. If you don't do – that's just like if you break the law, you have to pay. That's with anything. *But if it's stating that it has to be in writing, that person knows that they have to do it in writing. If it gives this, you know, broad area, then you don't know exactly what you're supposed to be doing.*

*See* Ex. A, at 77:11 – 79:4 (emphasis added).

Indeed, even assuming *arguendo* that Defendant *does* treat oral and written disputes the same, the salient point is that Defendant would not be *required* under the FDCPA to do so, and thus a consumer would have no recourse should Defendant fail to honor its word. Nor would most consumers even know that Defendant was failing to honor its representations if it, in fact, did not accept oral disputes of debts and oral requests for creditor information. For these very reasons, courts have rejected the argument that a debt collector's violations of the law are mitigated by its internal policies. *See, e.g.*, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1273-74 (11th Cir. 2016) ("We reject the notion that § 1692g gives debt collectors discretion to omit the 'in writing' requirement or cure improper notice by claiming waiver. The statute is clear. The debt collector 'shall' notify the consumer of her right to dispute the debt in writing. Likewise, the consumer has a right to verification only if she disputes the debt in writing. Nothing in the statute suggests that debt collectors have discretion to relax these requirements.").

Here, Defendant sent Plaintiff and the members of the class a letter that did not contain all of the disclosures required by the FDCPA. *See* ECF No. 1-1. At that point, Plaintiff and the members of the class sustained an injury in fact—the invasion of the right to receive the proper disclosures mandated by Congress. *See Church*, 654 Fed.Appx. at 994 ("[T]hrough the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures."). Defendant's post-hoc contention that it would have provided Plaintiff and the class broader rights than the law allows notwithstanding that it failed to provide the disclosures required by law does not subsequently deprive Plaintiff and members of the class of standing. As a result, Defendant's argument is without merit.[12]

**Conclusion**

For the foregoing reasons, and for those more fully set forth in Plaintiff's Renewed Motion for Class Certification and for Appointment of Class Counsel, Plaintiff respectfully requests that this Court enter an order certifying the class, appointing Plaintiff as class representative, and appointing her counsel as class counsel.

---

[12] Defendant contends that Plaintiff has not satisfied the adequacy requirement of Rule 23 because some of the putative class members may have benefited from Defendant's violations of the law. ECF No. 74 at 27. But setting aside that this hypothetical scenario would not make Plaintiff an inadequate class representative, Defendant has offered no evidence to support its contention that some class members benefitted from its violations of the law. And hypothetical concerns "do not defeat class certification." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 680 (7th Cir. 2009); *see also Cabrera v. Gov't Employees Ins. Co.*, No. 12-61390-CIV, 2014 WL 11894430, at *5 n.4 (S.D. Fla. Sept. 29, 2014) (unsupported speculation that customers may have given consent without identifying a single such instance is insufficient to defeat class certification); *Reyes*, 2018 WL 3145807, at *15 (same); *accord G.M. Sign, Inc. v. Finish Thompson, Inc.*, 07-5953, 2009 WL 2581324, at *5 (N.D. Ill. Aug. 20, 2009) (a defendant "cannot defeat class certification by asserting the vague possibility that some of the individuals" included in a list of potential class members may not actually be part of the proposed class).

| Dated: July 11, 2018 | */s/ James L. Davidson* |
| --- | --- |
| | James L. Davidson |
| | Michael L. Greenwald |
| | Jesse S. Johnson |
| | Greenwald Davidson Radbil PLLC |
| | 5550 Glades Road, Suite 500 |
| | Boca Raton, FL 33431 |
| | Telephone: (561) 826-5477 |
| | Facsimile: (561) 961-5684 |
| | jdavidson@gdrlawfirm.com |
| | mgreenwald@gdrlawfirm.com |
| | jjohnson@gdrlawfirm.com |
| | |
| | Counsel for Plaintiff and the proposed class |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on July 11, 2018, via the Court Clerk's CM/ECF system, which will provide notice to the following counsel of record:

William S. Helfand
LEWIS BRISBOIS BISGAARD & SMITH LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone: (713) 659-6767
Facsimile: (713) 759-6830
bill.hefland@lewisbrisbois.com

                */s/ James L. Davidson*
                James L. Davidson