**Exhibit A**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

Civil Action No.:8:16-cv-00803-JSM-TGW

TERRI E. DICKENS, on behalf of the estate of Ronnie E. Dickens and others similarly situated,

        Plaintiff,

v.

GC SERVICES LIMITED PARTNERSHIP,

        Defendant.

| | |
|---|---|
| VIDEO DEPOSITION OF: | (Terri E. Dickens) |
| DATE: | June 15, 2018 |
| TIME: | 10:43 a.m - 12:29 p.m. |
| PLACE TAKEN: | Lewis Brisbois Bisgaard & Smith<br>401 East Jackson Street<br>Suite 3400<br>Tampa, Florida 33602 |
| REPORTED BY: | Dana L. Stockton, RPR<br>Notary Public<br>State of Florida, at Large |

PAGES 1 - 117

1  agree with you, but I'm not quarreling with you that
2  you're telling me what you believe my client could
3  have done.
4           If I understand what you're saying, tell
5  me if I get this right is, somebody has told you
6  that if the dispute's not in writing GC Services is
7  not required to treat it the same way; is that what
8  you're telling me?
9       A.   That's what the -- yeah.
10      Q.   That's what the lawsuit says, right?
11      A.   The act -- yeah.  The law says, basically.
12      Q.   Let's leave that aside.  My question is,
13 in the real world, in the day-to-day handling of
14 these debts, GC Services says, even if the law says
15 we don't have to treat phone calls the same way as a
16 letter, we do.  Can you accept that my client may
17 have said that?
18      A.   No.  Because I don't know that.
19      Q.   Okay.  Well, if my client -- if it turns
20 out my client has said that, what I'm wondering is,
21 do you know of any facts to the contrary that, in
22 fact, my client doesn't treat phone calls on these
23 accounts the same way they treat letters?
24      A.   No.
25      Q.   So what then is the beef?  What's the

1  complaint if my clients gave Mr. Dickens more
2  opportunities to dispute the validity of his debt
3  than just writing a letter?  What's your complaint?
4       A.   The complaint is, the law was broken.
5  There was a law there that it had to state that it
6  was to be requested in writing.  And if you don't
7  give the tools to a person to be able to dispute --
8  you know, and if they have to send it in writing, it
9  gives them protection.
10      Q.   But what is the tools that you have to
11 give somebody if you allow them to call or write to
12 dispute it?
13      A.   It doesn't say --
14      Q.   What tools are lacking?
15      A.   -- anything about writing, though.  It
16 says just a contact.  It doesn't say anything about
17 writing, but writing is the only protection that
18 they're going to receive to be able to make sure
19 that that's a clarification for the dispute on the
20 --
21      Q.   But that's what I'm asking.  If the goal
22 is -- as we sit here today can we agree, neither you
23 or I know whether Mr. Dickens had any intent to
24 dispute this debt, correct?
25      A.   Correct.

1  it is.  They can call and speak to someone and if
2  somebody doesn't follow through -- I work in a call
3  center.  And if somebody doesn't follow through,
4  then it doesn't get taken care of.
5      Q.  Right.  But we don't know whether somebody
6  will follow through, right?  I mean --
7      A.  Exactly.
8      Q.  -- as far as you know everybody follows
9  through, right?
10     A.  Exactly.
11     Q.  Okay.  So come back to my question.  I'm
12 not asking you about some hypothetical situation
13 that you're not aware of.  I'm asking you of what
14 you do know.  My client has said, you can do it
15 either way.  That's what you've heard, right?
16     A.  Yes.
17         MR. DAVIDSON:  Objection.  Asked and
18     answered.
19 BY MR. HELFAND:
20     Q.  And so how is somebody harmed if, in fact,
21 it's true that my client would treat the call the
22 same as the letter?
23         MR. DAVIDSON:  Objection.  Asked and
24     answered.
25         THE DEPONENT:  If it were true, but I

1 don't know that.
2 BY MR. HELFAND:
3     Q.   Okay.  If it turns out to be true, can we
4 agree there's no harm?
5         MR. DAVIDSON:  Objection.  Calls for a
6    legal conclusion.
7         THE DEPONENT:  There's still harm, though.
8 BY MR. HELFAND:
9     Q.   What's the harm if they treat it the same
10 way no matter how you contact them?
11     A.   Because not every -- every person needs to
12 know -- they need to know their rights of what they
13 have to do to protect themselves.  And that's in any
14 --
15     Q.   Okay.  But what if they -- I'm sorry to
16 interrupt you.  I apologize.
17     A.   That's in any situation.
18     Q.   Sure.
19     A.   So a person can say anything.  A company
20 can say anything.  But if you don't know -- if you
21 don't do what -- everything comes down to, it's law
22 based.  Basically, it's principle.  It's the law.
23 If you don't do -- that's just like if you break the
24 law, you have to pay.  That's with anything.
25         But if it's stating that it has to be in

1  writing, that person knows that they have to do it
2  in writing. If it gives this, you know, broad area,
3  then you don't know exactly what you're supposed to
4  be doing.
5           MR. HELFAND: Let me object as
6      nonresponsive.
7  BY MR. HELFAND:
8      Q.  But if, in the end, the company treats it
9  the same way, if that's the way it works, then the
10 person has the right to do it by phone or in writing
11 in this instance, don't they?
12     A.  Yes.
13     Q.  And if they do it either way, and the
14 company treats it the same way, they follow through
15 and they do it the same way they would a phone call
16 as a letter, then that person accomplishes whatever
17 they're trying to do through either means the same
18 way, correct?
19     A.  Yes.
20     Q.  Okay. Now, if we go back to your
21 suggestion that, well, people ought to get some
22 money simply because I think that the law was
23 violated, regardless of whether we can identify
24 anyone who has harm. Did I say correctly what your
25 position is?