UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| RONNIE E. DICKENS,<br>on behalf of himself and others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>GC SERVICES LIMITED PARTNERSHIP,<br><br>        Defendant. | Civil Action No. 8:16-cv-00803-JSM-TGW |

**DEFENDANT'S RULE 12(b)(1) MOTION TO DISMISS
OR, IN THE ALTERNATIVE, MOTION TO DISMISS AND
COMPEL ARBITRATION AND MEMORANDUM OF LAW IN SUPPORT**

Defendant GC Services Limited Partnership moves the Court to dismiss this action under Federal Rule of Civil Procedure 12(b)(1) because, as a threshold matter, Plaintiff lacks standing to bring this suit and, therefore, to confer subject matter jurisdiction. Should the Court find Plaintiff has standing, the Court should dismiss this action and compel arbitration because Decedent Ronnie E. Dickens agreed to submit his claims to single-party, binding arbitration.[1]

**FACTUAL BACKGROUND**

Plaintiff brings this action on behalf of herself and proposes to do so for others "similarly situated" against GC Services under the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff

---

[1] The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Shriever v. Navient Solutions, Inc.*, No. 2:14-cv-596-FtM-38CM, 2014 U.S. Dist. LEXIS 175420, 2014 WL 7273915, at *2 (M.D. Fla. Dec. 19, 2014) (Chappell, J. presiding) (citing *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)). Accordingly, in ruling on a motion to compel arbitration, the Court may consider matters outside of the four corners of the complaint. *Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326, 1329 (S.D. Fla. 2009) (Jordan, J. presiding).

alleges a certain debt collection letter sent by GC Services to Plaintiff and other consumers violated the FDCPA.[2]

On May 15, 2013, Decedent applied for a Sam's Club Discover-branded credit card.[3] Synchrony Bank, formerly known as GE Capital Bank, approved Decedent's application and opened an account in the name of Ronnie E. Dickens.[4] The credit card and copy of the credit card agreement that governed Decedent's account were mailed to Decedent at the address provided in Decedent's credit card application on or about May 15, 2013.[5]

The credit card agreement contains the relevant arbitration provision, discussed *infra*, and Decedent never provided a notice rejecting that arbitration provision.[6] Accordingly, Decedent understood and agreed that if he had a dispute related to his credit relationship with Synchrony, including a dispute regarding collection efforts by Synchrony or on Synchrony's behalf, such as the present dispute, his dispute would be arbitrated and he could not be part of a class action. Similarly, Synchrony and GC Services, acting on behalf of Synchrony, understood that if Decedent had a dispute related to his credit relationship with Synchrony, such as the present dispute with GC Services, Decedent would be required to submit his dispute to single party, binding arbitration.[7]

In or about June 2014, the Sam's Club Discover card program ended and was replaced with the Sam's Club MasterCard Program.[8] Thus, Decedent's account was changed to a Sam's Club

---

[2] *See* Dkt. 1; *see also* 15 U.S.C. § 1692 *et seq*.

[3] Ex. 1, Declaration of Angel Nayman at ¶ 7.

[4] *Id*. at Ex. A (Ronnie E. Dickens' credit card application dated May 15, 2013).

[5] *Id*., at ¶ 8.

[6] *Id*., at ¶ 13, Ex. B to Ex. A, at pp. 6-7.

[7] *See* Exhibit 2, the Declaration of Mark Schordock.

[8] Ex. 1., at ¶ 9.

MasterCard account.[9] On or about August 6, 2014, a Sam's Club MasterCard credit card was mailed to Decedent.[10]

A Change in Terms notice was enclosed with Plaintiff's monthly billing statement dated March 23, 2016, for the MasterCard account.[11] This was the only change in terms notice for the account.[12] The change in terms notice did not modify the terms of the arbitration provision.

