**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TERRI E. DICKENS, on behalf of the estate of
Ronnie E. Dickens and others similarly situated,

     Plaintiff,

v.                                  Case No: 8:16-cv-803-T-30TGW

GC SERVICES LIMITED PARTNERSHIP,

     Defendant.

_____

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Renewed Motion for Class Certification and Appointment of Class Counsel (Dkt. 65), Defendant's Response in Opposition (Dkt. 74), and Plaintiff's Reply in Support (Dkt. 77); Defendant's Motion to Dismiss or Motion to Dismiss and Compel Arbitration (Dkt. 81) and Plaintiff's response (Dkt. 87); Defendant's supplemental authority (Dkt. 78) and Plaintiff's response (Dkt. 86); and Plaintiff's supplemental authority (Dkt. 85) and Defendant's response (Dkt. 88). The Court, having reviewed the filings, and being otherwise advised in the premises, concludes that Plaintiff's Renewed Motion for Class Certification and Appointment of Class Counsel should be granted, and Defendant's Motion to Dismiss or Motion to Dismiss and Compel Arbitration should be denied.

## BACKGROUND

In this original lawsuit, Ronnie Dickens sued GC Services Limited Partnership ("Defendant") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§§ 1692–1692p. He alleged that Defendant failed to notify him and other similarly situated debtors that if they disputed their debt, they would have to notify Defendant *in writing* to trigger Defendant's legal obligation to verify the debt. (Dkt. 1, p. 2). By failing to specify that certain rights must be exercised in writing, Ronnie Dickens argued, Defendant failed to comply with the FDCPA.

On November 14, 2016, the Court granted partial summary judgment on the issue of liability in favor of Ronnie Dickens and against Defendant. The Court denied Ronnie Dickens' motion for class certification after concluding that he did not meet the adequacy and superiority elements of Federal Rule of Civil Procedure 23. The Court also awarded him damages. Ronnie Dickens appealed. The Eleventh Circuit vacated and remanded portions of the Court's Order, specifically the denial of class certification and the award of damages.

On October 20, 2017, Defendant filed a suggestion of death reporting that Ronnie Dickens had passed away. Terri Dickens, Ronnie Dickens' widow, filed an unopposed motion to substitute herself as named plaintiff in the case, on behalf of the estate of Ronnie Dickens. The Court granted her motion after concluding that Ronnie Dickens' FDCPA claims did not extinguish with his death. Terri Dickens ("Plaintiff") filed a renewed motion for class certification and Defendant filed a motion to dismiss or compel arbitration.

## STANDARD FOR CLASS CERTIFICATION

A district court is vested with broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). For a district court to certify a class action, the party seeking to maintain the class action must affirmatively demonstrate its compliance with Federal Rule of Civil Procedure 23. *Wal-Mart*

*Stores, Inc. v. Dukes,* 564 U.S. 338, 345-46 (2011). As a threshold issue, Plaintiff must demonstrate that the proposed class is "adequately defined and clearly ascertainable."[1] *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).   Assuming the class is ascertainable, Plaintiff must then prove Rule 23(a)'s prerequisites to class certification: (1) the class must be "so numerous that joinder of all members is impracticable" ("numerosity"); (2) there must be "questions of fact or law common to the class" ("commonality"); (3) "the claims or defenses of the representative parties must be typical of the claims or defenses of the class" ("typicality"); and (4) the named representative must "fairly and adequately protect the interests of the class" ("adequacy of representation"). *See* Fed. R. Civ. P. 23(a).

After meeting the requirements of Rule 23(a), the party must satisfy through evidentiary proof at least one of the provisions of Rule 23(b). *See* Fed. R. Civ. P. 23(b). Therefore, courts may have to "probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013) (citing to Fed. R. Civ. P. 23). Only after a "rigorous analysis" and a determination that the movant has satisfied Rule 23's prerequisites may the court properly certify the class. *Id*. Accordingly, the court's analysis will frequently "overlap with the merits of the plaintiff's underlying claim [because] class determination generally involves considerations that are enmeshed in the factual and the legal issues comprising the plaintiff's cause of action." *Id*.

---

[1] Standing is also a threshold issue. *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008). The Court already concluded that Ronnie Dickens had standing. (Dkt. 23). But in this Order, the Court reexamines the issue of standing in light of Defendant's Motion.

