# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

|  |  |
|---|---|
| ———————————————— x | |
| : | **Civil Action No.: 8:16-cv-00803-JSM-TGW** |
| TERRI E. DICKENS, on behalf of the estate of : | |
| Ronnie E. Dickens and others similarly : | |
| situated, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| : | |
| GC SERVICES LIMITED PARTNERSHIP, : | |
| : | |
| Defendant. : | |
| ———————————————— x | |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

### Introduction

This case centers on the alleged failure of GC Services Limited Partnership ("Defendant") to comply with certain provisions of the Fair Debt Collection Practices Act ("FDCPA") when sending initial debt collection letters to Florida consumers. Specifically, Terri E. Dickens, on behalf of the estate of Ronnie E. Dickens ("Plaintiff"), alleged that Defendant's initial debt collection letters did not comply with sections 1692g(a)(4) and (a)(5) of the FDCPA because they failed to include the requisite "in writing" and "written request" disclosures as required by those sections. Defendant denies any liability or that its practices violated the FDCPA.

Following over two years of extensive litigation, including motion practice, certification of the class, and an appeal to the Eleventh Circuit, just before trial, and with the assistance of a seasoned mediator, the parties reached an agreement to resolve this matter whereby Defendant will create a settlement fund of $99,220 for the benefit of the 9,922 members of the class. As a result,

each participating class member will receive $10—an amount well in line with analogous class settlements under the FDCPA. In addition, and separate from the settlement fund so as not to dilute class members' recoveries, Defendant also will pay: (1) all costs of class notice and settlement administration, which will include the mailing of notice to each class member and the maintenance of a dedicated settlement website; (2) full statutory damages of $1,000 to the named plaintiff, along with $1,500 as an incentive award for her work on behalf of the class, subject to this Court's approval; and (3) class counsel's reasonable attorneys' fees, costs, and expenses up to $270,000, subject to this Court's approval.

Defendant also will no longer use the form of debt collection letter going forward. This change will benefit not only Plaintiff and the class, but also any other consumers who receive Defendant's debt collection letters in the future.

Considering the statutorily limited damages available to the settlement class under the FDCPA, the risks of continued litigation, the nature of Defendant's conduct and Plaintiff's allegations, as well as the prospective relief afforded by the parties' agreement, the settlement here represents an excellent result for class members.

Accordingly, Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval of the settlement and directing the notice program described below. Defendant does not oppose the relief Plaintiff requests by this motion.

## Summary of the Settlement

I.      **The settlement provides monetary compensation for each class member; in addition, Defendant has ceased using the form of debt collection letter at issue.**

This Court previously certified a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure defined as (1) all persons with a Florida address, (2) to whom Defendant mailed an initial communication that stated: (a) "if you do dispute all or any portion of this debt within 30

days of receiving this letter, we will obtain verification of the debt from our client and send it to you," and/or (b) "if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client," (3) between April 4, 2015 and April 4, 2016, (4) in connection with the collection of a consumer debt, (5) that was not returned as undeliverable to Defendant. ECF No. 96. Defendant represents that there are 9,922 class members, including Plaintiff.

The parties' settlement agreement ("Settlement Agreement")[1] provides that Defendant will create a settlement fund of $99,220, with $10.00 paid to each class member who does not exclude himself or herself from the settlement. To the extent any settlement checks go uncashed after 90 days, Defendant will be entitled to recoup from those unclaimed funds monies up to the costs of administration of the settlement, with the remaining funds going to Bay Area Legal Services Inc. as a *cy pres* recipient.

In addition, Defendant has agreed to cease using the form of debt collection letter at issue. Importantly, Plaintiff might not have obtained this relief had this case gone to trial. *See Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 977 (N.D. Ohio 2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA.").[2]

Finally, in addition to the foregoing, and separate and apart from the settlement fund, Defendant will pay $1,000 to the named plaintiff as additional damages pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), $1,500 to the named plaintiff as an incentive award for her service to the class, the costs of notice and administration, and an award of reasonable attorneys' fees and expenses.

---

[1]     A true and correct copy of the Settlement Agreement is attached as Exhibit A to the Declaration of James L. Davidson, attached as Exhibit 1.

[2]     Unless otherwise indicated, all internal citations and quotations are omitted and all emphasis is added.

