**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

|  |  |
|---|---|
| TERRI E. DICKENS, on behalf of the estate of Ronnie E. Dickens and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GC SERVICES LIMITED PARTNERSHIP,<br><br>Defendant. | **Civil Action No.: 8:16-cv-00803-JSM-TGW** |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
<u>CLASS ACTION SETTLEMENT</u>**

## Introduction

After several years of litigation, and as a result of mediation before the Hon. Elizabeth Ray (Ret.), the parties ultimately reached an agreement to resolve this matter that will provide each participating class member with $10 out of a settlement fund of $99,220. GC Services Limited Partnership ("Defendant") will separately pay the costs of administering the settlement, and attorneys' fees, costs and expenses to class counsel.

Further, Defendant will no longer use the form of debt collection letter at issue in this case. This change will benefit not only Terri E. Dickens ("Plaintiff") and members of the class, but also any other consumers who receive Defendant's debt collection letters in the future.

In accordance with Judge Moody's preliminary approval order, ECF No. 113, the settlement administrator distributed notice of the settlement—via direct mail—to each potential

1

class member. Separately, Defendant provided notice of the settlement to the requisite government agencies pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA").

No class member has objected to any aspect of the settlement. And no objections have resulted from the CAFA notice, either.

Given this excellent result for consumers and lack of opposition to the settlement, Plaintiff respectfully requests that this Court finally approve the settlement. Defendant does not oppose the requested relief.

## Summary of the Settlement

Judge Moody previously certified the following class:

> (1) All persons with a Florida address, (2) to whom GC Services Limited Partnership mailed an initial communication that stated: (a) "if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you," and/or (b) "if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank, "(3) between April 4, 2015 and April 4, 2016, (4) in connection with the collection of a consumer debt, (5) that was not returned as undeliverable to GC Services Limited Partnership.

*See* ECF Nos. 96, 113. The class consists of 9,379 persons.[1]

Following preliminary approval, First Class, Inc.—the Court-approved settlement administrator—implemented a robust notice program by providing direct mail notice to all class members at their last known address according to Defendant's records. In addition, the settlement administrator maintained a settlement website containing additional details about the settlement, as well as relevant court documents.[2]

---

[1] The parties originally believed the class to consist of 9,992 persons. However, after accounting for the fact that some records in the class list were duplicative, the parties have determined that there are 9,379 class members.

[2] *See* www.dickensfdcpasettlement.com.

Prior to mailing the notice, First Class de-duplicated class members' records and updated addresses through the U.S. Postal Service. *See* Affidavit of Bailey Hughes, attached as Exhibit A, at ¶¶ 6-7. Notices were then disseminated on February 13, 2019. *Id.* at ¶ 8. And when 910 notices were later returned as undeliverable with no forwarding addresses, First Class undertook additional search measures to attempt to locate updated addresses for those class members. *Id.* at ¶¶ 10-12.

The class's reaction has been universally positive—not one person objected to, or asked to be excluded from, the settlement. *Id.* at ¶¶ 14-15. Moreover, no objections resulted from notice provided to governmental agencies under CAFA.

As a result, each of the 9,379 class members will receive a check for $10. To the extent any settlement checks go uncashed after the settlement administrator takes all reasonable steps to forward checks to any forwarding addresses, Defendant will be entitled to recoup the costs of notice and administration of the settlement from the remaining funds, with any additional remaining funds being sent to Bay Area Legal Services Inc.—the parties' designated *cy pres* recipient.

In addition, Defendant has agreed to stop using the form of debt collection letter at issue in this case.

Separately, Plaintiff will receive, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), her "additional" damages of $1,000 and, subject to Court approval, an incentive award of $1,500.

## Argument

### I.    This Court should confirm its certification of the settlement class.

Judge Moody previously certified the class. *See* ECF Nos. 96, 113. Plaintiff agrees with Judge Moody's reasoning and, as nothing has changed in the interim, does not believe it necessary

3

to revisit certification in granting final approval. Thus, Plaintiff respectfully submits that this Court should confirm certification of the class.

      II.      **This Court should finally approve the settlement as fair, reasonable, and adequate.**

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Fraught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).[3] Rule 23(e) itself requires this Court to consider additional factors such as whether the class representatives and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, adequate, and reasonable, and should be finally approved. And in applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DN, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (Steele, J.) ("'Public policy strongly favors the pretrial settlement of class action lawsuits.' Settlement 'has special importance in class actions with their notable uncertainty, difficulties of proof, and length.