After Decedent failed to pay a debt owed on the account, Synchrony engaged GC Services to collect the debt.[13] On December 24, 2015, GC Services sent a personalized letter to Decedent in an attempt to collect Decedent's debt owed to Synchrony.[14] The letter states in relevant part:

> As of the date of this letter, our records show you owe a balance of $7,573.00 to Synchrony bank. **If you dispute this balance or the validity of this debt, please contact us.** If you do not dispute this debt within 30 days after you receive this letter, we will assume the debt is valid.
>
> However, if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you. Or, if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank.[15]

Plaintiff, as personal representative of Decedent's estate, alleges, albeit inaccurately, that the letter misstated the method for disputing Decedent's debt and requesting the name and address of his

---

[9] *Id*.

[10] *Id*.

[11] *Id*., at ¶ 11; *see also* Ex. C to Ex. 1.

[12] *Id*., at ¶ 11.

[13] *Id*. at ¶ 12.

[14] *Id*.

[15] Dkt. 1, at Ex. A (emphasis added).

original creditor.[16] Specifically, Plaintiff claims the letter violated 15 U.S.C. § 1692g(a)(4) because it did not "inform [Decedent] that [GC Services] need only mail verification of the debt, or a copy of the judgment, if any, to him if he notified [GC Services], **in writing**, that [Decedent] disputed the Debt."[17] Plaintiff also claims the letter violated 15 U.S.C. § 1692g(a)(5) because the letter did not "inform [Decedent] that [GC Services] need only provide him the name and address of the original creditor, if different from the current creditor, if he notified [GC Services] of such request, **in writing**."[18] However, while this may be a correct statement of GC Services' minimal obligations under the statute, it is undeniably incorrect for Plaintiff to contend that a written communication was, in fact, the only means of obtaining GC Services' compliance in response to such a dispute or request from Plaintiff or any member of the putative class. Indeed, the undisputed evidence, specifically the Declaration of Mark Schordock, submitted as Exhibit 2, clearly disproves Plaintiff's assertion of a hypothetical violation under either provision of the FDCPA. Specifically, Mr. Schordock's declaration states:

> … it is and has been GC Services' policy and procedure to provide a consumer with the name and address of the original creditor, if different from the current creditor, **even if the consumer, or someone on the consumer's behalf, contacts GC Services by phone, or some other non-written means**, to request the name and address of the original creditor.[19]

As discussed *infra*, Plaintiff does not have standing to bring this suit. Alternatively, if the Court finds Plaintiff has standing to sue, the Court should dismiss this action and require Plaintiff to engage in single-party, binding arbitration because under the terms of Decedent's arbitration

---

[16] *Id.*, at ¶¶ 24-25.

[17] *Id.*, at ¶ 24 (emphasis in original).

[18] *Id.*, at ¶ 25 (emphasis in original).

[19] Ex. 2, at ¶ 4 (emphasis added).

agreement, which includes a class action waiver, Plaintiff is obligated to submit all of her claims brought against GC Services in this action to single-party, binding arbitration.

## ARGUMENT.

**Plaintiff lacks Article III standing because neither she nor Decedent incurred a concrete injury as a result of receiving the December 24, 2015 letter from GC Services. Without Article III standing for Plaintiffs' federal claims, the case must be dismissed.**

Under Rule 10(c) of the Federal Rules of Civil Procedure GC Services adopts by reference, as if fully stated here, its argument set out on pages 5-14 of its Response Opposition to Plaintiff's Motion for Class Certification [Dkt. 74] and urges the Court to dismiss this entire action for lack of subject matter jurisdiction because Plaintiff lacks standing to bring suit.

Plaintiff must demonstrate standing under Article III of the United States Constitution to maintain her claims under the FDCPA. Standing exists if Plaintiff has suffered an "injury in fact" or a "concrete and particularized" harm that is "fairly traceable to challenged conduct of the defendant" and is "likely to be redressed by a favorable judicial decision."[20] Plaintiff alleges no more than hypothetical, procedural violations of a federal statute without any showing that the hypothecated violations caused Plaintiff harm or any material risk of harm. In fact, **Plaintiff admits there was no harm**.[21]

Instead, Plaintiff suggests there could be harm from no more than a possible violation of the FDCPA. This gap is most apparent, and the lack of concrete injury becomes undeniable as, within Plaintiff's Complaint and during Plaintiff's deposition, Plaintiff asserts no more than GC Services' alleged misstatement contained in the letter regarding the rights afforded by the FDCPA "could lead the least-sophisticated consumer to waive or otherwise not properly vindicate her rights under the

---

[20] *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 578 (1992).