## STANDARD FOR A MOTION TO DISMISS

Attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two forms. *Meszaros ex rel. Meszaros v. United States*, No. 8:05CV1214T30TGW, 2006 WL 1528939, at *1-2 (M.D. Fla. June 2, 2006) (Moody, J.); *Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990). "Facial attacks" on the complaint "require the court to merely look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion." *Lawrence*, 919 F.2d at 1529. "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *See id.*

With a factual attack, "no presumptive truthfulness attaches to [a] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*. The Eleventh Circuit has cautioned that a district court "should only rely on Rule 12(b)(1) '[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action.'" *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (citing *Garcia v. Copenhaver, Bell & Associates,* 104 F.3d 1256, 1261 (11th Cir.1997)). If they do, the district court should treat the motion as a motion for summary judgment under Rule 56 and refrain from deciding disputed factual issues. *Id*. If a motion to dismiss asserts a lack of subject matter jurisdiction, the plaintiff bears the burden of showing that it has properly invoked the court's jurisdiction. *Dominican Energy Ltd., Inc. v. Dominican Republic*, 903 F.Supp. 1507, 1511 (M.D. Fla. 1995).

## STANDARD TO COMPEL ARBITRATION

Federal policy favors arbitration over litigation. *Seaboard Coast Line R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1348 (11th Cir.1982). "This federal policy requires that [the court] construe arbitration clauses generously, resolving all doubts in favor of arbitration." *Id.* However, a court "will not compel parties to arbitrate a dispute where the parties have not agreed to do so." *Scott v. EFN Investments, LLC*, 312 Fed. App'x. 254, 256 (11th Cir. 2009). The Court engages in a two-step inquiry in analyzing a motion to compel arbitration: first it must determine whether the parties agreed to arbitrate the dispute; and then, it decides whether "legal constraints external to the parties' agreement foreclosed arbitration." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). Whether a contract's arbitration clause requires arbitration of a given dispute is a matter of contract interpretation. *Seaboard Coast Line R. Co.*, 690 F.2d at 1348. Therefore, the validity of an arbitration agreement is a matter of state law. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367–68 (11th Cir. 2005).

The Federal Arbitration Act ("FAA") "requires courts to enforce [arbitration agreements] according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010). Section 2 of the FAA provides that written provisions relating to arbitration are "valid, irrevocable, and enforceable" except where grounds "exist at law or in equity" to revoke the contract. *Kincaid v. Beneficial Fla., Inc.*, No. 14-61647-CIV, 2015 WL 12781025, at *1 (S.D. Fla. Jan. 14, 2015) (citing 9 U.S.C. § 2). If any lawsuit involves an "issue referable to arbitration under an agreement in writing," a court must stay the action upon a motion asking such from any party within the suit. 9 U.S.C. § 3. If the Court finds that the parties are subject

to a valid arbitration agreement, the Court "shall make an order directing the parties to proceed to arbitration." *Kincaid*, 2015 WL 12781025, at *1 (citing 9 U.S.C. § 4).

## DISCUSSION

As an initial matter, the Court will consider Defendant's Motion to Dismiss or Motion to Dismiss and Compel Arbitration, and then, Plaintiff's Renewed Motion for Class Certification.

### *Defendant's Motion to Dismiss or Motion to Dismiss and Compel Arbitration*

Defendant argues that Plaintiff does not have standing to sue because neither she nor Ronnie Dickens suffered a concrete injury by receiving Defendant's debt-collection letter. Even if Plaintiff has standing, Defendant urges the Court to dismiss the case and compel Plaintiff to attend a single-party arbitration. For the reasons discussed below, the Court denies Defendant's Motion.

Defendant argued that Ronnie Dickens lacked standing in at least four filings. Each time, the Court disagreed. Now, Defendant challenges Plaintiff's standing by challenging the Court's jurisdiction based on materials outside of the Complaint, specifically Plaintiff's deposition. If this "factual attack" affects the merits of Plaintiff's claims, the Court would have to treat Defendant's Motion to Dismiss as a motion for summary judgment and allow a jury to resolve material factual disputes. *Morrison*, 323 F.3d at 925. But the motion does not affect the merits of her FDCPA claims. *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal."). And the Court already entered summary judgment as to liability in favor of Plaintiff. Accordingly, the Court can analyze the factual attack on jurisdiction under Rule 12(b)(1).

After doing so, however, the Court comes to the same conclusion it always has: the plaintiff has standing.

"A plaintiff has an injury in fact if he suffered an invasion of a legally protected interest that is concrete, particularized, and actual or imminent." *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016). A "concrete" injury must be "de facto"; that is, it must actually exist. *Id*. (citing Black's Law Dictionary 479 (9th ed. 2009)).