3

## II.     The Settlement Agreement provides for direct mail notice to all class members.

The Settlement Agreement requires an ample notice program consisting of direct mail notice to each member of the class. Defendant has in its possession the names and recent addresses of each class member. The settlement administrator will take all reasonable steps necessary to ensure that each class member receives direct mail notice. The administrator will also maintain a dedicated settlement website where class members can find more detail about the case and the settlement.

To that end, the parties have selected First Class, Inc., a third party, to act as the settlement administrator. First Class, Inc. is an experienced settlement administrator that has previously been approved to administer similar class action settlements. *See, e.g.*, *Veness v. Heywood, Cari & Anderson, S.C.*, No. 17-cv-338-bbc, 2017 WL 6759382, at *5 (W.D. Wisc. Dec. 29, 2017); *Green v. Dressman Benzinger Lavelle, PSC*, 2014 WL 4816698, at *2 (W.D. Ohio Sept. 18, 2014).

Class members wishing to receive a settlement check will not need to take any action. That is, unless a class member excludes himself or herself from the settlement, that class member will receive $10.

### Argument

## I.     This Court should confirm its certification of the class.

This Court previously certified the class. *See* ECF No. 96. As nothing has changed in the interim, Plaintiff does not believe it necessary to revisit certification in granting preliminary approval. Thus, this Court should confirm its certification of the class.

## II.     This Court should preliminarily approve the parties' settlement as fair, reasonable, and adequate under Rule 23(e).

Rule 23(e) requires that this Court make a preliminary determination of fairness for the class settlement presented:

Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002).

Once the preliminary fairness evaluation has been made and notice has been issued, the Court then holds a final fairness hearing to show that the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34; NEWBERG, § 11.25. That is, preliminary approval requires only that this Court evaluate whether the proposed settlement was negotiated at arm's-length and is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* MANUAL FOR COMPLEX LITIGATION § 21.632-33.

A full fairness determination is not necessary at this early juncture; nevertheless, the Eleventh Circuit has identified six factors for analyzing the reasonableness and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1326 (11th Cir. 2013). Rule 23(e) itself requires a court to consider several additional factors,

including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, adequate, and reasonable, and should be preliminarily approved. And in applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DN, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (Steele, J.) ("'Public policy strongly favors the   pretrial settlement of class action lawsuits.'   Settlement 'has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice.'"); NEWBERG, § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

### A.  There was no fraud or collusion behind the parties' settlement.

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). Here, there is no evidence of fraud or collusion. And the parties' arm's-length settlement negotiations, overseen by an experienced mediator, additionally demonstrate the fairness of the settlement that was reached, and that it is not a product of fraud or collusion.

In particular, the parties engaged in contested litigation for well over two years including contested motions to dismiss, for class certification, to compel arbitration, and an appeal of this

Court's initial class certification-related order. Moreover, the parties participated in two separate mediations—first unsuccessfully in April 2017 before a mediator with the Eleventh Circuit Court of Appeals, and then, successfully with the Honorable Elizabeth Ray (Ret.). *See Marty v. Anheuser-Busch Companies, LLC*, No. 13-CV-23656-JJO, 2015 WL 6391185, at *3 (S.D. Fla. Oct. 22, 2015) ("Here, the settlement occurred only after extensive arms' length negotiations overseen by an experienced court-appointed mediator, there is absolutely no evidence of collusion, and the parties negotiated attorneys' fees only after negotiating relief to the Class.").[3]

The settlement was reached after the close of discovery, after the exchange of multiple written settlement demands, after multiple telephone conferences concerning settlement, and at an in-person mediation, all involving experienced counsel. Given, therefore, that there is no collusion or fraud underlying the settlement, this factor strongly supports preliminary approval of the settlement.

## B. The complexity, expense, and duration of the litigation favors preliminary approval.

Turning to the second factor, there is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling

---

[3]     *See also* 2 MCLAUGHLIN ON CLASS ACTIONS § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense").

Here, at the time of settlement, the case had been proceeding for well over two years. Though this Court had certified the class, the parties still faced substantial obstacles to bring this case to a conclusion, including a jury trial on class liability and damages, and the prospect of another appeal. Moreover, the parties were still involved in a dispute concerning the scope of discovery into Defendant's finances and were set to brief motions in limine. At trial, Defendant would have argued against class-wide liability, and would have also argued that any statutory damages should be discounted substantially.

Given these considerations, preliminary approval of the settlement is appropriate, in part, to avoid the uncertainties of trial. *See Bennett v. Behring Corp.,* 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("It would seem unwise, therefore, to risk the substantial benefits of the settlement to the uncertainty of trial.").