---

[3]     Internal citations, quotations and footnotes are omitted, unless otherwise noted.

Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice.'").

### A. There was no fraud or collusion behind the settlement.

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). Here, there is no fraud or collusion. And the parties' arm's-length settlement negotiations, overseen by an experienced mediator,[4] additionally demonstrate the fairness of the settlement that was reached.

In particular, the parties engaged in contested litigation for well over two years, including contested motions to dismiss, for class certification, to compel arbitration, and an appeal of Judge Moody's initial class certification-related order. Moreover, the parties participated in two separate mediations—first unsuccessfully in April 2017 before a mediator with the Eleventh Circuit Court of Appeals, and then, successfully with Judge Ray. *See Marty v. Anheuser-Busch Companies, LLC*, No. 13-CV-23656-JJO, 2015 WL 6391185, at *3 (S.D. Fla. Oct. 22, 2015) ("Here, the settlement occurred only after extensive arms' length negotiations overseen by an experienced court-appointed mediator, there is absolutely no evidence of collusion, and the parties negotiated attorneys' fees only after negotiating relief to the Class.").[5]

The settlement was reached after the close of discovery, after the exchange of multiple written settlement demands, after multiple telephone conferences concerning settlement, and at an

---

[4] Before becoming a mediator, Judge Ray was a civil trial judge in Texas state court for over 20 years. *See* http://judgeelizabethray.com/adr/ (last accessed March 18, 2019).

[5] *See also* 2 MCLAUGHLIN ON CLASS ACTIONS § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

5

in-person mediation, all involving experienced counsel. Given, therefore, that there is no collusion or fraud underlying the settlement, this factor strongly supports final approval of the settlement. *See, e.g.*, *Grant v. Ocwen Loan Servicing, LLC*, No. 3:15-cv-1376-J-34-PDB, 2019 WL 367648, at *6 (M.D. Fla. Jan. 30, 2019) (Howard, J.) ("Here, the Court has already found that the Parties' Settlement is the result of serious, informed, non-collusive, arm's length negotiations involving experienced counsel informed and familiar with the legal and factual issues of the Action. The record continues to support the Court's earlier finding.").

### B. The probability of Plaintiff's success on the merits and the range of possible recovery favor approval of the settlement.

Next, this Court also must consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Canupp v. Sheldon*, No. 204-CV-260-FTM-99DNF, 2009 WL 4042928, at *10 (M.D. Fla. Nov. 23, 2009) (Steele, J.), *aff'd sub nom*. *Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843 (11th Cir. 2011), and *aff'd sub nom. Canupp v. Liberty Behavioral Healthcare Corp.*, 447 F. App'x 976 (11th Cir. 2011) ("Courts judge the fairness of a proposed compromise by weighing the plaintiffs' likelihood of success on the merits against the amount and form of the relief achieved in the settlement."). In determining whether a settlement is fair in light of the potential range of recovery, this Court is guided by the important maxim that a proposed settlement may be only a fraction of the theoretical recovery, yet still fair and adequate in light of the attendant risks of litigation. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011).

As an initial matter, statutory damages for the class were capped by statute at $500,000. *See* 15 U.S.C. § 1682k(A)(2)(B). Also noteworthy, there is no guarantee of full statutory damages at trial because the FDCPA's damages provision is permissive rather than mandatory. That is, the

6

law provides for statutory damages awards up to certain amounts—$1,000 for Plaintiff, and $500,000 for the class—after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2). Accordingly, even had Plaintiff prevailed at trial, the jury may have awarded little in the way of statutory damages, or even none at all. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

The risk of a minimal damages award was not hypothetical. Indeed, earlier in this case, Judge Moody found that class members would have been entitled to only nominal damages of $1.00 if he were to certify the class. *See Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016), *vacated and remanded,* 706 F. App'x 529 (11th Cir. 2017) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs."); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* No. 1:06 CV 1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k, and awarding no "additional damages' to members of the class).