[21] Ex. 3, Dickens Dep, 55:10-55:24, 65:22-66:7, June 15, 2018.

FDCPA."[22] The statement of mere **potential injury**—particularly expressed as such—is not the sort of "concrete" injury necessary to seek redress in federal court.[23] Plaintiff lacks standing to bring this lawsuit. Accordingly, Plaintiff's FDCPA claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

## DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION

**The Court considers three factors in evaluating a motion to compel arbitration under the Federal Arbitration Act.**

Even if the Court finds Plaintiff has standing to sue, the Court should dismiss this action and require Plaintiff to engage in single-party, binding arbitration because under the terms of Decedent's arbitration agreement, which includes a class action waiver, Plaintiff is obligated to submit all of her claims brought against GC Services in this action to single-party, binding arbitration. All of the claims asserted by Plaintiff in this case fall squarely under the arbitration agreement and class action waiver contained in Decedent's credit card agreement, which includes the Change in Terms notice enclosed with Plaintiff's monthly billing statement dated March 23, 2016.[24] There is no justification for any attempt by Plaintiff to circumvent Decedent's agreement that his claims be heard exclusively in single-party, binding arbitration.

As this Court has previously held, "[t]here are three factors courts consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived."[25]

---

[22] Dkt. 1, ¶ 27.

[23] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

[24] *See* Ex. 1, at Exs. B, C.

[25] *Robinson v. Anytime Rentals, Inc*., 2016 U.S. Dist. LEXIS 187290, *4 (M.D. Fla. Mar. 17, 2016) (Chappell, J. presiding); *Fla. Farm Bureau Ins. Cos. v. Pulte Home Corp*., 2005 U.S. Dist. LEXIS 21903, *8-9 (M.D. Fla. Jun. 6, 2005) (Jenkins, J. presiding).

Under the Federal Arbitration Act, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."[26]

A valid arbitration agreement, which includes a class action waiver, exists here that applies to the claims raised by Plaintiff. Therefore, this Court must order the parties to single-party, binding arbitration.

**Choice-of-Law analysis under Florida law.**

Decedent's account agreement contains a choice of law provision expressly applying Utah law to the extent relevant.[27] "Although the FAA governs the applicability of arbitration agreements, state law governs issues 'concerning the validity, revocability, and enforceability of contracts generally.'"[28]

Although contractual choice-of-law provisions are presumptively valid under Florida law, this presumption recedes when the law of the chosen forum effects a result in contravention of a strong public policy of the State of Florida.[29] Enforcing the account agreement's Utah choice of law provision does not run contrary to Florida public policy. Under Utah law, "[t]he minimum threshold for enforcement of an arbitration agreement is direct and specific evidence of an agreement between the parties. Direct and specific evidence requires non-inferential evidence."[30] Since there is

---

[26] 9 U.S.C. § 4.

[27] Ex. 1, at its Ex. B, p. 7.

[28] *Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009) (Moore, J. presiding).

[29] *Caban v. J.P. Morgan Chase & Co.*, 606 F. Supp. 2d 1361, 1365 (S.D. Fla. 2009) (Jordan, J. presiding).