In its previous analysis of standing in this case, the Court relied on the Eleventh Circuit's opinion in *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016). In *Church*, the court explained that "through the FDCPA, Congress has created a new right— the right to receive the required disclosures in communications governed by the FDCPA— and a new injury—not receiving such disclosures." *Id*. at 994. "Church did not receive information to which she allege[d] she was entitled." *Id*. at 995. Accordingly, "Church . . . sufficiently alleged that she suffered a concrete injury, and thus, satisfie[d] the injury-in-fact requirement." *Id*. The Eleventh Circuit declared that an allegation of this FDCPA violation gave Church standing because "Congress has elevated [this injury] to the status of a legally cognizable injury through the FDCPA." *Id*.

A few months later, the Eleventh Circuit decided *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016). There, the court analyzed whether a plaintiff alleged enough of an injury for standing when he argued that a New York law created a right to have a certificate of discharge recorded, and that right was violated. The court asked "whether

[plaintiff] was harmed" and concluded he lacked standing because he alleged no harm or risk of harm associated with the procedural violation. *Nicklaw*, 839 F.3d at 1002.

Defendant argues that *Church* is no longer good law because the Eleventh Circuit in *Nicklaw* "specifically rejected the holding from *Church*." (Dkt. 74, p. 10). But the Eleventh Circuit did not mention *Church* in the *Nicklaw* opinion and *Nicklaw* did not involve the FDCPA. The Eleventh Circuit in *Nicklaw* analyzed a right provided to the plaintiff by a state law, and *Church* involved a right "Congress elevated" to an injury with the FDCPA. *Church*, 654 F. App'x at 995. The two can coexist.

Defendant also argues that some courts have expressed doubts about *Church* given developments in the law on standing post-*Spokeo*. Though some courts have expressed doubt that *Church* remains good law, those courts are all outside of this Circuit. To the extent that Defendant and some of these courts interpret *Church* as providing an automatic injury, and thus standing, whenever a plaintiff allegedly suffers a procedural violation, this is not the case. The Eleventh Circuit distinguished Church's allegations from the allegations of "a bare procedural violation" in *Spokeo* by explaining that "Church has not alleged a procedural violation. Rather, Congress provided Church with a substantive right to receive certain disclosures and Church has alleged that [defendant] violated that substantive right." *Id*., n.2. The Eleventh Circuit declared this injury sufficient to establish standing. As it stands, *Church* is controlling in this Circuit, and the Court's prior analysis about Ronnie Dickens' standing remains.

Defendant attempts dismissal of Plaintiff's complaint by focusing on excerpts from Plaintiff's deposition where she stated that neither herself nor Ronnie Dickens suffered a "loss

or injury" after receiving Defendant's debt-collection letter. (Dkt. 87-1, p. 55). Plaintiff affirmed that "Mr. Dickens was not out any money because of the way [Defendant] wrote the letter." *Id*. at 69. And she agreed that she doesn't "know of anybody who's lost anything . . . because they got inaccurate information." *Id*. at 86. The deposition speaks to a lack of a *tangible* injury, which is not dispositive of the case. *Spokeo,* 136 S. Ct. at 1549. Even though Plaintiff has established an injury sufficient for standing, the statutory damages Plaintiff and the putative class members can recover for this injury is up to a jury.

In addition to dismissal, Defendant, for the first time, moves to compel arbitration of Plaintiff's claims. The Court is wholly unpersuaded by this request given Defendant's active involvement in the litigation. As the Eleventh Circuit recently explained,

> Acting in a manner inconsistent with one's arbitration rights and then changing course mid-journey smacks of outcome-oriented gamesmanship played on the court and the opposing party's dime. The judicial system was not designed to accommodate a defendant who elects to forego arbitration when it believes that the outcome in litigation will be favorable to it, proceeds with extensive discovery and court proceedings, and then suddenly changes course and pursues arbitration when its prospects of victory in litigation dim.

*Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) (analyzing whether defendant waived its right to arbitrate). It is clear Defendant waived its right to arbitration, if it even had the right to begin with. Accordingly, the Court denies Defendant's Motion.

*Plaintiff's Renewed Motion for Class Certification*

In her renewed Motion, Plaintiff proposes the same class definition Ronnie Dickens proposed:

> (1) All persons with a Florida address, (2) to whom GC Services Limited Partnership mailed an initial communication that stated: (a) "if you do dispute all or any portion of this debt within 30 days of

receiving this letter, we will obtain verification of the debt from our client and send it to you," and/or (b) "if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank," (3) between April 4, 2015 and April 4, 2016, (4) in connection with the collection of a consumer debt, (5) that was not returned as undeliverable to GC Services Limited Partnership.