### C. The parties have sufficiently developed the factual record through discovery to enable Plaintiff and her counsel to make a reasoned judgment concerning settlement.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011).

Here, the parties have litigated a motion to dismiss, ECF Nos. 18, 20, 23, motion for summary judgment, ECF Nos. 32, 36, 44, 47, two motions for class certification, ECF Nos. 27, 28, 31, 47, 65, 74, 77, 96, and an appeal to the Eleventh Circuit. *See Dickens*, 706 F. App'x 529. At the time of settlement, Plaintiff had also filed motions in limine in anticipation of the upcoming trial. ECF No. 99. Additionally, the parties exchanged both formal and informal discovery regarding the size of the class, Defendant's net worth, and the scope of Defendant's alleged misconduct, and Plaintiff deposed Defendant's Rule 30(b)(6) representative, allowing Plaintiff to thoroughly evaluate potential class damages.

Thus, both the parties and this Court are adequately informed to evaluate the fairness of the settlement presented. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation."). Indeed, Defendant responded to two different sets of document requests and interrogatories from Plaintiff, and the parties' counsel had multiple discussions about the merits of the case, and the scope of Defendant's alleged misconduct, allowing the parties to thoroughly evaluate the potential risks in moving forward with the litigation. *See Brent*, 2011 WL 3862363, at *16 ("The Court has no doubt that, after two rounds of motion practice that had established the strength of each side's legal claims and several rounds of settlement negotiations, the experienced attorneys who negotiated this settlement had an accurate understanding of the strength of their respective cases."). And, given that this settlement was reached on the eve of trial with all information abundantly available to the parties, "[t]his factor strongly favors final approval of the Settlement." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1249 (S.D. Fla. 2016).

### D. The probability of Plaintiff's success on the merits coupled with the range of possible recovery favor preliminary approval.

Next, this Court also must consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 314; *see also Canupp v. Sheldon*, No. 204-CV-260-FTM-99DNF, 2009 WL 4042928, at *10 (M.D. Fla. Nov. 23, 2009) (Steele, J.), *aff'd sub nom. Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843 (11th Cir. 2011), and *aff'd sub nom. Canupp v. Liberty Behavioral Healthcare Corp.*, 447 F. App'x 976 (11th Cir. 2011) ("Courts judge the fairness of a proposed compromise by weighing the plaintiffs' likelihood of success on the merits against the amount and form of the relief achieved in the settlement."). In determining whether a settlement is fair in light of the potential range of recovery, this Court is guided by the important maxim that a proposed settlement may be only a fraction of the theoretical recovery, yet still fair and adequate in light of the attendant risks of litigation. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350.

As an initial matter, class damages here were capped at $500,000. *See* 15 U.S.C. § 1682k(A)(2)(B). Also noteworthy, there is no guarantee of full statutory damages at trial because the FDCPA's damages provision is permissive rather than mandatory. That is, the law provides for statutory damages awards up to certain amounts—$1,000 for Plaintiff, and $500,000 for the class—after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2). Accordingly, even had Plaintiff prevailed at trial, the jury may have awarded little in the way of statutory damages, or even none at all. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the

possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

The risk of a minimal damages award was not hypothetical. Indeed, earlier in this case, this Court found that class members would have been entitled to only nominal damages of $1.00. *See Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016), *vacated and remanded,* 706 F. App'x 529 (11th Cir. 2017) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs."); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* No. 1:06 CV 1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k, and awarding no "additional damages' to members of the class).

Given the foregoing, the immediate relief provided by the settlement is substantial, and a recovery of $99,220—$10 per class member—represents an excellent recovery for the class. Indeed, the Southern District of Florida recently granted preliminary approval to a settlement that amounts to $10 per class member in a case against Defendant containing similar allegations to those at issue here. *See Alderman v. GC Servs. Ltd. P'ship*, Case No. 2:16-cv-14508, Dkt. Nos. 181, 190 (S.D. Fla.). And the settlement here also compares favorably to other similar FDCPA class settlements approved throughout the country. *See, e.g.*, *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) ($10 per class member); *Whitford v. Weber & Olcese, P.L.C.*, No. 1:15-cv-400, 2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016) (same); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 per class member); *Hall v. Frederick J. Hanna & Assocs., P.C.*, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per

class member); *Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14–CV–00142–SJD, 2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015) (approximately $31 per class member); *Little-King v. Hayt Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 per class member).