Given the foregoing, the immediate relief provided by the settlement is substantial, and $10 per class member represents an excellent recovery for the class. Indeed, the Southern District of Florida recently granted final approval to a settlement that amounts to $10 per class member in a case against Defendant containing similar allegations to those at issue here. *See Alderman v. GC Servs. Ltd. P'ship*, No. 2:16-cv-14508, 2019 WL 1605656, at *2-3 (S.D. Fla. Apr. 9, 2019). And

7

the settlement here also compares favorably to other similar FDCPA class settlements approved throughout the country. *See, e.g.*, *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) ($10 per class member); *Whitford v. Weber & Olcese, P.L.C.*, No. 1:15-cv-400, 2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016) (same); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 per class member); *Hall v. Frederick J. Hanna & Assocs., P.C.*, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member); *Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14–CV–00142–SJD, 2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015) (approximately $31 per class member); *Little-King v. Hayt Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 per class member).

What's more, Plaintiff also secured Defendant's confirmation that it has ceased using the form of debt collection letter at issue—a benefit that was not necessarily available at trial. *See, e.g.*, *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 977 (N.D. Ohio 2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA."). In sum, considering the benefits obtained here, in comparison to those likely at trial, and the risks to moving forward, this factor supports approval of the settlement. *See In re Advanced Battery Technologies, Inc. Sec. Litig.*, 298 F.R.D. 171, 178 (S.D.N.Y. Mar. 24. 2014) ("Moreover, even if the Class were certified, Defendants may have moved to decertify the Class before trial or on appeal at the conclusion of trial, as class certification may always be reviewed. …Given such risk, this factor weighs in favor of approval of the Settlement.").

**C. The complexity, expense and likely duration of the litigation favors settlement.**

Turning to the next factor, there is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc.*

*for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense"). "Courts consistently recognize that the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement . . . ." *In re Advanced Battery Technologies, Inc. Sec. Litig.*, 298 F.R.D. at 175; *see also Amoco Oil*, 211 F.R.D. at 469 ("The parties have spent a great deal of time and expense analyzing the legal and factual issues this case presents . . . [and] therefore, have good cause to settle this matter, another factor favoring this Court's approval of the settlement agreement.").

Here, at the time of settlement, the case had been proceeding for well over two years. Though Judge Moody had certified the class, the parties still faced substantial obstacles to bringing this case to a conclusion, including a jury trial on class liability and damages, and the prospect of another appeal. Moreover, the parties were still involved in a dispute concerning the scope of discovery into Defendant's finances and were set to brief motions in limine. At trial, Defendant would have argued against class-wide liability, and would have also argued that any statutory damages should be discounted substantially.

Given these considerations, approval of the settlement is appropriate, in part, to avoid the uncertainties of trial. *See Bennett v. Behring Corp.,* 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs]

to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 319 ("It would seem unwise, therefore, to risk the substantial benefits of the settlement to the uncertainty of trial."). As a result, this factor favors final approve of the settlement.

### D. The opinions of class counsel and the class representative favor approval.

A strong presumption of fairness should attach to the proposed settlement because it was reached by well-qualified counsel engaged in arm's-length negotiations with an experienced mediator. Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel."); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

Moreover, Plaintiff's counsel is extremely experienced in class action litigation, particularly cases under the FDCPA. *See* Declaration of James L. Davidson, attached as Exhibit B, at ¶ 6. And both Plaintiff and her counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of class members. *See Veal v. Crown Auto Dealerships, Inc.*, No. 8-04-CV-0323-T-27-MSS, 2007 WL 2700969, at *3 (M.D. Fla. Sept. 13, 2007) (Whittemore, J.) ("The judgment of experienced counsel for both parties is that the settlement should be approved. The opinions of counsel support the Court's finding that the

settlement is fair and reasonable."). Correspondingly, the parties' and their counsel's strong support for this settlement favor final approval.

### E. The factual record is sufficiently developed to enable Plaintiff and her counsel to make a reasoned judgment concerning the settlement.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1349. At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F.Supp. 1551, 1555 (M.D. Fla. 1992) (Nimmons, J.).