[30] *Ellsworth v. Am. Arbitration Ass'n*, 148 P.3d 983, 987 (Utah 2006) (internal citations omitted).

no strong public policy preventing this Court from respecting Utah as the chosen forum, this Court should enforce the Utah choice-of-law provision.[31]

**A valid arbitration agreement and class action waiver exists.**

The relevant portions of the arbitration agreement, including the class action waiver, contained within Decedent's account agreement state:

> **RESOLVING A DISPUTE WITH ARBITRATION**
>
> **PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**
>
> - **What claims are subject to arbitration**
>
>   1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or Sam's Club (and its affiliates) if it relates to your account, except as noted below.
>
>      . . . .
>
> - **No Class Actions**
>
>   **YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT AN ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR**

---

[31] *See Maxcess, Inc. v. Lucent Techs.*, Inc., 433 F.3d 1337, 1341 (11th Cir. 2005) (quoting *Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000) ("[C]ourts will enforce 'choice-of-law provisions unless the law of the chosen forum contravenes strong public policy.'")).

**ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.**

If a court determines that this paragraph is not fully enforceable, only this sentence will remain in force and the remainder will be null and void, and the court's determination shall be subject to appeal. . . .

. . . .

- **Governing Law for Arbitration**

This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award.

- **How to reject this section.**

**You may reject this Arbitration section of your Agreement. If you do that, only a court may be used to resolve any dispute or claim. To reject this section, you must send us a notice within 60 days after you open your account or we first provided you with your right to reject this section. The notice must include your name, address and account number, and must be mailed to GE Capital Retail Bank, P.O. Box 965012, Orlando, FL 32896-5012. This is the only way you can reject this section.[32]**

Decedent expressly agreed to submit his claims in this action to single-party, binding arbitration. As explained *supra*, in the background section of this motion and established by the attached Declaration of Angel Nayman, Lead Litigation Analyst at Synchrony, in 2013, Decedent and Synchrony entered into a credit card agreement which contained the arbitration provision quoted

---

[32] Ex. 1, at its Ex. B, pp. 6-7.

above.[33] Decedent's use of his credit card constitutes acceptance of the terms of the account agreement, including arbitration and waiver of class actions.[34]

"It is the policy of the law in Utah to interpret contracts in favor of arbitration, in keeping with our policy of encouraging extrajudicial resolution of disputes when the parties have agreed not to litigate."[35] Here, the plain language of Decedent's arbitration agreement provides that Decedent agreed to single-party, binding arbitration of all claims related to his account.[36] Moreover, as established by Angel Nayman's declaration, Decedent never rejected the arbitration agreement.[37] The arbitration agreement, including its class action waiver provision, is valid and enforceable under Utah state law.

The language of Decedent's arbitration agreement, including the class action waiver provision, is unambiguous. "The FAA, standing alone, requires enforcement of the Arbitration Agreements according to their terms, which, in this case, means individual, not collective, arbitration."[38] Utah law also expressly permits the inclusion of class-action waivers in consumer credit agreements.[39] Under Utah Code § 70C-4-105, "a creditor may contract with the debtor of an open-end consumer credit contract for a waiver by the debtor of the right to initiate or participate in a

---

[33] *See id.*

[34] *Island Peak Ranch, LLC v. FIIK Inv. & Holdings, Inc.*, No. 2:02-CV-562, 2008 U.S. Dist. LEXIS 51474, at *36 (D. Utah July 7, 2008).

[35] *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 40 P.3d 599, 606 (Utah 2002).

[36] Ex. 1, at its Ex. B, pp. 6-7.

[37] Ex. 1, at ¶ 13.

[38] *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1330 (11th Cir. 2014).

[39] *See* Utah Code Ann. § 70C-4-105.

class action related to the open-end consumer credit contract."[40] Here, the class action waiver is part of the arbitration provision. Decedent's contractual agreement binds him and Plaintiff, as representative of Decedent's estate,[41] to single-party arbitration with Synchrony or Defendant, as explained *infra*.[42]

**Although Defendant is a non-signatory to Decedent's account agreement, under Utah law, GC Services can enforce the arbitration provision in Decedent's account agreement under agency law or, alternatively, equitable estoppel.**

State law governs whether a non-signatory may enforce or be bound by an arbitration clause under the FAA.[43] Accordingly, this Court must look to the relevant state law to determine whether GC Services, as a non-signatory to Decedent's account agreement, can compel arbitration.[44]

Even though GC Services is a non-signatory to Decedent's account agreement, this Court should find, under Utah law, that GC Services is an agent of Synchrony and, therefore, can enforce the arbitration provision and class action waiver in Decedents account agreement. Alternatively, the doctrine of equitable estoppel prevents Plaintiff, whose claims in this action presume the existence of Decedent's account agreement, from escaping that contract's arbitration provision and class action waiver.