(Dkt. 65, p. 2). In its prior Order, the Court denied Ronnie Dickens' motion for class certification after concluding that he was not an adequate class representative and a class action was not the superior method of adjudicating his claims. Ronnie Dickens appealed the denial of certification along with the Court's award of statutory damages. The Eleventh Circuit remanded these issues back to the Court.

Since the issue of damages is one for a jury, the Court will only address Plaintiff's adequacy and the superiority of a class action.[2] The Court already concluded that Ronnie Dickens' proposed class met all other Rule 23 elements. *See* (Dkt. 47). This determination is unaffected by the substitution of a new plaintiff.

1. Adequacy

Rule 23(a)(4) requires that a class action's representative party "adequately protect the interests of those he purports to represent." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citing *Phillips v. Klassen*, 502 F.2d 362, 365 (D.C. Cir. 1974)). This "adequacy of representation" analysis "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2)

---

[2] The Court will also analyze the issue of predominance since it did not reach this question in its prior Order.

whether the representatives will adequately prosecute the action." *Id*. (internal citations omitted). Defendant only disputes Plaintiff's adequacy as it relates to conflicts of interest between Plaintiff and the class.

The Court previously stated that it was concerned about Ronnie Dickens' adequacy as class representative "primarily on the issue of damages." (Dkt. 47, p. 13). Ronnie Dickens sought, and Plaintiff seeks, only statutory damages. The Court feared that certification "would preclude class members from recovering actual damages if they suffered them, which the FDCPA otherwise allows." *Id*. So, the Court reasoned that "those proposed class members who did suffer actual damages—but who, because of certification, would be precluded from recovering them—will undoubtedly have interests at serious odds with Dickens's." *Id*. at 15. The Eleventh Circuit disagreed and directed the Court to consider that putative class members could opt out of the class and pursue their own recovery.

The Court now concludes that Plaintiff is an adequate class representative. At this time, the possibility that some class members may have suffered actual damages is insufficient to deem Plaintiff an inadequate representative. Because there is no "significant conflict of interest between [Plaintiff] and the class," Plaintiff meets this element of class certification. *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 537 (11th Cir. 2017).

   2. <u>Predominance and Superiority</u>

After a plaintiff meets Rule 23(a)'s criteria for class certification, a plaintiff must show that one of the criteria of Rule 23(b) is met. Here, Plaintiff seeks certification under Rule 23(b)(3): "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23.

Rule 23(b)(3) identifies the following pertinent factors for determining superiority and

predominance:

> (A) the class members' interests in individually controlling the prosecution or defense
> of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun
> by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the
> particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23.

  a.  Predominance

The issues raised in the class action that are subject to generalized proof and that are

applicable to the class as a whole "must predominate over those issues that are subject only

to individualized proof." *Babineau v. Federal Exp. Corp.,* 576 F.3d 1183, 1191 (11th Cir.

2009) (quoting *Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1558 (11th Cir. 1989)).

"Common issues will not predominate over individual questions if, 'as a practical matter, the

resolution of [an] overarching common issue breaks down into an unmanageable variety of

individual legal and factual issues.' " *Id.* at 1191 (quoting *Andrews v. Am. Tel. & Tel. Co.,* 95

F.3d 1014, 1023 (11th Cir. 1996) ). A class should not be certified if it appears that most of

the plaintiff's claims have highly case-specific factual issues. *See id.*

Courts in this Circuit have readily found that the predominance factor is met in FDCPA

cases. *See Belcher v. Ocwen Loan Servicing, LLC*, No. 8:16-CV-690-T-23AEP, 2018 WL

1701963, at \*13 (M.D. Fla. Mar. 9, 2018), *report and recommendation adopted in part*, No. 8:16-CV-690-T-23AEP, 2018 WL 1701964 (M.D. Fla. Apr. 2, 2018), *appeal denied*, No. 18-90011, 2018 WL 3198552 (11th Cir. June 29, 2018) ("While some of these affirmative defenses may create individual issues for some class members, the common issue of whether [defendant's] written delinquency notice violated the FDCPA and the FCCPA predominate."). *See also Alderman v. GC Services Limited Partnership*, Case No. 2:16-cv-14508-ROSENBERG/MAYNARD, 2018 WL 542455, at \*6 (S.D. Fla. Jan. 19, 2018) ("The allegations of consumer fraud under the FDCPA center on a common question of fact—Defendant's sending the form notice letter containing the allegedly defective language to each class member—and a common question of law—whether that notice violates the FDCPA.").