What's more, Plaintiff also secured Defendant's confirmation that it has ceased using the form of debt collection letter at issue—a benefit that was not necessarily available at trial. *See, e.g.*, *Midland Funding LLC*, 644 F. Supp. 2d at 977. In sum, considering the benefits obtained here, in comparison to those likely at trial, and the risks to moving forward, this factor supports preliminary approval of the settlement.

### E.   The opinions of Plaintiff and her counsel strongly favor preliminary approval.

Both Plaintiff and her counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of class members. A strong initial presumption of fairness should attach to the proposed settlement because it was reached by well-qualified counsel engaged in arm's-length negotiations with an experienced mediator. Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel."); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

Here, Plaintiff's counsel is extremely experienced in class action litigation, particularly cases under the FDCPA. *See* Ex. 1 at ¶¶ 8-15. Correspondingly, the parties' and their counsel's strong support for this settlement strongly supports preliminary approval.

### F.   Plaintiff and her counsel have adequately represented the class.

This Court previously appointed Plaintiff's counsel as class counsel and Plaintiff as the class representative. ECF No 96 at 16. Prior to that time, and since, Plaintiff's counsel has zealously litigated this case against sophisticated and experienced defense counsel. Plaintiff's counsel prevailed on a motion to dismiss, defeated Defendant's standing-based challenges, obtained certification of the class, and prevailed on an appeal to the Eleventh Circuit, all while working on a contingency fee basis. Similarly, Plaintiff—who stepped into the role of class representative after her husband passed away— has remained committed to this case and the class, including responding to written discovery and sitting for deposition, and ultimately obtained an excellent recovery for class members. As a result, Plaintiff and her counsel have adequately represented the class.

### G.   The settlement treats class members equitably.

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Each class member has the same claim resulting from receipt of the same form of debt collection letter from Defendant. *See, e.g.*, ECF No. 96 at 13 (finding that common issues

predominate). And as a result, the settlement provides that each participating class member will receive an equal portion of the settlement fund. Finally, the release affects each class member in the same way as each participating class member is agreeing to release the same claims. As such, this factor supports preliminary approval. *See Hale v. State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

### III. This Court should approve the proposed notice to class members.

Under Rule 23(e), this Court must also "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). If class members can be identified and are given individual notice, there is no requirement for notice by publication or other means. "[N]otice by publication is only used when the identity and location of class members cannot be determined through reasonable efforts...." *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069 SBA, 2008 WL 1990806, at *2 (N.D. Cal. May 5, 2008).

Here, the parties have agreed to a notice program to be administered by a third-party settlement administrator that will use all reasonable efforts to provide direct mail notice to each member of the class. This notice plan complies with Rule 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Class and claims asserted; (3) the binding effect of a judgment if the Class Member does not request exclusion; (4) the process for objection and/or

14

exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Plaintiff's request for statutory damages and reimbursement of her attorneys' fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312.

In short, this notice plan ensures that class members' due process rights are amply protected, and, as a result, should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("Under the circumstances of this case, when all class members are known in advance, the Court finds that the method of direct mail notice to each class member's last known address—and a second notice if the first was returned as undeliverable—was the best practicable notice.").

### IV.   This Court should schedule a final fairness hearing.

Finally, the last step in the settlement approval process is a final fairness hearing for this Court to hear all evidence and argument necessary to make its final settlement evaluation. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval, and class members who have properly objected to the settlement may be heard at this hearing as well. The Court then will determine after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

Plaintiff respectfully requests that this Court set a date for a final fairness hearing at the Court's convenience, approximately 120 days after the Court's preliminary approval of the settlement.

### Conclusion

Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval to the parties' class action settlement. As noted, Defendant does not oppose the relief requested herein.

Dated:  January 14, 2019          Respectfully submitted,

                                  */s/ James L. Davidson*
                                  James L. Davidson
                                  Jesse S. Johnson
                                  Greenwald Davidson Radbil PLLC
                                  5550 Glades Road, Suite 500
                                  Boca Raton, FL 33431
                                  Tel: (561) 826-5477
                                  Fax: (561) 961-5684
                                  jdavidson@gdrlawfirm.com
                                  jjohnson@gdrlawfirm.com

                                  *Counsel for Plaintiff and the class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 14, 2019, I electronically filed the foregoing with the Clerk of the Middle District of Florida using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                  */s/ James L. Davidson*
                                  James L. Davidson