Here, the parties litigated a motion to dismiss, ECF Nos. 18, 20, 23, motion for summary judgment, ECF Nos. 32, 36, 44, 47, two motions for class certification, ECF Nos. 27, 28, 31, 47, 65, 74, 77, 96, and an appeal to the Eleventh Circuit. *See Dickens GC Servs. Ltd. P'ship*, 706 F. App'x 529 (11th Cir. 2017). At the time of settlement, Plaintiff had also filed a consolidated motion in limine in anticipation of the upcoming trial. ECF No. 99. Additionally, the parties exchanged both formal and informal discovery regarding the size of the class, Defendant's net worth, and the scope of Defendant's alleged misconduct, and Plaintiff deposed Defendant's Rule 30(b)(6) representative, allowing Plaintiff to thoroughly evaluate potential class damages.

Thus, both the parties and this Court are adequately informed to evaluate the fairness of the settlement presented. *See Mashburn*, 684 F. Supp. at 669 ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation."). Indeed, Defendant responded to two different sets of document requests and interrogatories from Plaintiff, and the parties' counsel had multiple discussions about the merits of

11

the case, and the scope of Defendant's alleged misconduct, allowing the parties to thoroughly evaluate the potential risks in moving forward with the litigation. *See Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) ("The Court has no doubt that, after two rounds of motion practice that had established the strength of each side's legal claims and several rounds of settlement negotiations, the experienced attorneys who negotiated this settlement had an accurate understanding of the strength of their respective cases."). And, given that this settlement was reached on the eve of trial with all information abundantly available to the parties, "[t]his factor strongly favors final approval of the Settlement." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1249 (S.D. Fla. 2016).

### F. The positive reaction to the settlement further supports that the settlement is fair, reasonable, and adequate.

Of the more than 9,000 class members to whom First Class distributed direct mail notice, none objected to, nor sought to exclude themselves from, the settlement. Moreover, notice of the settlement was provided to the appropriate government agencies as required by the CAFA. ECF No. 118. No objections resulted from the CAFA notice.

This universally favorable reaction to the settlement supports its approval. *See Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) ("Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable."); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness."); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *6 (E.D. Cal. Oct. 31, 2012) ("The absence of a large number of objections to a proposed class action settlement raises a strong

presumption that the terms of a proposed class action settlement are favorable to the class members.").[6]

### G. Plaintiff and her counsel have adequately represented the class.

Judge Moody previously appointed Plaintiff's counsel as class counsel and Plaintiff as the class representative. ECF Nos. 96, 113. Prior to that time, and since, Plaintiff's counsel has zealously litigated this case against sophisticated and experienced defense counsel. Plaintiff's counsel prevailed on a motion to dismiss, defeated Defendant's standing-based challenges, obtained certification of the class, and prevailed on an appeal to the Eleventh Circuit, all while working on a contingency fee basis.

Similarly, Plaintiff—who stepped into the role of class representative after her husband passed away— has remained committed to this case and the class, including responding to written discovery and sitting for deposition, and ultimately obtained an excellent recovery for class members. As a result, Plaintiff and her counsel have adequately represented the class.

### H. The settlement treats class members equitably.

Rule 23(e)(2)(D) also requires that the Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) states that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in

---

[6] *See also, e.g.*, *Hall v. Bank of Am., N.A.*, No. 12–22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg, Inc.*, No. 13–60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," combined with few objections to class settlement, "such facts are overwhelming support for the settlement").

13

different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each class member has the same claim resulting from receipt of the same debt collection letter from Defendant. *See, e.g.*, ECF No. 96 at 13 (finding that common issues predominate). And as a result, the settlement provides that each participating class member will receive an equal payment from the settlement fund. *See Grant*, 2019 WL 367648, at *7 ("The Settlement Fund will be divided equally among all of the Class Loans held by the Settlement Class Members. This is an objectively reasonable way to distribute a settlement fund comprising $500,000 in statutory damages under the FDCPA, given that the purpose of statutory damages under the FDCPA is to deter future misconduct, not to compensate the class members for actual harm, and that any Settlement Class Member who suffered actual damages was free to opt out of the Settlement Class to pursue an individual action to recover those damages (along with attorneys' fees authorized by statute).").

Finally, the release affects each class member in the same way as each class member is agreeing to release the same claims. As such, this factor supports approval. *See Hale v. State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

**I. Distribution of notice of the settlement satisfied due process requirements and the requirements of Rule 23.**

Rule 23 requires "that class members be given information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of

the action, though the notice need not include every material fact or be overly detailed." *Fraught*, 668 F.3d at 1239 (internal quotations omitted).