---

[40] *See also Utah Cod. Ann*. § 70C-3-104 (same for close-end agreements); *Miller v. Corinthian Colls., Inc*., 769 F. Supp. 2d 1336, 1341 (D. Utah 2011).

[41] *Entrekin v. Internal Med. Assocs. of Dothan*, 689 F.3d 1248, 1254 (11th Cir. 2012) ("an executor is bound by the same contracts that bound the decedent while she was alive, including an arbitration agreement").

[42] *See Lee v. Barnes*, 977 P.2d 550, 552 (Utah Ct. App. 1999).

[43] *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S. Ct. 1896 (2009).

[44] *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1400 (S.D. Fla. 2014) (Scola, J. presiding)

**Under Utah law, GC Services was acting as Synchrony's agent.**

The arbitration provision contained in Decedent's account agreement states in relevant part:

If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, **agents** and/or Sam's Club if it relates to your account, except as noted above.[45]

"Traditionally, five theories for binding a nonsignatory to an arbitration agreement have been recognized: . . . (3) agency."[46] And, under certain circumstances, like those presented in the instant case, a non-signatory to an arbitration agreement, like GC Services here, as Synchrony's agent, can enforce an agreement between other parties.[47]

Under Utah law, in order for an agency relationship to arise, three elements must exist: (1) the principal must manifest its intent that the agent act on its behalf, (2) the agent must consent to so act, and (3) both parties must understand that the agent is subject to the principal's control.[48] Thus under Utah law, GC Services was clearly acting as Synchrony's agent when GC Services attempted to collect Decedent's debt owed to Synchrony, including when Defendant sent the letter at issue to Decedent. GC Services was hired by Synchrony to collect the debt Decedent owed to Synchrony.[49] When collecting debts for Synchrony, including Decedent's debt, Defendant consented, and was subject, to Synchrony's control. For example, when collecting debts for Synchrony, including during its efforts to collect Decedent's debt, GC Services adheres to Synchrony's strict instructions not to send any collection letters to debtors without first obtaining Synchrony's approval of the letter.[50]

---

[45] Ex. 1, at its Ex. A (emphasis added).

[46] *Ellsworth v. Am. Arb. Ass'n*, 148 P.3d 983, 989 n.11 (Utah 2006).

[47] *Id*., at 989.

[48] *Sutton v. Miles*, 333 P.3d 1279, 1282 (Utah Ct. App. 2014), *cert. denied*, 2014 Utah LEXIS 226 (Utah Nov. 26, 2014).

[49] Ex. 1.

[50] *See* Ex. 2.

Also, in collecting debts for Synchrony, including during its efforts to collect Decedent's debt relevant to this lawsuit, GC Services adheres to Synchrony's requirement that GC Services act as Synchrony's agent in utilizing Synchrony's collection system.[51] Synchrony also requires GC Services to follow a series of Synchrony's policies and procedures related to GC Services' collection of Synchrony's consumer debts. Synchrony regularly audits GC Services to ensure its compliance with Synchrony's policies and procedures.[52] Synchrony also requires GC Services to use Synchrony's own training material, regularly developed and updated by Synchrony in training GC Services' employees who collect consumer debts as Synchrony's agent.[53] There is no reasonable dispute that Synchrony hired GC Services as its agent to collect Decedent's debt subject to Synchrony's control to which GC Services consented. Accordingly, it is clear GC Services was acting as Synchrony's agent when GC Services attempted to collect Decedent's debt owed to Synchrony, including when GC Services sent the letter at issue to Decedent.