The Court already entered summary judgment as to liability in favor of Ronnie Dickens and against Defendant. This supports a finding that common issues predominate. Even though the issue of damages still remains, as the Court discussed with Plaintiff's adequacy, the possibility of individualized damages is not enough to defeat predominance. *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016) ("individualized damages calculations are insufficient to foreclose the possibility of class certification, especially when, as here, the central liability question is so clearly common to each class member."). "[I]ndividual damages defeat predominance if computing them will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable." *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1240 (11th Cir. 2016) (internal citations omitted). The Court cannot say with any certainty that the computation of damages will be "complex" and present an "intolerable" burden.

13

b. Superiority

In its previous order denying class certification, the Court focused on class members' interests in controlling the prosecution of their own actions because of their interests in obtaining actual damages. And this Court determined that damages would be low if they did exist, so a class action would not be the superior method of adjudicating the claims. The Eleventh Circuit directed the Court to consider certain benefits to a class action such as low per-class-member recovery weighing in favor of certification. The Court revaluates Plaintiff's putative class action using Rule 23(b)(3)'s factors, while considering the Eleventh Circuit's opinion and recent FDCPA class-action caselaw.

The focus of the superiority analysis is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183–84 (11th Cir. 2010) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004)). In terms of damages, which was previously the Court's main concern, if a class is certified, class members in this case would each receive roughly $50.00 in damages based on the statutory maximums available in FDCPA class actions.[3] If a class was not certified and individuals brought their own lawsuits, those individuals could each receive up to $1,000. *See* 15 U.S.C. 1692k(a)(2)(A). Though this disparity seems significant, weighed against the possibility of thousands of individual actions, it is not. As the Eleventh Circuit has discussed,

---

[3] As discussed in the parties' briefs about damages, this assumes each of the 9,862 proposed class members remains in the class. Otherwise, the amount per person would increase.

low amounts of per-class-member recovery create the unlikelihood that most of the plaintiffs, or attorneys, would pursue the claims individually. *See Klay*, 382 F.3d at 1271. *See also Lewis v. ARS Nat. Services, Inc.*, No. 2:09cv1041-MHT, 2011 WL 3903092, at *4 (M.D. Ala. 2011) ("Certification under 23(b)(3) is often appropriate for cases in which individual damages are low, thereby providing little incentive for individual suits."). And any class members that suffered actual damages or wish to pursue their own lawsuit could opt out. The Court therefore concludes that the first Rule 23(b)(3) factor weighs in favor of certification.

Turning to the other factors, the Court is not aware of any litigation by or against class members related to this case. And the Court sees no issues with concentrating the litigation in the forum. *See Johnson v. Enhanced Recovery Co., LLC*, 325 F.R.D. 608, 615 (N.D. Ind. 2018) (concluding the "statewide scope of the class is perfectly acceptable" in FDCPA case). As for the manageability of a class action, the concern "will rarely, if ever, be in itself sufficient to prevent certification of a class." *Klay*, 382 F.3d at 1272. The same can be said for Plaintiff's case. This factor weighs in favor of certification given the number of recipients of Defendant's form debt-collection letter and low per-class-member recovery. *See Id*. at 1273 ("defendants have failed to point to any specific management problems–aside from the obvious ones that are intrinsic in large class actions–that would render a class action impracticable.").

Defendant maintains its argument that a class is not a superior method because some individuals who received Defendant's letter may not have opened it, so they must not have standing. Plaintiff is not required to show that every putative class member has standing. *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (explaining that to assert a class

claim, "at least one named plaintiff has suffered the injury that gives rise to that claim."); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999) ("the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled.") (internal citations omitted); *Macy v. GC Servs. Ltd. P'ship*, 318 F.R.D. 335, 338 (W.D. Ky. 2017), *aff'd*, 897 F.3d 747 (6th Cir. 2018) ("the vast majority of courts . . . have held that no showing of standing need be made as to putative class members.") (internal citations omitted). Plaintiff's standing as class representative is sufficient. Accordingly, the requirements of Rule 23(b)(3) are met, and certification is appropriate.

Upon review and consideration, it is therefore

ORDERED AND ADJUDGED that:

1.     Plaintiff's Renewed Motion for Class Certification and Appointment of Class Counsel (Dkt. 65) is GRANTED.

2.     Defendant's Motion to Dismiss or Motion to Dismiss and Compel Arbitration (Dkt. 81) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida, this 2nd day of October, 2018.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record