Here, First Class used all reasonable efforts to provide direct mail notice to each member of the class. *See* Ex. A, ¶¶ 6-13. The Court-approved notice apprised class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Class Counsel's request for an award of attorneys' fees and expenses; and (6) how to make inquiries and obtain additional information. *See* ECF No. 113 at 3 (approving notice).

In short, this notice plan ensured that class members' due process rights were amply protected, and the settlement should be approved. *See* Fed. R. Civ. P. 23(c)(2)(B); *Fraught*, 668 F.3d at 1239-40.

> **J. The Court should approve the $2,500 award to Plaintiff, consisting of a $1,000 in damages pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), and an incentive award of $1,500.**

Finally, separate and apart from the class settlement fund, Defendant also will pay $1,000 in "additional" damages to Plaintiff, and $1,500 to her as an incentive award, subject to this Court's approval. To that end, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") at subsection 1692k(a) reads:

> (a) Amount of damages
>
> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

<div align="center">*   *   *</div>

(2)

(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, **(i) such amount for each named plaintiff as could be recovered under subparagraph (A), and** (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.

15 U.S.C. § 1692k(a) (emphasis added).

The statute thus expressly provides for a recovery of up to $1,000 for Plaintiff in addition to such amount as each class member could recover.

The $1,500 incentive award is reasonable considering Plaintiff's role in the case, including securing a monetary recovery for members of the class and a change in Defendant's business practices. *See*, *e.g.*, *Grant*, 2019 WL 367648, at *9 (approving incentive award of $3,500 in FDCPA class action); *accord Michel v. WM Healthcare Solutions, Inc.*, No. 1:10–cv–638, 2014 WL 497031, at *17 (S.D. Ohio Feb. 7, 2014) ("There is precedent for incentive awards in the neighborhood of $1,000 to $5,000 in consumer protection class actions.").

It should be noted that Plaintiff took over as the class representative following her husband's passing. *See* ECF Nos. 59-60. She thereafter responded to written discovery, sat for a deposition, and assisted her counsel in bringing this case to a favorable resolution. But for Plaintiff stepping in to this case upon her husband's passing, it is unlikely that class members would have seen any recovery from this case. As a result, a total award to Plaintiff of $2,500 is reasonable. *See, e.g.*, *Diakos v. HSS Sys., LLC*, No. 14-61784, 2016 WL 3702698, at *6 (S.D. Fla. Feb. 5, 2016) ("Based on this formulation, a $10,000 service award to plaintiff Diakos, to be paid from the class common fund, is reasonable. Diakos produced documents, sat for his deposition, and traveled from his home in Ocala to Fort Lauderdale to attend and fully participate in a day-long

mediation."); *North Star Capital Acquisitions, LLC v. Krig*, Nos. 3:07-cv-264-J-32MCR, et al., 2011 WL 65662, at *5 (M.D. Fla. Jan. 10, 2011) (Corrigan, J.) ("Additionally, Class Representatives request incentive awards in the amount of $5,000 each (for a total of $20,000) for their active participation in this litigation over the course of over four years. The award request does not in any way reduce the benefits payable to the Settlement Class under the Settlement Agreement. No objections have been raised to the Class Representatives' proposed fees and costs.).".[7]

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval of the settlement. As noted, Defendant does not oppose the requested relief.

Dated: April 22, 2019

/s/ *James L. Davidson*
James L. Davidson
Jesse S. Johnson
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, FL 33487
Telephone: (561) 826-5477
Facsimile: (561) 961-5684
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Class Counsel

---

[7] *See also Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 259 (D. N.J. 2005) (awarding $1,000 incentive award to plaintiff who was not deposed and not required to produce documents); *Tenuto v. Transworld Sys.*, No. CIV. A. 99–4228, 2002 WL 188569, at *4–5 (E.D. Pa. Jan. 31, 2002) (granting award of $2,000 in FDCPA class action).

## **Certificate of Service**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on April 22, 2019, via the Court Clerk's CM/ECF system, which will provide notice to the following counsel of record:

Ryan K. Hilton, Esq.
Jessica R. Stillwell, Esq.
Butler Weihmuller Katz Craig LLP
400 N. Ashley Dr., Ste 2300
Tampa, FL 33602

Counsel for Defendant

*/s/ James L. Davidson*
James L. Davidson