**Under Utah Law, equitable estoppel prevents Plaintiff from avoiding the arbitration provision and class action waiver in Decedent's account agreement.**

If this Court does not find GC Services was acting as Synchrony's agent while attempting to collect Decedent's debt owed to Synchrony, under Utah law, GC Services can also enforce the arbitration provision and class action waiver in Decedent's account agreement under the doctrine of equitable estoppel, which prevents Plaintiff, whose claims in this action presume the existence of Decedent's account agreement, from escaping that contract's arbitration provision and class action waiver.

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

"Traditionally, five theories for binding a nonsignatory to an arbitration agreement have been recognized: . . . (5) estoppel."[54] Although, in *Ellsworth*, the Utah Supreme Court considered only whether a non-signatory **was bound** by an arbitration provision, the Court acknowledged the scenario presently before the Court, stating "[a]nother variety of nonsignatory estoppel is that enforced *by a nonsignatory* when the signatory plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the contract-mandated arbitration by relying on the fact that the defendant is a nonsignatory."[55] This is because "[the plaintiff] cannot, on the one hand, seek to hold the nonsignatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a nonsignatory."[56]

Given the opportunity, the Utah Supreme Court would likely rely on the standards articulated by the Eleventh Circuit in *MS Dealer Service Corp. v. Franklin*.[57] In *MS Dealer*, the Eleventh Circuit held that estoppel will permit a non-signatory to compel arbitration when the signatory "must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory."[58] In *MS Dealer*, the plaintiff purchased a car from an auto dealer and under the purchase agreement she was charged $990 for a service contract through MS Dealer.[59] After discovering defects in the car, the plaintiff sued the auto dealer and MS Dealer, asserting claims for breach of contract, breach of

---

[54] *Ellsworth*, 148 P.3d at 989 n.11.

[55] *Id.*, at 989 n.12 (internal citations omitted).

[56] *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 360-61 (5th Cir. 2003).

[57] 177 F.3d 942 (11th Cir. 1999).

[58] *Id.* at 947.

[59] *Id.*, at 945.

warranty, fraud, and conspiracy.[60] The plaintiff's purchase agreement with the auto dealer contained an arbitration clause under which MS Dealer sought to compel arbitration.[61]

The Eleventh Circuit concluded the plaintiff's allegations relied on the purchase agreement because even though she did not allege a breach of that contract, her fraud and conspiracy claims each "ma[de] reference to and presume[d] the existence of the $990 charge" and "depend[ed] entirely upon her contractual obligation to pay $990 for the service contract."[62]

In the instant case, Plaintiff should be compelled to arbitrate her claims against GC Services because Plaintiff's claims against GC Services rely on Decedent's account agreement with Synchrony because, even though Plaintiff has not alleged a breach of the account agreement, her FDCPA claims make reference to and presume the existence of the debt owed to Synchrony which GC Services was attempting to collect. Moreover, Plaintiff's claims against GC Services depend entirely on Decedent's contractual obligation to pay the debt GC Services was attempting to collect for Synchrony. Non-signatory estoppel prevents Plaintiff, as representative of the Decedent's estate, from repudiating the arbitration provision of the account agreement.

Having agreed to arbitrate and waive class actions related to all aspects of the credit relationship, there is no reasonable basis for Plaintiff to avoid Decedent's agreement to arbitrate and waive class actions simply because Synchrony assigned the task of debt collection to GC Services. Put another way, if, as it certainly could, Synchrony were attempting to collect its own debt, Plaintiff would unquestionably be required to arbitrate and precluded from participating in a class action

---

[60] *Id.*

[61] *Id.*

[62] *Id.* at 947-48.

related to any debt collection efforts. Having so covenanted, Plaintiff cannot avoid Decedent's contractual agreement based solely upon the identity of Synchrony's debt collector.

Accordingly, this Court should find that the arbitration provision and class action waiver in Decedent's account agreement can be enforced by GC Services under the doctrine of equitable estoppel.

**Plaintiff's claims against GC Services are clearly arbitral issues.**

Under the subheading "What claims are subject to arbitration" the agreement states that arbitration applies to "any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or Sam's Club (and its affiliates) if it relates to your account … ."[63] The agreement therefore applies to all claims related to Decedent's account.[64]

The Eleventh Circuit has held that a claim "relates to" a contract if the dispute giving rise to the claim "occurs as a fairly direct result of the performance of contractual duties" and if there is "some direct relationship" between the dispute and the contract.[65] Other courts in this circuit have found "there is no question" that claims arising from debt collection services "relate fairly directly to performance of contractual duties."[66] In *Bolanos v. First Investors Servicing Corp*, the Court found the plaintiff had a duty to pay off his note under the original financing contract and his claims relate to the actions of the creditor's assignee in collecting that debt: "[m]oreover, [the plaintiff] could not even maintain this action without reference to the financing contract because the contract is

---

[63] Ex. 1, at its Ex. B, p. 6.

[64] *See Anders v. Hometown Mortg. Servs.*, 346 F.3d 1024, 1028 (11th Cir. 2003) ("Any disputes means all disputes, because "'any' means all.").

[65] *Cronin v. Portfolio Recovery Assocs., LLC*, No. 8:15-cv-00768-EAK-EAJ, 2016 U.S. Dist. LEXIS 57541, at *8 (M.D. Fla. Apr. 29, 2016) (Kovachevich, J. presiding).

[66] *Bolanos v. First Investors Servicing Corp*., No. 10-23365-CIV, 2010 U.S. Dist. LEXIS 115475, at *6 (S.D. Fla. Oct. 28, 2010) (Moreno, J. presiding).

necessary to show that [the plaintiff] is a 'consumer' and that the underlying 'debt' exists – two prerequisites to filing suit under the FDCPA and FCCPA."[67]

In the present action, Plaintiff seeks to make a claim against GC Services, whose actions were taken in pursuit of a debt created under the Decedent's account agreement, the claims "relate to" the Decedent's account and are subject to the arbitration provision, including the class action waiver.

## CONCLUSION AND PRAYER

Plaintiff Terri E. Dickens has not and cannot demonstrate an "injury in fact" or a "concrete and particularized" harm that is "fairly traceable to challenged conduct of the defendant" and is "likely to be redressed by a favorable judicial decision." Accordingly, Plaintiff does not have Article III standing and her lawsuit should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

Alternatively, in the unlikely event this Court determines Plaintiff has Article III standing, Defendant, GC Services Limited Partnership, respectfully requests this Court dismiss this case for lack of subject matter jurisdiction and compel single-party, binding arbitration because under Decedent's account agreement Plaintiff, as representative of Decedent's estate, is contractually obligated to submit the claims brought against GC Services in this action to single-party, binding arbitration.

---

[67] *Id.*

Dated: July 27, 2018          Respectfully submitted,

By: */s/ William S. Helfand*
    William S. Helfand, Esq.
    LEWIS BRISBOIS BISGAARD & SMITH LLP
    24 Greenway Plaza, Ste. 1400
    Houston, Texas 77046
    (713) 659-6767
    (713) 759-6830 (Fax)
    Bill.Helfand@lewisbrisbois.com
    *Trial Counsel*
    *Admitted Pro Hac Vice*

**ATTORNEY FOR DEFENDANT**
**GC SERVICES LIMITED PARTNERSHIP**

## **CERTIFICATE OF SERVICE**

      This is to certify that the undersigned counsel has this date, July 27, 2018, electronically filed **Defendant's Rule 12(b)(1) Motion to Dismiss or, in the alternative, Motion to Dismiss and Compel Arbitration and Memorandum of Law in Support** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who have made an appearance in this case, including:

James L. Davidson
Michael L. Greenwald
Jesse S. Johnson
Greenwald Davidson Radbil PLLC
5550 Glades Rd., Ste. 500
Boca Raton, FL 33431
jdavidson@gdrlawfirm.com
mgreenwald@gdrlawfirm.com
jjohnson@gdrlawfirm.com

                                                  */s/ William S. Helfand*
                                                  William S. Helfand